# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jeremy Adam Dalton

## DEFENDANTS

United States

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kara Hartzler/Benjamin P. Davis, FDSDI
225 Broadway, Ste. 900
San Diego, CA 92101 (619) 234-8467

Attorneys *(If Known)*
Randy K. Jones, Asst. U.S. Attorney
880 Front Street, Room 6293
San Diego, 92101 (619) 557-5610

**'16CV1495 BEN**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☒ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 2255
Brief description of cause:
Motion to Correct, Vacate, or Set Aside Sentence under Johnson v. United States

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE Hon. Roger T. Benitez
DOCKET NUMBER 12-cr-03367-BEN-1

DATE: 06/13/2016

SIGNATURE OF ATTORNEY OF RECORD
s/Kara Hartzler

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**Benjamin P. Davis**
California State Bar No. 275918
**Kara Hartzler**
California State Bar No. 293751
**Federal Defenders Of San Diego, Inc.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Fax: (619) 687-2666
Kara_Hartzler@fd.org
Benjamin_Davis@fd.org

Attorneys for Jeremy Adam Dalton

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## (HONORABLE ROGER T. BENITEZ)

| | |
|---|---|
| **United States of America,** | Case No. 12-CR-3367-BEN |
| Plaintiff, | Civil No. **'16CV1495 BEN**_____ |
| v. | |
| **Jeremy Adam Dalton,** | **Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255** |
| Defendant. | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES …………………………………………………………..ii

I.     INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS .....................................................................2

     A.    Indictment, plea agreement, and Pre-Sentence Report..........................2
     B.    Sentencing. ..............................................................................3

III.   ARGUMENT..........................................................................................4

     A.    Mr. Dalton's conviction for felonious assault under Ohio Rev.
          Code § 2903.11(A)(1) is not a crime of violence after *Johnson*.................4

         1.    Ohio felonious assault is not a crime of violence under the
               force clause because it is overbroad as to "physical force"
               and required mental state. ...............................................5

         2.    Ohio Rev. Code § 2903.11 does not qualify as an
               enumerated offense. .........................................................8

         3.    Following *Johnson*, Ohio felonious assault cannot qualify as
               a crime of violence under section 924(c)'s residual clause ...........8

              a.    *Johnson* applies to the Sentencing Guidelines......................9

              b.    *Johnson*'s application to the Guidelines is retroactive
                   under *Welch*. ...............................................................10

                 i.    The holding and reasoning of *Welch* apply
                     with equal force to the Sentencing
                       Guidelines. ...................................................12

                 ii.    The Career Offender guideline is both
                     uniquely statutory and uniquely severe in its
                       application. .................................................13

     B.    Mr. Dalton is otherwise entitled to relief under 28 U.S.C. § 2255,
          because his claim is cognizable, and his petition is timely......................14

         1.    Mr. Dalton's claim is cognizable under § 2255(a). ......................14

         2.    This motion is timely under 28 U.S.C. § 2255(f)(3). ....................16

IV.   CONCLUSION......................................................................................17

Exhibit A

Exhibit B

Exhibit C

Exhibit D

Exhibit E

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Bousley v. United States*, 523 U.S. 614 (1998) ................................................. 10

*Brown v. Caraway*, 719 F.3d 583 (7th Cir. 2013) ............................................ 12

*Brown v. United States*, No. 15-10025 (11th Cir. Sept. 2, 2015) ..................... 16

*Buford v. United States*, 532 U.S. 59 (2001) .................................................... 14

*Davis v. United States*, 417 U.S. 333 (1974) ..................................................... 15

*Davis v. United States*, 564 U.S. 229 (2011) ..................................................... 13

*Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015) .................................... 2, 10, 15

*Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc) ......... 7, 8

*Gall v. United States*, 552 U.S. 38 (2007) ..................................................... 9, 13

*Hill v. United States*, 368 U.S. 424 (1962) ........................................................ 15

*In re Grant*, No. 15-5795 (6th Cir. Mar. 7, 2016) ............................................ 12

*In re Watkins*, 810 F.3d 375 (6th Cir. 2015) ..................................................... 12

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ....................................... *passim*

*Johnson v. United States*, 559 U.S. 133 (2010) ............................................... 6, 7

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ......................................................... 6, 7, 8

*Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016) .............................. 13

*Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011) ............................. 12, 15

*Peugh v. United States*, 133 S. Ct. 2072 (2013) .............................. 9, 10, 12, 13

*Price v. United States*, 795 F.3d 731 (7th Cir. 2015) ....................................... 12

*Reina-Rodriguez v. United States*, 655 F.3d 1182 (9th Cir. 2011) (en banc) ............. 11, 12

*Rozier v. United States*, 701 F.3d 681 (11th Cir. 2012) .................................... 12

*Schriro v. Summerlin*, 542 U.S. 348 (2004) ...................................................... 10

*Spencer v. United States*, No. 10-10676 (11th Cir. Aug. 15, 2013) ................. 11

*Stork v. United States*, No. 10-15-2687 (7th Cir. Aug. 13, 2015) ..................... 12

*Sun Bear v. United States*, 644 F.3d 700 (8th Cir. 2011) .................................. 16

*Teague v. Lane*, 489 U.S. 288 (1989) ................................................. 10, 11, 12

*Tyler v. Cain*, 533 U.S. 656 (2001) ........................................................ 10

*United States v. Addonizio*, 442 U.S. 178 (1979) ................................... 15

*United States v. Benavides*, 617 F. App'x 790 (9th Cir. 2015) ................ 9

*United States v. Booker*, 543 U.S. 220 (2005) ..................................... 14

*United States v. Coleman*, 763 F.3d 706 (7th Cir. 2014) .................. 15-16

*United States v. Dixon*, 805 F.3d 1193 (9th Cir. 2015) ......................... 7

*United States v. Doe*, 810 F.3d 132 (3d Cir. 2015) ........................ 11, 12

*United States v. Foote*, 784 F.3d 931 (4th Cir. 2015) ......................... 15

*United States v. Gomez-Leon*, 545 F.3d 777 (9th Cir. 2008) ................ 7

*United States v. Johnson*, 130 F.3d 1352 (9th Cir. 1997) ..................... 9

*United States v. LaBonte*, 520 U.S. 751 (1997) ................................ 14

*United States v. Madrid*, 805 F.3d 1204 (10th Cir. 2015) ................... 10

*United States v. Terrell*, 593 F.3d 1084 (9th Cir. 2010) ....................... 7

*United States v. Torres*, No. 14-10210 (9th Cir. Argued Dec. 8, 2015) .............. 9

*United States v. Willis*, 795 F.3d 986 (9th Cir. 2015) ........................... 9

*Welch v. United States*, 136 S. Ct. 1257 (2016) ..................... 10, 11, 12, 13, 14

## CONSTITUTIONAL PROVISIONS

Ex Post Facto Clause ............................................................................ 9

## FEDERAL STATUTES

8 U.S.C. § 1101 ................................................................................. 10

18 U.S.C. § 16(a) ............................................................................ 6, 7

18 U.S.C. § 16(b) ....................................................................... 10, 15

18 U.S.C. § 922(g)(1) ...................................................................... 1, 3

18 U.S.C. § 924(c) ....................................................................... 8, 15

18 U.S.C. § 924(e) ................................................................ 6, 7,

18 U.S.C. § 3553(a)(4) ............................................................... 13

28 U.S.C. § 994(h) ................................................................... 13

28 U.S.C. § 2255 ................................................................. *passim*

ACCA ........................................................................... *passim*

**STATE CASES**

*State v. Cooey*, 544 N.E.2d 895 (Ohio 1989) ..................................... 7

*State v. Cooper*, 743 N.E.2d 427 (Ohio Ct. App. 2000) ....................... 6

*State v. Hodges*, 669 N.E.2d 256 (Ohio Ct. App. 1995) ...................... 6

**STATE STATUTES**

Ohio Rev. Code Ann. § 2901.01(A)(5)(a) (2010) ................................. 6

Ohio Rev. Code Ann. § 2901.22(A) (2010) ....................................... 7

Ohio Rev. Code Ann. § 2903.11 (2010) .................................. 1, 3, 4, 5, 8

**ADVISORY GUIDELINES**

U.S.S.G. § 2K2.1 ............................................................ 1, 2, 3, 4

U.S.S.G. § 3E1.1 ................................................................... 3

U.S.S.G. § 4B1.1(a) .............................................................. 14

U.S.S.G. § 4B1.2 ............................................................ *passim*

**Benjamin P. Davis**
California State Bar No. 275918
**Kara Hartzler**
California State Bar No. 293751
**Federal Defenders Of San Diego, Inc.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Fax: (619) 687-2666
Kara_Hartzler@fd.org
Benjamin_Davis@fd.org

Attorneys for Jeremy Adam Dalton

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE ROGER T. BENITEZ)

| United States of America, | Case No. 12-CR-3367-BEN |
|---|---|
| Plaintiff, | Civil No. _____ |
| v. | |
| **Jeremy Adam Dalton,** | **Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255** |
| Defendant. | |

I.

Introduction

Jeremy Dalton moves this Court to vacate and correct his conviction and sentence under 28 U.S.C. § 2255 on the basis of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). In 2012, Mr. Dalton was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court used Mr. Dalton's criminal history to enhance his sentence. The court ruled that Mr. Dalton's prior conviction for felonious assault under Ohio Rev. Code § 2903.11(A)(1) qualified as a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A).

The effect of this finding was to significantly increase Mr. Dalton's Guidelines range. His base offense level was raised from 14 to 20 (before adjustments and departures). Instead of a Guidelines range of 21-27 months, he faced a range at sentencing of 41-51 months. The district court sentenced him to the high end of 51 months in prison.

Under *Johnson*, Mr. Dalton should not have started at a base offense level of 20, because his Ohio assault conviction does not qualify as a "crime of violence" under the sentencing guidelines. In *Johnson*, the Supreme Court struck down the residual clause of the Armed Career Criminal Act as unconstitutionally vague. 135 S. Ct. at 2557. Like the residual clause in the Act, section 4B1.2[1] of the Sentencing Guidelines defines a "crime of violence" using language that is void for vagueness. *See Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). And because Ohio felonious assault does not qualify as a "crime of violence" under any of the alternative definitions contained in § 4B1.2 (as an offense that has as an element the use, attempted use, or threat of violent physical force, or as one of four specifically enumerated offenses), Mr. Dalton is entitled to relief under 28 U.S.C. § 2255.

Mr. Dalton's petition is timely under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in *Johnson*. Therefore, Mr. Dalton respectfully requests that this Court grant his § 2255 motion, vacate his current sentence, and re-sentence him.

## II.

## Statement of Facts

**A.      Indictment, plea agreement, and Pre-Sentence Report.**

On November 26, 2012, Mr. Dalton waived indictment, and an Information was filed charging him with one count of being a felon in possession of a firearm and

---

[1] U.S.S.G § 2K2.1cmt. n.1 cross-references the definition of a "crime of violence" found in U.S.S.G. § 4B1.2. This motion will generally refer to § 4B1.2 for clarity.

1    ammunition in violation of 18 U.S.C. § 922(g)(1). *See* Exhibit A. The same day he

2    pleaded guilty by way of a plea agreement to Count One. *See* Dkt. No. 26. In the plea

3    agreement, the parties agreed to Guidelines calculations that included a specific

4    offense characteristic of 8-24 firearms under § 2K2.1(b)(1)(B) and a three-level

5    adjustment for acceptance of responsibility under § 3E1.1, and a base offense level

6    set at 20 under § 2K2.1.  *See* Pre-Sentence Report ("PSR") at 16. The government

7    agreed to recommend a low-end Guideline sentence. *Id.* at 13.  The parties also

8    agreed that Mr. Dalton could seek additional adjustments, departures, and variances,

9    and that the government could oppose them. *Id.*

10        The PSR calculated a base offense level of 20. *See id.* at 7 (citing

11    § 2K2.1(a)(4)(A)[2]). It did so because it claimed that Mr. Dalton's 2006 conviction for

12    felonious assault under Ohio Rev. Code § 2903.11(A)(1) qualified as a "crime of

13    violence" under § 4B1.2. *Id.*; *see* § 2K2.1(a)(4) (imposing a base offense level of 20

14    when the instant offense is committed after a felony conviction for a "crime of

15    violence"). The PSR also recommended a four-level enhancement for the offense

16    involving 8 to 24 firearms. *Id.*  At criminal history II, and after the three-level

17    reduction for acceptance of responsibility, the PSR calculated Mr. Dalton's final

18    adjusted offense level as 21 and his Guidelines range as 41-51 months in prison.

19    *Id.* at 21.

20        If the PSR had not scored Mr. Dalton's assault conviction as a "crime of

21    violence," his base offense level would have been 14. *See* § 2K2.1(a)(7).

22    **B.**    **Sentencing.**

23        Mr. Dalton appeared before the district court for sentencing on April 8, 2013.

24    *See* Dkt. No. 45. At sentencing, the court followed the plea agreement and assigned

---

27    [2] This and all citations to the United States Sentencing Guidelines are to the Nov. 1,

28    2012 edition in use at the time of Mr. Dalton's sentencing.

1  him a base offense level of 20, a four-level adjustment for additional firearms, and a

2  three-level adjustment for acceptance of responsibility. *See* Transcript of Sentencing

3  Hearing ("Exhibit B") at 13-14. With Mr. Dalton's criminal history category at II, the

4  court calculated his Guidelines range at 41-51 months. *Id.* at 14.  The district court

5  imposed a high-end sentence of 51 months.  *Id.*

6  **C.     Subsequent events.**

7          Mr. Dalton did not appeal his conviction or sentence.

8          On June 26, 2015, the Supreme Court issued its decision in *Johnson* striking

9  down the "residual clause" of the Armed Career Criminal Act as unconstitutionally

10 vague. 135 S. Ct. at 2557. Mr. Dalton now timely files this motion under § 2255

11 seeking relief under *Johnson.*

12         Mr. Dalton's current scheduled release date from BOP custody is **February 3,**

13 **2017.**

14                                    **III.**

15                                 **Argument**

16         Mr. Dalton's sentence was enhanced because the district court found that his

17 prior conviction for felonious assault under Ohio Rev. Code § 2903.11(A)(1)

18 qualified as a "crime of violence" under the Career Offender sentencing guideline,

19 and thereby resulted in an enhanced base offense level for his felon-in-possession

20 charge. However, Ohio felonious assault cannot qualify as a crime of violence after

21 the Supreme Court's decision in *Johnson*, because it no longer qualifies under any of

22 the definitions contained in the Guideline. His sentence should be vacated, and he

23 should be re-sentenced without the adjustment.

24 **A.     Mr. Dalton's conviction for felonious assault under Ohio Rev. Code**

25 **        § 2903.11(A)(1) is not a crime of violence after *Johnson*.**

26         There are three ways a conviction can qualify as a "crime of violence" under

27 the cross-referenced Career Offender sentencing guideline: (1) under the force

28 clause; (2) as a match for one of the four enumerated, generic offenses; or (3) under

                                       4

the now-unconstitutional residual clause. The Ohio assault statute doesn't qualify under any of the three.

First, Ohio felonious assault does not qualify as a crime of violence under the "force clause," for two reasons.  The crime is not defined in terms of applying physical force, but in causing "physical injury" that is so broad, it expressly encompasses mental illness or conditions.  Moreover, the offense does not require an *intentional* application of force.  Second, the Ohio offense is not one of the four enumerated offenses. Third, Ohio felonious assault cannot qualify as a crime of violence under the residual clause, which is now void for vagueness following *Johnson*.



> (a)    The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*The force clause.*

*The enumerated offenses.*

*The residual clause.*

**FIG. 1** *- The Career Offender sentencing guideline's definition of a "crime of violence."*
U.S.S.G. § 4B1.2.

**1.**    <u>Ohio felonious assault is not a crime of violence under the force clause because it is overbroad as to "physical force" and required mental state.</u>

To qualify as a crime of violence under the force clause, an offense must have "as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2*a)(1).  However, Ohio Rev. Code § 2903.11(A)(1) does not require as an element the employment of "physical force," as shown by the fact that it expressly treats psychological conditions as "physical harm" and does not

1   require the intentional "use" of any force it does involve.[3]

2          The Ohio statute does not specify a use of force as an element, but takes as

3   the gravamen any knowing acts that "[c]ause serious physical harm."  However,

4   "serious physical harm" is expressly defined by statute to include "[a]ny mental

5   illness or condition of such gravity as would normally require hospitalization or

6   prolonged psychiatric treatment."  Ohio Rev. Code § 2901.01(A)(5)(a).  The Supreme

7   Court has already held that  "We think it clear that in the context of a statutory

8   definition of 'violent felony,' the phrase 'physical force' means *violent* force—that is,

9   force capable of causing **physical** pain or injury to another person."  *Curtis Johnson v.*

10  *United States*, 559 U.S. 133, 140 (2010) (emphasis added) (discussing definition of

11  "violent felony" in 18 U.S.C. § 924(e)(2)(B)(i), which is worded identically to the

12  force clause in § 4B1.2(a)(1)). Consequently, the Ohio felonious assault can lie where

13  the defendant commits some non-violent act that results in severe emotional trauma

14  to the victim.  *See, e.g., State v. Cooper*, 743 N.E.2d 427 (Ohio App. 2000) (finding

15  multiple acts and omissions towards defendant's children, resulting in their having

16  mental illness, sufficed to constitute felonious assault); *State v. Hodges*, 669 N.E.2d

17  256 (Ohio App. 1995) (holding priest's cajoling victim into having sex, causing

18  victim's mental breakdown, constituted felonious assault).  Because the crime

19  includes causing non-physical harm with no use of force, it is overbroad and does

20  not necessarily involve the use or attempted use of violent "physical force."

21          Moreover, the Ohio offense does not qualify as a "crime of violence" under

22  the force clause, because it does not require the *intentional* use or threatened use of

23  physical force. The Supreme Court first announced this rule in *Leocal v. Ashcroft*,

24  holding that DUI was not a crime of violence under the nearly identical force clause

25  in 18 U.S.C. § 16(a), because the offense could be committed through mere

26

27  _____

28  [3] The pertinent part of the statute reads: "(A) No person shall knowingly do either of
    the following: [¶] (1) Cause serious physical harm to another or another's unborn."

1    negligence. *See* 543 U.S. 1, 9-10 (2004). The en banc Ninth Circuit went on to

2    interpret *Leocal* as requiring "that to constitute a federal crime of violence an offense

3    must involve the **intentional** use of force against the person or property of

4    another." *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc)

5    (emphasis added); *see also United States v. Gomez-Leon,* 545 F.3d 777, 787 (9th Cir.

6    2008) (holding that to qualify as a crime of violence under the force clause, "the

7    underlying offense must require proof of an **intentional** use of force") (emphasis

8    added). Likewise, in *United States v. Dixon*, the Ninth Circuit addressed the nearly

9    identical provision in the Armed Career Criminal Act, defining a "violent felony" to

10   include offenses with "an element of the use, attempted use, or threatened use of

11   physical force against the person of another." 18 U.S.C. § 924(e)(2)(b)(i). The court

12   adhered to a long line of Ninth Circuit and Supreme Court precedents limiting

13   violent felonies under the ACCA—as well as crimes of violence under § 16(a)—to

14   those that require the *intentional* use of physical force.  *See* 805 F.3d 1193, 1197 (9th

15   Cir. 2015) (citing *Leocal* 543 U.S. at 12-13 and *(Curtis) Johnson*, 559 U.S. at 140)). Since

16   the force clause in the ACCA is identical to the force clause in the Career Offender

17   sentencing guideline, c*ompare* 18 U.S.C. § 924(e)(2)(B)(ii) *with* § 4B1.2(a)(2)(b); *see also*

18   *United States v. Terrell*, 593 F.3d 1084, 1087 n.1 (9th Cir. 2010), in order for an offense

19   to qualify as a "crime of violence" here involving the "active employment" of force,

20   *Leocal*, 543 U.S. at 9, the state statute must require *intent*.

21        However, the Ohio felonious assault requires only knowledge, which, under

22   Ohio law, is a separate and lesser mental state than purpose or intent.  *See* Ohio Rev.

23   Code § 2901.22(A) ("A person acts purposely when it is the person's specific

24   intention to cause a certain result") & (B) ("A person acts knowingly, **regardless of**

25   **purpose**, when the person is aware that the person's conduct will probably cause a

26   certain result") (emphasis added); *State v. Cooey,* 544 N.E.2d 895, 905 (Ohio 1989)

27   ("the culpable mental state required for a felonious assault conviction . . . is **not**

28   **purpose**, but knowledge") (emphasis added).  But *Fernandez-Ruiz* contrasted the

accidental application of force discussed in *Leocal* with force that is the result of a "purposeful act": " 'Purposeful' means '[d]one with a specific purpose in mind; DELIBERATE.' "   466 F.3d at 1130 (citation omitted).  Consequently, Ohio defines the mental state required for felonious assault (knowledge) precisely in the way *Fernandez-Ruiz* recognized disqualifies an offense as a crime of violence under *Leocal*.

Because Ohio felonious assault cannot qualify as a violent felony under the force clause of the ACCA, it likewise cannot qualify as a crime of violence under the force clause of the Guidelines and so cannot serve as a predicate to the enhanced base offense level.

**2.**   Ohio Rev. Code § 2903.11 does not qualify as an enumerated offense.

The Career Offender sentencing guideline names four generic crimes which, if a prior statute of conviction matches their elements, qualify that statute as a crime of violence. *See* U.S.S.G. § 4B1.2(a)(2). The four generic crimes include "burglary of a dwelling, arson, or extortion" or an offense involving use of explosives. *Id.* However, Ohio felonious assault is manifestly not any of these four offenses.  The Ohio crime is patently not predicated on elements of entry of a dwelling, destruction of property by fire, the constrained obtaining of property, or the use of explosives. *See* 2 *Ohio Jury Instructions—Criminal* 503.11(A) (Apr. 2016) (jury must only find defendant "knowingly [¶] caused serious physical harm").  Due to a total mismatch of the required elements, § 2903.11(A)(1) does not qualify as an enumerated offense in § 4B1.2.

**3.**   Following *Johnson*, Ohio felonious assault cannot qualify as a crime of violence under section 924(c)'s residual clause.

*(Samuel) Johnson* holds that the residual clause of the Career Offender sentencing guideline is now void for vagueness, and so Mr. Dalton's assault conviction under § 2903.11(A)(1) cannot qualify as a "crime of violence" under that prong of § 4B1.2(a)(2).

**a.**    _Johnson applies to the Sentencing Guidelines._

In other cases, the government has conceded – and this Court has accepted that concession – that _Johnson_ applies to the Sentencing Guidelines. _See_, _e.g._, _United States v. Benavides_, 617 F. App'x 790 (9th Cir. 2015). In _United States v. Torres_, No. 14-10210 (9th Cir.) (argued and submitted on December 8, 2015), the United States agreed that "the invalidation of the ACCA's residual clause in _Johnson_ applies to the identically worded clause in § 4B1.2(a)(2), and thus that [the defendant's] felony convictions, after _Johnson_, no longer qualify as 'crimes of violence.'" _Torres_, No. 14-10210, ECF No. 53 at 4.

This Court has interpreted the identically worded residual clauses of the Armed Career Criminal Act and §4B1.2 interchangeably. _See_, _e.g._, _United States v. Willis_, 795 F.3d 986, 996 (9th Cir. 2015). Further, the advisory guidelines are subject to claims of unconstitutional vagueness. _Peugh v. United States_, 133 S. Ct. 2072, 2078 (2013) (holding that the Ex Post Facto Clause applies to advisory guidelines); _see also United States v. Johnson_, 130 F.3d 1352, 1354 (9th Cir. 1997) (then-mandatory guidelines were susceptible to vagueness challenges); _Gall v. United States_, 552 U.S. 38, 49 (2007) (continuing to require that the advisory guidelines be the starting point for sentencing).

In _Peugh_, the Sentencing Guidelines had changed between the defendant's commission of the crime and his sentencing. 133 S. Ct. at 2078. The change increased the offense level, and therefore the Guidelines range to which the defendant was exposed. _Id._ at 2078-79. In finding that the Ex Post Facto Clause of the Constitution applied, the Court expressly rejected the government's argument that no violation could occur where the Guidelines were merely advisory. _Id._ at 2087. Pointing to empirical evidence demonstrating the central, "lodestone" role the Guidelines play in "influencing the sentences imposed by judges," the Court held that "the [Guidelines] range is intended to, and usually does, exert controlling influence on the sentence the court will impose." _Id._ at 2084, 2085. This outsized

influence means, the Court held, that the Guidelines are susceptible to constitutional challenges even though they are now advisory. *Id.*

Here, the due process principles espoused in *(Samuel) Johnson*, combined with the application of constitutional protections to the Guidelines under *Peugh*, compel the conclusion that the identical residual clause of §4B1.2 is also unconstitutionally vague. *United States v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015); *see also Dimaya*, 803 F.3d at 1120 (holding 18 U.S.C. § 16(b)'s residual clause, as incorporated in 8 U.S.C. § 1101(a)(43)(F), is unconstitutionally vague).

Ohio felonious assault is not a crime of violence under § 4B1.2, and Mr. Dalton's enhanced sentencing guidelines based on his conviction under that statute violated due process.

**b.**   *Johnson's application to the Guidelines is retroactive under* <u>Welch</u>.

A new rule has been "made retroactive to cases on collateral review" if "the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001). The Supreme Court has held that new substantive rules "generally apply retroactively," while new procedural rules do not. *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004); *see also Bousley v. United States*, 523 U.S. 614, 620 (1998); *Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality op.). Substantive rules include rules that "narrow the scope of a criminal statute by interpreting its terms," *Schriro*, 542 U.S. at 351-52, or "alter[ ] the range of conduct or the class of persons that the law punishes," *id.* at 353.

In *Welch v. United States*, the Supreme Court held that *Johnson* was a "new substantive rule that has retroactive effect in cases on collateral review." 136 S. Ct. 1257, 1268 (2016). It is substantive, the Court held, because it changed the substantive reach of a sentencing enhancement. *Id.* at 1265. "*Johnson* establishes . . . that 'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause. . . . It follows that *Johnson* is a substantive decision." *Id.*

Just as clearly, *Welch* held that *Johnson* is decidedly not a procedural rule. It

does not "allocate decision making authority between jury and jury, or regulate the evidence that the court could consider in making its decision." *Id.* (internal citations and quotation marks omitted). Rather, *Johnson* affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied." *Id.*

The fact that *Welch* arose in the context of the Armed Career Criminal Act is of no effect. The holding of *Welch* is not limited to Armed Career Criminal Act defendants, as the Court states: "The residual clause is invalid under *Johnson* so it can no longer mandate or authorize *any* sentence." *Id.* (emphasis added). "It follows that *Johnson* is a substantive decision," *id.*—not a substantive decision as it relates to Armed Career Criminal Act defendants, but a substantive decision, period.

Under *Teague*, "either a rule is retroactive or it is not." *United States v. Doe*, 810 F.3d 132, 154 & n.13 (3d Cir. 2015). As the government itself has previously argued, it was "not aware of any . . . chameleon-like rules" that "were substantive for some purposes and procedural for others." Supplemental Brief for United States on Rehearing En Banc, *Spencer v. United States*, No. 10-10676, at 15 (11th Cir. Aug. 15, 2013). Rather, a rule's "status as a substantive rule is fixed," and "does not fluctuate based on whether the prisoner is challenging an Armed Career Criminal Act enhancement, a mandatory guidelines enhancement, or, as here, an advisory guidelines enhancement." *Id.* at 15; *see also Reina-Rodriguez v. United States*, 655 F.3d 1182, 1189 (9th Cir. 2011) (en banc) (applying a rule that was substantive in the Armed Career Criminal Act context to the guidelines). Because *Johnson* states a substantive rule, it must be given retroactive effect, regardless of the context.

"Increasing a defendant's sentence under the residual clause denies due process of law" because it is "vague in all its applications." *Johnson*, 135 S. Ct. at 2551. Because it is invalid, the residual clause can no longer "mandate or authorize any sentence." Therefore, any "sentence that is based on that clause" is illegitimate. *Welch*, 136 S. Ct. at 1265. And when a court enhances a sentence using the residual clause of the Career Offender sentencing guidelines, that sentence is "based on" the

clause. As the Supreme Court main succicntly clear in *Peugh*, "the guidelines are in a real sense the *basis* for the sentence." 133 S. Ct. 2072, 2083 (emphasis added).

> **i.**   The holding and reasoning of *Welch* apply with equal force to the Sentencing Guidelines.

It makes no difference whether a sentence is based on the residual clause in the Armed Career Criminal Act or the residual clause in the Career Offender sentencing guideline. In either case the sentence is illegitimate. By invalidating the residual clause in its entirety, "*Johnson* 'changed the substantive reach of the [guidelines], 'altering the range of conduct or class of persons'" that can be punished under the career offender – or any other enhancement based on § 4B1.2(a)(2)'s residual clause – guideline. *Welch*, 136 S. Ct. at 1265. Consistent with lower decisions before and after *Johnson*,[4] *Welch* made clear that the relevant "category" for retroactivity purposes is the *rule*, not the *type of case* in which the rule is invoked.

That this is so is made clear by the way the Court framed the issue. The question in *Welch*, as framed by the Court, was whether the "new rule [announced in *Johnson*] falls within one of the two categories that have retroactive effect under *Teague*," which it defined as "categories of decisions" that are "substantive rules" or "watershed rules of criminal procedure," *Welch*, 136 U.S. at 1264. (emphasis added). The Court did not, as the Government had hoped, even hint that it intended to divide Armed Career Criminal Act errors and Guidelines errors into "two distinct

---

[4]   *See, e.g., United States v. Doe*, 810 F.3d 132, 154 & n.13 (3d Cir. 2015); *Narvaez v. United States*, 674 F.3d 621, 625-26 (7th Cir. 2011); *Brown v. Caraway*, 719 F.3d 583, 594–95 (7th Cir. 2013); *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1189 (9th Cir. 2011); *Rozier v. United States*, 701 F.3d 681 (11th Cir. 2012); *In re Watkins*, 810 F.3d 375, 383 (6th Cir. 2015) (holding in an ACCA case that *Johnson* is "categorically retroactive" to cases on collateral review); *In re Grant*, No. 15-5795 (6th Cir. March 7, 2016) (authorizing successive § 2255 motion in a guidelines case based on *Watkins*); *Price v. United States*, 795 F.3d 731, 734 (7th Cir. 2015) (holding in an ACCA case that *Johnson* is "categorically retroactive"); *Stork v. United States*, No. 15-2687, slip op. at 1 (7th Cir. Aug. 13, 2015).

categories" for retroactivity purposes. It held, without qualification, that the residual clause is invalid at all times and for all purposes. *Id.* at 1265. In light of the Court's holding, one can only conclude that the substantive rule announced in *Johnson* is categorically retroactive to all cases in which it applies.[5]

### ii. The Career Offender guideline is both uniquely statutory and uniquely severe in its application.

Congress has instructed that district courts "shall consider" the "sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines," 18 U.S.C. § 3553(a)(4), an instruction that has always been and remains mandatory. And the Supreme Court has made clear that the guidelines are the sentencing court's "starting point and . . . initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). District courts "'must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process,'" *Peugh*, 133 S. Ct. at 2083. "When a defendant is sentenced under an incorrect guideline range – whether or not the defendant's ultimate sentence falls within the correct range – the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

While all of the guidelines are legislative in nature, offender guideline is uniquely statutory and also uniquely severe. The Sentencing Commission established the career offender guideline pursuant to a congressional directive to "specify a sentence to a term of imprisonment at or near the maximum term authorized" for defendants convicted for at least the third time of a felony that is a "crime of violence" or a specified drug offense. *See* 28 U.S.C. § 994(h). Accordingly, the guideline ties the offense level to the statutory maximum for the offense of

---

[5] *See Davis v. United States*, 564 U.S. 229, 243 (2011) (retroactivity is a "categorical matter").

conviction and automatically places the defendant in Criminal History Category VI if he is convicted for at least the third time of a felony that is a "crime of violence" or a "controlled substance offense." *See* U.S.S.G. § 4B1.1(a)-(b) (2015).

The Commission has no discretion to reduce the severity of the career offender guideline, *see United States v. LaBonte*, 520 U.S. 751, 757 (1997), despite the fact that it creates a "category of offender subject to particularly severe punishment," *Buford v. United States*, 532 U.S. 59, 60 (2001). Indeed, whether or not a defendant is subject to that punishment makes a huge difference. The guideline range for a defendant convicted of a drug offense who is classified as a career offender is tied to the statutory maximum, while the guideline range for a person convicted of a drug offense who is not classified as a career offender is tied to the statutory minimum. As a result, the average career offender guideline minimum in 2014 (204 months) was 2.46 times the non-career offender guideline minimum (83 months), and the average sentence imposed on drug offenders classified as career offenders (138.6 months) was 2.35 times the average sentence imposed on drug offenders not classified as career offenders (62 months).

The mandatory guidelines, of course, "ha[d] the force and effect of laws," were "binding on all judges," and prescribed "the maximum [sentence] authorized." *United States v. Booker*, 543 U.S. 220, 233-34 (2005).

The holding and reasoning of *Welch* compel the conclusion that *Johnson* applies retroactively in cases involving defendants who received a sentencing enhancement under the residual clause in USSG § 4B1.2(a).

**B.    Mr. Dalton is otherwise entitled to relief under 28 U.S.C. § 2255, because his claim is cognizable, and his petition is timely.**

    **1.**    <u>Mr. Dalton's claim is cognizable under § 2255(a).</u>

A federal prisoner may move to "vacate, set aside or correct" his sentence if it "was imposed in violation of the Constitution." 28 U.S.C. § 2255(a). Mr. Dalton's 51-month sentence was imposed in violation of the Constitution because it was

1  predicated on a residual clause that is "unconstitutionally vague"; thus, "imposing an

2  increased sentence under the residual clause . . . violates the Constitution's guarantee

3  of due process." *Johnson*, 135 S. Ct. at 2563. As demonstrated above, *Johnson*'s

4  constitutional holding regarding the Armed Career Criminal Act's residual clause

5  applies to the nearly-identical residual clause in 18 U.S.C. § 924(c)(3)(B). *See Dimaya*,

6  803 F.3d at 1120 (applying *Johnson* to identical wording of residual provision in

7  § 16(b)). Thus, Mr. Dalton's claim for relief is cognizable under the plain language of

8  § 2255(a).

9       This is all that is required. Because Mr. Dalton's sentence was imposed "in

10  violation of the Constitution," 28 U.S.C. § 2255(a), the "fundamental defect"

11  standard applicable to ordinary claims of statutory error does not apply. Only a non-

12  jurisdictional, non-constitutional error of law must constitute "a fundamental defect

13  which inherently results in a complete miscarriage of justice" in order to be

14  cognizable. *Hill v. United States*, 368 U.S. 424, 428 (1962); *see also United States v.*

15  *Addonizio*, 442 U.S. 178, 185 (1979); *Davis v. United States*, 417 U.S. 333, 343-344

16  (1974); *United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015) ("[I]f the alleged

17  sentencing error is neither constitutional nor jurisdictional, a district court lacks

18  authority to review it unless it amounts to 'a fundamental defect which inherently

19  results in a complete miscarriage of justice.'") (citations omitted); *Narvaez v. United*

20  *States*, 674 F.3d 621, 623 (7th Cir. 2011) ("The term 'miscarriage of justice' comes

21  from the Supreme Court's holding that a non-jurisdictional, non-constitutional error

22  of law is not a basis for collateral attack under § 2255 unless the error is 'a

23  fundamental defect which inherently results in a complete miscarriage of justice.'")

24  (citations omitted).

25       A claim based on *Johnson*, in contrast, is constitutional and therefore

26  cognizable. *See United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (although an

27  erroneous determination of an advisory guideline range "generally [is] not cognizable

28  on a § 2255 motion," relief "is available" for "an error of constitutional . . .

magnitude"); *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (recognizing that "fundamental defect" standard does not apply to constitutional or jurisdictional error); Order, *Brown v. United States*, No. 15-10025 (11th Cir. Sept. 2, 2015) (granting certificate of appealability because although a claim that a defendant was misclassified as a career offender "is generally not cognizable" under circuit law applicable to errors of statutory interpretation, "*Johnson* involved a claim of constitutional error").

> **2.**   This motion is timely under 28 U.S.C. § 2255(f)(3).

Mr. Dalton's motion is also timely under 28 U.S.C. § 2255(f)(3), which provides for a one-year limitations period to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

The Supreme Court decided *Johnson* on June 26, 2015, and Mr. Dalton filed his claim within a year of that date. As discussed above, the Supreme Court recognized a new right in *Johnson*, and announced a substantive rule that is therefore retroactive to cases on collateral review.

IV.

## **Conclusion**

Because Mr. Dalton's Ohio felonious assault conviction is no longer a crime of violence after *Johnson*, and because he has shown that he is otherwise entitled to relief under 28 U.S.C. § 2255, Mr. Dalton respectfully requests that this Court grant his motion, vacate the sentence, and re-sentence him.

Respectfully submitted,


Dated:     June 13, 2016          *s/ Benjamin P. Davis*
                                  **Benjamin P. Davis**
                                  **Kara Hartzler**
                                  Federal Defenders of San Diego, Inc.
                                  Attorneys for Mr. Dalton

# EXHIBIT A

```
                                        FILED

                                    AUG 1 5 2012

                                   CLERK
                                   SOUTHERN            FORNIA
                                   BY                  PUTY
```

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,        )  Case No.  12CR3367-BEN
                                      )
11                    Plaintiff,      )  I N F O R M A T I O N
                                      )
12         v.                         )  Title 18, U.S.C., Secs. 922(g)(1)
                                      )  and 924(a)(2) - Felon in
13   JEREMY ADAM DALTON,              )  Possession of a Firearm; Title 18,
                                      )  U.S.C., Sec. 924(d)(1) and
14                    Defendant.      )  Title 28, U.S.C., Sec. 2461(c) -
                                      )  Criminal Forfeiture
15   _____)

16        The United States Attorney charges:

17        On or about June 7, 2012, within the Southern District of

18   California, defendant JEREMY ADAM DALTON, being a person who had

19   previously been convicted in a court, that is, the Superior Court of

20   Ohio, County of Ohio, of a crime punishable by imprisonment for a term

21   exceeding one year, that is, on or about July 7, 2008, of

22   Possession of Cocaine, in violation of Ohio Revised Code

23   Section 2925.11(A)(C)(4)(b), did knowingly and unlawfully possess in

24   and affecting interstate commerce, to wit: one Glock, model 23,

25   .40 caliber, pistol, bearing serial number BDB110US; in violation of

26   Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

27   //

28   //

     JLS(RKJ):nlv:8/14/12

**FORFEITURE ALLEGATION**

Upon conviction of the offense alleged in this Information, defendant JEREMY ADAM DALTON shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), the firearm involved, to wit: one Glock, model 23, .40 caliber, pistol, bearing serial number BDB110US; in violation of Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c).

DATED: ___8/15/12___.

LAURA E. DUFFY
United States Attorney

JEFFREY L. SHIH
Assistant U.S. Attorney

2

# EXHIBIT B

FILED

NOV 2 6 2012

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. <u>12CR3367-BEN</u> |
| Plaintiff, | ) ) | I N F O R M A T I O N |
| v. | ) ) ) | (SUPERSEDING) Title 18, U.S.C., Secs. 922(g)(1) and 924(a)(2) – Felon in |
| JEREMY ADAM DALTON, | ) ) | Possession of Firearms and Ammunition; Title 18, U.S.C., Sec. |
| Defendant. | ) ) ) | 924(d)(1) and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |

The United States Attorney charges:

On or about June 7, 2012, within the Southern District of California, defendant JEREMY ADAM DALTON, being a person who had previously been convicted in a court, that is, the Superior Court of Ohio, County of Ohio, of a crime punishable by imprisonment for a term exceeding one year, that is, on or about July 7, 2008, of Possession of Cocaine, in violation of Ohio Revised Code Section 2925.11(A)(C)(4)(b), did knowingly and unlawfully possess, in and affecting interstate commerce, to wit:

        1) 681 rounds of assorted ammunition;

        2) one Glock, model 23, .40 caliber pistol, serial number BDB110US;

        3) one Taurus, model 608, .357 caliber revolver, serial number BT652166;

        4) one Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;

5) one Taurus, model PT140 Millennium Pro, .40 caliber pistol, serial number SYJ45735;

6) one Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver, serial number DM104710;

7) one Walther, model P22, .22 caliber pistol, serial number N017274;

8) one Colt, model DELTA ELITE, .10 caliber pistol, serial number 10SS0832;

9) one Glock, model 17, .9 caliber pistol, serial number KNP396;

in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

## FORFEITURE ALLEGATION

Upon conviction of the offense alleged in this Information, defendant JEREMY ADAM DALTON shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), the firearms and ammunition involved, to wit:

1) 681 rounds of assorted ammunition;

2) one Glock, model 23, .40 caliber pistol, serial number BDB110US;

3) one Taurus, model 608, .357 caliber revolver, serial number BT652166;

4) one Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;

5) one Taurus, model PT140 Millennium Pro, .40 caliber pistol, serial number SYJ45735;

6) one Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver, serial number DM104710;

7) one Walther, model P22, .22 caliber pistol, serial number N017274;

8) one Colt, model DELTA ELITE, .10 caliber pistol, serial number 10SS0832;

9) one Glock, model 17, .9 caliber pistol, serial number KNP396;

2

1  in violation of Title 18, United States Code, Section 924(d)(1), and

2  Title 28, United States Code, Section 2461(c).

3  DATED: 11/26/12 .

4                                  LAURA E. DUFFY
                                   United States Attorney
5

6                                  RANDY K. JONES
                                   Assistant U.S. Attorney
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

```
 1                 UNITED STATES DISTRICT COURT

 2            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4    UNITED STATES OF AMERICA,          .
                                         .
 5            PLAINTIFF,                  . NO. 12-CR-3367
                                         .
 6            V.                          . APRIL 8, 2013
                                         .
 7    JEREMY ADAM DALTON,                 . 10:24 A.M.
                                         .
 8            DEFENDANT.                  . SAN DIEGO, CALIFORNIA
      . . . . . . . . . . . . . . . .     .
 9

10

11

         TRANSCRIPT OF SENTENCING WITH A PRESENTENCE REPORT
12            BEFORE THE HONORABLE ROGER T. BENITEZ
                  UNITED STATES DISTRICT JUDGE
13

14       APPEARANCES:

15

         FOR THE PLAINTIFF:      U.S. ATTORNEY'S OFFICE
16                               SOUTHERN DISTRICT OF CALIFORNIA
                                 BY:  RANDY JONES, ESQ.
17                               880 FRONT STREET, ROOM 6293
                                 SAN DIEGO, CALIFORNIA  92101
18
         FOR THE DEFENDANT:      LAW OFFICE OF VIKAS BAJAJ
19                               BY:  VIKAS BAJAJ, ESQ.
                                 225 BROADWAY, SUITE 2200
20                               SAN DIEGO, CALIFORNIA  92101

21

         COURT REPORTER:      DEBORAH M. O'CONNELL, RPR, RMR, CSR
22                            333 WEST BROADWAY, SUITE 420
                              SAN DIEGO, CALIFORNIA, 92101
23

24    REPORTED BY STENOTYPE, TRANSCRIBED BY COMPUTER

25
```

1          SAN DIEGO, CALIFORNIA, APRIL 8, 2013, 10:24 A.M.

2                           *  *  *  *

3

4          THE CLERK:  NINE ON CALENDAR, CASE NO. 12-CR-3367,

5   USA VS. JEREMY ADAM DALTON, SENTENCING WITH A PRESENTENCE

6   REPORT.

7          MR. JONES:  GOOD MORNING, YOUR HONOR.  RANDY JONES,

8   FOR THE UNITED STATES.

9          MR. BAJAJ:  GOOD MORNING, YOUR HONOR.  VIKAS BAJAJ,

10   ON BEHALF OF JEREMY DALTON, WHO IS PRESENT.

11          THE COURT:  THIS MATTER IS SET FOR SENTENCING TODAY.

12   I NOTE UNDER *BOOKER*, THE GUIDELINES ARE ADVISORY.  I WILL

13   IMPOSE SENTENCE BASED ON 3553(A) FACTORS.

14      I APOLOGIZE.  I'M TAKING A LITTLE LONG.  I'M TRYING TO

15   REREAD THE PRE-SENTENCE REPORT.  BUT I HAVE SO MANY SECTIONS

16   THAT WERE UNDERLINED, IT'S TAKING ME --

17      COUNSEL, I'M LEANING TOWARDS IMPOSING THE HIGH END OF THE

18   GUIDELINE RANGE IN THIS CASE.  AND, FRANKLY, I THINK HE'S

19   PROBABILITY LUCKY THAT I IMPOSE A SENTENCE WITHIN THE RANGE

20   THAT HAS BEEN AGREED TO.  IT WOULDN'T TAKE ME MUCH TO VARY UP

21   FROM THAT, JUST SO THAT YOU KNOW.

22          MR. BAJAJ:  I UNDERSTAND, YOUR HONOR.  AND I'M

23   ASSUMING THE CONCERNS THAT THE COURT HAS ARE FOCUSED ON THE

24   PRESENCE OF NARCOTICS IN THE CASE?

25          THE COURT:  YOU KNOW WHAT, IT'S NOT NECESSARILY

1    FOCUSED ON THAT.  IT'S ACTUALLY -- LIKE I SAID, LOOK AT HOW

2    MUCH TIME I JUST SPENT TRYING TO GO BACK THROUGH THE UNDERLYING

3    PORTIONS OF -- I MEAN, FIRST OF ALL, I KNOW THAT DRUGS AND GUNS

4    ARE AN AWFUL COMBINATION, OKAY.  AND ALTHOUGH I AM NOT ASHAMED

5    TO ADMIT THAT I BELIEVE THAT WE SHOULD INTERPRET THE SECOND

6    AMENDMENT AS BROADLY AS WE INTERPRET THE FIRST AMENDMENT, I

7    ALSO UNDERSTAND THAT THERE ARE LIMITS.  AND THERE ARE THINGS

8    ABOUT THE SECOND AMENDMENT THAT -- OR THE CONDUCT OF THIS

9    DEFENDANT, WHICH, IN MY OPINION, SORT OFF DEFEAT THE WHOLE

10   PURPOSE OF THE SECOND AMENDMENT.

11       I MEAN, IT IS NOT ONLY THE NUMBER OF WEAPONS THAT HE

12   OWNED, BECAUSE, YOU KNOW, I DON'T THINK THERE IS ANYTHING IN

13   THE SECOND AMENDMENT THAT SHOULD LIMIT PEOPLE'S RIGHTS TO OWN

14   HOWEVER MANY WEAPONS THEY WANT.  BUT IT'S THE NATURE OF THE

15   WEAPONS, AND THE NATURE OF WHERE THE WEAPONS WERE STORED, HOW

16   THEY WERE CONCEALED, THE ADDITION OF THE DRUGS IN THE DRUG

17   CONTAINERS, THE FACT THAT THIS GENTLEMAN HAD A T-SHIRT WITH THE

18   WORD "POLICE" IN BOLD YELLOW LETTERS ACROSS IT.  THE FACT THAT

19   HE HAD DAGGERS.  NOW, YOU KNOW, I DON'T KNOW THAT THE SECOND

20   AMENDMENT PROTECTS DAGGERS.  MAYBE IT DOES.

21       BUT, YOU KNOW, I DON'T KNOW THAT I KNOW VERY MANY PEOPLE

22   WHO HAVE DAGGERS.  A KNIFE WITH BRASS KNUCKLES, A LOCK-PICKING

23   KIT.  NOW -- A PAIR OF HANDCUFFS, A PULL-OVER MASK WITH A

24   SKELETON FACE ON IT, A MILITARY BALLISTIC VEST.  I DON'T KNOW,

25   I COULD JUST GO ON AND ON.  I MEAN, IF YOU READ THIS

1   PRE-SENTENCE REPORT, I DON'T KNOW IF MR. DALTON WAS PREPARED TO

2   GO TO WAR AGAINST THE UNITED STATES OR MEXICO OR SOMEBODY ELSE,

3   BUT WHATEVER IT WAS HE WAS DOING IS CERTAINLY OUTSIDE OF WHAT I

4   WOULD CONSIDER TO BE THE REALM OF -- I MEAN, I WOULD IMAGINE

5   THAT IF YOU EVEN ASK THE PRESIDENT OF THE NRA WHETHER HE WOULD

6   THINK THIS TO BE NORMAL BEHAVIOR, I SUSPECT THE ANSWER WOULD

7   PROBABLY BE NO.  I MAY BE WRONG.  BUT THERE IS SO MUCH HERE, I

8   COULD GO ON.  AND I DON'T HAVE TIME TO DO IT.  IT'S VERY

9   TROUBLING TO ME.

10          MR. BAJAJ:  AND I UNDERSTAND THE COURT'S CONCERNS.

11  AND I WOULD BE REMISS IF I INDICATED THAT I DID NOT PREDICT

12  SOME SORT OF THIS SENTIMENT BEING PRODUCED THIS MORNING.  BUT I

13  WILL INDICATE TO THE COURT THAT MY CLIENT HAS ATTEMPTED

14  COOPERATION WITH THE UNITED STATES AND PROVIDED ALL THE

15  INFORMATION THAT HE POSSIBLY COULD IN THE TWO --

16          THE COURT:  I HAVE TAKEN THAT INTO CONSIDERATION,

17  COUNSEL, SO YOU KNOW.  I'VE CONSIDERED THAT, WHICH IS WHY I

18  SAID, IT WOULDN'T TAKE ME MUCH TO GO ABOVE THE GUIDELINE RANGE.

19  BUT I'VE CONSIDERED ALL OF THAT, WHICH IS WHY I'M WILLING TO

20  ADHERE TO THE AGREEMENT THAT HAS BEEN REACHED, BUT NOT GO DOWN

21  TO THE LOW END OF THE GUIDELINES, OKAY.

22          MR. BAJAJ:  I UNDERSTAND.  BUT THE REASON WHY I WAS

23  MAKING REFERENCE TO THE TWO MEETINGS OF ATTEMPTED COOPERATION,

24  OR THE TWO COOPERATION MEETINGS, AS I WOULD TERM THEM, IS

25  BECAUSE WE'VE TALKED AT LENGTH AND AD NAUSEAM WITH A

1   REPRESENTATIVE OF THE ATF, AGENT CONNOLLY, WHO, I BELIEVE, HAS

2   NOW BEEN PUT OUT TO OHIO, INTERESTINGLY ENOUGH.

3           THE COURT:  I'M SORRY, HE IS NOW WHAT?

4           MR. JONES:  HE'S IN BALTIMORE.

5           MR. BAJAJ:  HE IS IN BALTIMORE.

6           THE COURT:  I GOT YOU, I UNDERSTAND.

7           MR. BAJAJ:  YEAH, HE'S STATIONED OUT IN BALTIMORE.

8   AND ALSO LOCAL LAW ENFORCEMENT, AGENT DAVIES, WITH THE ATF

9   LIAISON DEPARTMENT.  AND A REAL PART OF THE MAGNITUDE AND

10  MAJORITY OF THE MEETING WAS IN REGARDS TO THE ITEMS THAT THE

11  COURT JUST REFERENCED IN ORDER TO DISPEL THE NOTION THAT

12  MR. DALTON WAS, IN FACT, PLANNING, PERHAPS, A ROBBERY OR

13  SOMETHING OF THAT NATURE.  THE EXPLANATION THAT WAS GIVEN TO

14  THE AGENTS IN OUR PRESENCE WAS ONE THAT AT FIRST BLUSH, WHEN

15  YOU SEE HIM, WAS SOMEWHAT COMICAL.  BUT AT THE SECOND --

16          THE COURT:  WAS IT A VIDEO -- THEY WERE GOING TO DO A

17  VIDEO?

18          MR. BAJAJ:  THAT'S CORRECT.  AND THERE WAS ALSO --

19          THE COURT:  AND YOU CAN DO A VIDEO WITH A WHOLE LOT

20  LESS THAN WHAT MR. DALTON HAD IN HIS POSSESSION, BELIEVE ME.

21          MR. BAJAJ:  AND THERE ARE SOME THINGS, YOUR HONOR,

22  ABOUT MR. DALTON AND HIS HISTORY THAT ARE NAIVE, TO SAY THE

23  VERY LEAST, ILL-PLANNED, AND ILL-EXECUTED.  THE EXPLANATION OF

24  THE RAP VIDEO, WHILE IT IS COMICAL AT FIRST BLUSH, IS A

25  REALISTIC EXPLANATION.  I BELIEVE THE AGENTS WHO WERE INVOLVED

1  IN THE INVESTIGATION SATISFIED THEMSELVES THAT WHILE IT WAS NOT

2  THE BRIGHTEST OF ALL IDEAS, THAT MR. DALTON WAS IN NO WAY,

3  SHAPE, OR FORM PLANNING TO USE ANY OF THE INDICIA THAT THE

4  COURT HAD REFERENCED FOR THE FURTHERANCE OF ANY CRIMINAL

5  ACTIVITY.

6      THE MASKS THAT THE COURT MADE REFERENCE TO WERE MASKS THAT

7  HE WOULD USE WITH A FEW OF HIS BUDDIES THAT HE HAD GATHERED

8  TOGETHER IN A MOTORCYCLE RIDING GROUP, AND THEY WOULD PUT THESE

9  MASKS ON AND FILM THEMSELVES.  AND THERE WAS INDICIA IMPOUNDED,

10 CORROBORATING THE FACT THAT THEY, IN FACT, DID THAT.  IS IT

11 SAFE, IS IT PRACTICAL, IS IT SOMETHING THAT WE EXPECT --

12      THE COURT:  WAIT, THEY WORE THESE SKULL-FACED COVERED

13 MASKS WHILE RIDING MOTORCYCLES?

14      MR. BAJAJ:  THAT'S CORRECT, YOUR HONOR.  NOW I DIDN'T

15 BELIEVE -- I SHOULDN'T SAY --

16      THE COURT:  I ASSUME THESE ARE DIRT BIKES?

17      MR. BAJAJ:  THESE ARE MOTORCYCLES THAT ARE ACTUALLY

18 ON THE PUBLIC HIGHWAYS.  THEY'RE ROAD BIKES.

19      THE COURT:  ON PUBLIC HIGHWAYS, OKAY.  I SEE.  SO

20 IT'S SORT OF LIKE, INSTEAD OF THE HELLS ANGELS OR THE MONGOLS,

21 IT'S, WHAT, THE SKELETONS?  YOU KNOW, THIS IS GETTING MORE AND

22 MORE FAR-FETCHED.

23      MR. BAJAJ:  YOU KNOW, AND I DIDN'T -- I CAN'T SAY

24 THAT I HAD A FULL BELIEF IN MY CLIENT'S RENDITION OF WHAT

25 ACTUALLY OCCURRED UNTIL I SAW PEOPLE ON THE HIGHWAY WEARING THE

1    VERY SAME THINGS ON MY WAY TO SAN CLEMENTE THE OTHER DAY.  I

2    WILL INDICATE TO THE COURT, HOWEVER, THAT MR. DALTON'S CASE IS

3    SOMEWHAT OF A PARADOX.  ON THE ONE SIDE, YOUR HONOR, HE IS A

4    26-YEAR-OLD INDIVIDUAL, WHO HAS AN ENORMOUS AMOUNT OF FAMILY

5    SUPPORT.  HIS FAMILY IS INVOLVED IN SUBSTANTIAL CHARITABLE

6    ORGANIZATIONS.  THEY'VE DEDICATED UPWARDS OF $4 MILLION SINCE

7    1999 TOWARDS A BUILDING OF HOSPITALS FOR WOMEN AND CHILDREN IN

8    FOREIGN COUNTRIES, INCLUDING, BUT NOT LIMITED TO, GUATEMALA.

9         HIS FATHER IS PRESENT IN COURT AS WELL.  IF HE CAN RAISE

10   HIS RIGHT HAND.  THAT'S ARTHUR RAY DALTON.  HE'S FLOWN IN FROM

11   OHIO, AS A REPRESENTATIVE OF THE FAMILY, TO INDICATE HIS

12   SUPPORT, WHICH IS SUBSTANTIAL AND PERMANENT ON BEHALF OF HIS

13   FAMILY.

14        HE HAS DONE THE RIGHT THINGS SINCE THE ARREST.  HE HAS NOT

15   SUFFERED ONE VIOLATION IN ANY WAY, VIOLATING THE ORDER OF

16   PRETRIAL RELEASE.  HE HAS RE-ENGAGED HIMSELF IN CHARITABLE

17   ORGANIZATIONS THAT HE HAS BEEN A PART OF HIS ENTIRE LIFE.  HE

18   HAS REKINDLED THE CONNECTIONS THAT HAVE BEEN VERY STRONG WITH

19   HIS FAMILY IN OHIO, SPENDING A SIGNIFICANT AMOUNT OF TIME WITH

20   HIS NIECES AND NEPHEWS AND HIS EXTENDED FAMILY.

21        HIS CASE IS A VERY UNIQUE CASE.  BECAUSE UNLIKE MANY

22   PEOPLE THAT WE DEAL WITH IN COURT, MR. DALTON DOES HAVE THE

23   TOOLS TO TURN THIS AROUND AND TO REHABILITATE HIMSELF AND TO

24   MAKE SURE HE CAN, A, TAKE CARE OF THE NARCOTICS, USE AND ABUSE,

25   WHICH HAS BEEN PRESENT FOR OVER A DOZEN YEARS IN HIS LIFE,

1   STARTING OFF, AS THE COURT ALLUDED TO, A COUPLE CASES AGO, WITH

2   THE USE OF MARIJUANA, GRADUATING TO COCAINE, OXYCODONE, AND A

3   MYRIAD OF OPIATES THAT WERE FOUND DURING THE EXECUTION OF THE

4   SEARCH WARRANT IN HIS APARTMENT HERE IN SAN DIEGO.

5       HE IS AN INDIVIDUAL WHO HAS SUFFERED SIGNIFICANTLY FROM

6   NARCOTICS ABUSE.  AND IT'S SOMETHING, UNFORTUNATELY, HIS FAMILY

7   HAS HAD TO DEAL WITH, SOMETHING HE WAS EMBARRASSED ABOUT, BUT

8   SOMETHING THE FAMILY NOW BELIEVES THAT HE NEEDS SUPPORT AND

9   HELP IN ADDRESSING.  SO WE WOULD FURTHER THE PROBATION

10  DEPARTMENT'S RECOMMENDATION FOR THE RDAP PROGRAM.  WHATEVER THE

11  COURT SENTENCE MAY BE, I THINK IT'S SOMETHING THAT COULD HELP.

12      HE HAS STRONG FAMILY TIES.  HE'S FULLY EMPLOYED.  HE WAS

13  MAKING DECENT MONEY UP UNTIL THE TIME OF HIS ARREST.  THE

14  CONSEQUENCE OF THE ARREST IS THAT HE HAS HAD TO, IN ESSENCE,

15  DIVULGE HIS INTEREST IN THE CORPORATION, RADIOGRAPHICS LIMITED

16  HERE.  IT IS A MEDICAL SUPPLY COMPANY THAT HE WAS BROUGHT OUT

17  HERE IN 2010 TO START WITH HIS PARTNER, WHO WAS THE ULTIMATE

18  RECIPIENT OF THE WEAPONS THAT WERE ACTUALLY INSIDE THE STORAGE

19  UNIT.  THIS INFORMATION WAS GIVEN TO THE AGENTS AT THE SECOND

20  DEBRIEF THAT WE HAD AT THE END OF NOVEMBER LAST YEAR.

21      HE HAS THE TOOLS TO TURN IT AROUND, YOUR HONOR.  HE HAS

22  THE TOOLS TO SEEK THE PROPER REHABILITATION, TO BE -- CONTINUE

23  BEING A BREAD-WINNING MEMBER OF SOCIETY AND A PERSON WHO

24  CONTRIBUTES SIGNIFICANTLY.

25      HIS OWN DONATIONS TO THE CHARITABLE ORGANIZATIONS ARE

1   PROBABLY SOMEWHERE UPWARDS OF 60 TO 65 PERCENT OF EACH PAYCHECK

2   THAT HE HAS HAD SINCE THIS CASE HAS COME AROUND, HAS GONE

3   TOWARDS THE CHARITABLE ORGANIZATIONS THAT HIS FAMILY SUPPORTS.

4       HE HAS ALSO SPENT A SIGNIFICANT AMOUNT OF TIME WITH THE

5   CHARITABLE DONATIONS, FEEDING THE POOR IN THE AREA IN OHIO

6   WHERE HE LIVES.  THE COURT HAS READ ALL THE FILINGS, ALL THE

7   LETTERS OF SUPPORT, WHICH ARE SUBSTANTIAL, WHICH ARE

8   SIGNIFICANT, AND I THINK SHOULD IN MANY WAYS INFLUENCE THE

9   COURT'S IMPRESSION OF WHO MR. DALTON IS AS A PERSON OTHER THAN

10  THE FIREARMS THAT WE'RE DEALING WITH TODAY.

11      THE ONLY ADDITIONAL RECOMMENDATION WE WOULD HAVE, YOUR

12  HONOR, FOR A REQUEST, WOULD BE FOR PLACEMENT IN THE

13  NORTHEASTERN REGION SO HE CAN BE CLOSE TO HIS FAMILY, HIS

14  EXTENDED FAMILY IN OHIO.  AND I KNOW MR. DALTON WOULD ALSO LIKE

15  TO ADDRESS THE COURT.

16          THE COURT:  ALL RIGHT, MR. DALTON, YOU HAVE A RIGHT

17  TO ADDRESS THE COURT BEFORE I IMPOSE SENTENCE.  IS THERE

18  ANYTHING YOU WANT TO SAY?

19          THE DEFENDANT:  YES, YOUR HONOR.  I WOULD LIKE TO

20  START BY APOLOGIZING, OBVIOUSLY, TO THE COURT AND TO MY FAMILY.

21  THESE CHARGES ARE NOT REPRESENTATIVE OF WHO I AM AS A PERSON.

22  OBVIOUSLY, IT'S A VERY LARGE MISTAKE, AND I TAKE COMPLETE --

23  ACCEPT COMPLETE RESPONSIBILITY FOR IT.  IT IS NOBODY'S FAULT

24  BUT MY OWN FOR BEING IN THIS SITUATION.  I NEVER INTENDED TO

25  HURT ANYBODY OR CAUSE ANYBODY HARM.  OBVIOUSLY, I'VE CAUSED A

1   LOT OF PEOPLE EMOTIONAL HARM, BUT I NEVER MEANT TO CAUSE

2   ANYBODY ANY PHYSICAL HARM.

3        I DO BELIEVE THAT MY FAMILY AND MY STRONG FAMILY UNIT -- I

4   HAVE THE TOOLS TO TURN THIS SITUATION AROUND AND NOT BE A

5   BURDEN ON SOCIETY BUT TRY TO BE A PRODUCTIVE MEMBER OF SOCIETY.

6             THE COURT:   OKAY.   DOES THE GOVERNMENT HAVE ANYTHING?

7             MR. JONES:   YES, YOUR HONOR.   YOUR HONOR, THE

8   GOVERNMENT AGREES THAT THIS CASE IS QUITE A PARADOX.   THE

9   DEFENDANT HAS A -- AS YOU'VE HEARD, GREAT FAMILY SUPPORT.   HE

10  IS WELL OFF FINANCIALLY.   HE HAS SOCIO-ECONOMIC FACTORS THAT

11  THE COURT DOESN'T NORMALLY SEE IN THESE TYPES OF CASES.   BUT AT

12  THE SAME TIME, WHAT IS TROUBLING IS NOT ONLY THE AMOUNT OF

13  WEAPONS AND AMMUNITION AND THE DRUGS THAT ARE INVOLVED IN THE

14  CASE, BUT THE DEFENDANT ALSO HAD A PRIOR RECORD, A CRIMINAL

15  RECORD, WHICH CONSISTS OF FELONIOUS ASSAULT AND DRUG

16  TRAFFICKING OR DRUG POSSESSION.

17       AND WITH RESPECT TO ALL THE OTHER ITEMS THAT WERE FOUND IN

18  THE STORAGE UNIT IN HIS APARTMENT, AND IN SPEAKING WITH HIM, IN

19  TRYING TO GET AN EXPLANATION, YOU KNOW, THE EXPLANATION HE'S

20  GIVEN, I THINK WE ARE GIVING HIM THE BENEFIT OF THE DOUBT.   BUT

21  ONE COULD ALSO SAY THAT IT HAD SOMETHING TO DO WITH THIS NOTION

22  OF WANTING TO BE SOME SORT OF GANGSTER, SORT OF A WANNA-BE

23  GANGSTER.   HE WAS HANGING OUT WITH THE WRONG FOLKS, FOLKS WHO

24  WERE INVOLVED IN SOME VERY SERIOUS ACTIVITY.

25       AND FOR THAT REASON, THE GOVERNMENT FINDS THIS CASE TO BE

1  SOMEWHAT TROUBLING AND CONCERNING.  BUT HAVING SAID ALL OF

2  THAT, AS WE SAID BEFORE, WE'VE GIVEN HIM THE BENEFIT OF THE

3  DOUBT, AND THAT'S WHY WE'RE MAKING THE RECOMMENDATION OF THE

4  LOW END OF THE GUIDELINES.

5          THE COURT:  PROBATION HAVE ANYTHING?

6          PROBATION OFFICER:  I HAVE NO ADDITIONAL INFORMATION,

7  YOUR HONOR.

8          THE COURT:  BOY, YOU KNOW, THIS IS JUST SUCH A

9  TROUBLING CASE.  IT SEEMS THAT MR. DALTON DOES HAVE FAMILY

10  SUPPORT.  AND UNLIKE SO MANY PEOPLE THAT APPEAR BEFORE ME, THAT

11  DON'T HAVE ANY ASSETS OR FINANCIAL RESOURCES TO RELY ON, I LOOK

12  AT HIS FINANCIAL STATEMENTS, FOR EXAMPLE, AND NOW I HEAR ABOUT

13  HIS FAMILY.  APPARENTLY, HE HAS A WEALTHY FAMILY, AND WHICH

14  LEADS ME TO CONCLUDE THAT MONEY AND FINANCIAL STATUS REALLY

15  HAVE VERY LITTLE BEARING ON CRIMINAL BEHAVIOR.

16      YOU KNOW, BESIDES THE THINGS THAT I HAD POINTED OUT --

17  YEAH, I NOTED IN HIS PAST CRIMINAL HISTORY, HE HAD A FELONIOUS

18  ASSAULT AT THE AGE OF 19.  AND THEN, AT THE AGE OF 21, HE WAS

19  CONVICTED OF POSSESSION OF COCAINE.  AND WHAT I NOTED ABOUT

20  THAT, THAT I THOUGHT WAS INTERESTING, WAS NOT ONLY THAT HE WAS

21  IN POSSESSION OF COCAINE, BUT I NOTICED THAT HE HAD TO BE

22  TASERED TWICE IN ORDER TO BRING MR. DALTON INTO COMPLIANCE.  I

23  HAVE NEVER BEEN TASERED, BUT FROM WHAT I'VE HEARD, IT'S NOT A

24  PLEASANT THING TO GO THROUGH.  AND YOU HAD TO GO THROUGH IT

25  TWICE IN ORDER TO BE SUBDUED.

1      YOU KNOW, WHEN YOU PUT ALL THIS TOGETHER, YOU PUT -- HERE

2  MR. DALTON, AS HE STANDS BEFORE ME -- AND HE REALLY SEEMS TO BE

3  A NICE MAN, YOU KNOW, REMORSEFUL AND ARTICULATE, AND SO ON.

4  BUT HIS BEHAVIOR IS SO, SO, SO OUT OF THE ORDINARY, SO STRANGE.

5  AGAIN, IT IS NOT THE NUMBER OF WEAPONS THAT HE HAD.  THAT

6  DOESN'T BOTHER ME AT ALL, UNLIKE SOME PEOPLE, WHO WOULD REALLY

7  GET INTO A TIZZY OVER THAT.  BUT IT'S THE MANNER OF THE

8  POSSESSION OF THE WEAPONS AND THE OTHER THINGS THAT GO WITH IT

9  THAT CAUSE ME SUCH A CONCERN.

10     NOW I NOTED -- SOMETHING ELSE I FOUND INTERESTING ABOUT

11  THIS CASE.  I NOTED THAT HE STARTED USING MARIJUANA WHEN HE WAS

12  IN COLLEGE.  AND THEN, I GUESS, HE SORT OF HAS GRADUATED -- I

13  NOTED, INTERESTINGLY ENOUGH, BY THE WAY, THAT THE 2007

14  CONVICTION FOR POSSESSION OF COCAINE, I THINK THAT'S THE ONE

15  THAT RESULTED FROM HIM BEING IN A VEHICLE WITH SOMEONE ELSE AND

16  THEY WERE SMOKING MARIJUANA IN THE VEHICLE.  AND THE SMOKE WAS

17  COMING OUT OF THE VEHICLE.

18     AND, APPARENTLY, THE OFFICERS -- SOME LAW ENFORCEMENT

19  OFFICERS NOTICED THE PLUME OF SMOKE COMING OUT OF THE VEHICLE,

20  SO THEY ATTEMPTED TO ARREST HIM.  AND THEN HE TRIED TO RUN AWAY

21  AND WOUND UP BEING TASERED TWICE, WHICH SIMPLY GOES TO SHOW

22  THAT NOTHING GOOD COMES OUT OF SMOKING MARIJUANA, NOT JUST THE

23  FACT THAT YOU'RE LIKELY TO BECOME ADDICTED TO SOMETHING ELSE,

24  BUT ALSO THE POSSIBILITY THAT YOU COULD WIND UP BEING TASERED

25  AND ARRESTED FOR RESISTING ARREST, ETC.

1       IT'S AN INTERESTING -- IT'S JUST A VERY INTERESTING,

2   INTERESTING CASE.  ALL IN ALL, THOUGH, I THINK WHEN I LOOK AT

3   THE 3553(A) FACTORS, I DON'T KNOW THAT THIS WILL REALLY, REALLY

4   WORK, BUT I THINK THAT, YOU KNOW, I JUST CAN'T GO ALONG WITH

5   THE LOW END OF THE GUIDELINE RANGE.  THERE IS SOMETHING ABOUT

6   THIS CASE, AND I CAN'T QUITE REALLY -- AT THE RISK OF HAVING

7   JUDGE KOZINSKI, MY GOOD FRIEND, TELL ME ONCE AGAIN THAT I

8   CANNOT USE MY OLFACTORY NERVE TO DECIDE WHAT THE LAW IS, THERE

9   IS SOMETHING ABOUT THIS CASE THAT JUST DOESN'T SMELL RIGHT.

10  AND, I GUESS -- NO PUN INTENDED GIVEN THAT I WAS JUST TALKING

11  ABOUT THE PLUME OF SMOKE OF MARIJUANA.

12      BUT IN ANY EVENT, THERE IS SOMETHING ABOUT THIS CASE THAT

13  IS TROUBLING, AND I CAN'T QUITE PUT MY FINGER ON IT.

14      WHAT I CAN SAY IS, THAT AFTER LOOKING AT ALL THE 3553(A)

15  FACTORS, AND TRYING TO SIFT THROUGH ALL OF THIS, AND TRYING TO

16  FIGURE OUT WHAT MAKES SENSE, I'M SATISFIED THAT MY TENTATIVE IS

17  APPROPRIATE, STILL HONORING THE AGREEMENT OF THE PARTIES, BUT

18  YET IMPOSING A SENTENCE THAT I HOPE, HOPE WILL ACT AS A FURTHER

19  DETERRENT.

20      SO I'LL GO THROUGH THE GUIDELINE CALCULATIONS.  THESE ARE

21  THE GUIDELINE CALCULATIONS THAT I BELIEVE WERE AGREED TO:  THIS

22  IS A BASE OFFENSE LEVEL OF 20, INCREASED BY FOUR LEVELS, UNDER

23  2K2.1(B)(1)(B).  THE GOVERNMENT AGREED TO A THREE-LEVEL

24  REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY.  HE HAS A CRIMINAL

25  HISTORY SCORE 3; CRIMINAL HISTORY CATEGORY 2.  RESULTS IN AN

1   ADJUSTED OFFENSE LEVEL OF 21, WITH A GUIDELINE RANGE OF 41 TO

2   51 MONTHS.

3       AFTER CONSIDERING ALL THE 3553(A) FACTORS, I'M SATISFIED

4   THAT 51 MONTHS IS REASONABLE AND SUFFICIENT, BUT NOT GREATER

5   THAN NECESSARY.  SO I'LL REMAND HIM TO THE CUSTODY OF BUREAU OF

6   PRISONS FOR A PERIOD OF 51 MONTHS.

7       NOW AGAIN, LET ME JUST SAY WHAT I SAID A FEW MINUTES AGO.

8   IF CONGRESS REALLY, REALLY, REALLY, REALLY IS SERIOUS ABOUT

9   TRYING TO MINIMIZE GUN VIOLENCE, YOU KNOW, THEY REALLY SHOULD

10  SERIOUSLY THINK ABOUT INCREASING THE PERIOD OF SUPERVISED

11  RELEASE THAT IS AVAILABLE TO US.  BECAUSE IN THE END -- HERE

12  IS -- WHAT I DO WHEN I IMPOSE SENTENCE, I LOOK AT TWO FACTORS

13  THAT I THINK ARE REALLY, REALLY IMPORTANT IN DECIDING WHAT A

14  SENTENCE SHOULD BE.  NO. 1, WHAT CAN WE DO TO DETER THIS

15  INDIVIDUAL AND OTHER INDIVIDUALS FROM ENGAGING IN CRIMINAL

16  BEHAVIOR, CAUSING THEM TO RETURN TO A LAW-ABIDING LIFE?

17      AND WE CAN -- AND THE SECOND ONE IS PROTECTION OF THE

18  PUBLIC.  THOSE TWO THINGS I CALL THE CONJOINED TWINS.  BECAUSE

19  I COULD IMPOSE A LESSER PERIOD OF CUSTODIAL SENTENCE TO BEGIN

20  WITH IF I HAVE A LONGER PERIOD OF SUPERVISED RELEASE AT THE

21  TAIL END THAT WILL ALLOW ME TO MAKE SURE THAT THIS INDIVIDUAL,

22  A, DOESN'T CAUSE HARM TO THE PUBLIC AND IS RETURNING TO A

23  LAW-ABIDING LIFE.

24      SO I CAN IMPOSE A LESSER TERM UP FRONT, WITH LONGER

25  SUPERVISED RELEASE.  OR IF I DON'T HAVE A LONG PERIOD OF

1    SUPERVISED RELEASE, THEN, YOU KNOW, I'M CALLED UPON TO IMPOSE A

2    HIGHER SENTENCE AT THE BEGINNING.  THAT'S THE WAY I SEE THOSE

3    TWO FACTORS WORKING.

4         NOW, AGAIN, IF CONGRESS IS SERIOUS ABOUT MINIMIZING GUN

5    VIOLENCE, WELL, HERE IS THE WAY TO DO IT:  INCREASE THE PERIOD

6    OF SUPERVISED RELEASE THAT IS AVAILABLE TO US.  IF I HAD A

7    LONGER PERIOD OF SUPERVISED RELEASE AVAILABLE TO ME, THERE IS A

8    POSSIBILITY THAT I WOULD IMPOSE THE 41 MONTHS THAT WAS AGREED

9    TO BY EVERYONE, BUT I DON'T HAVE THAT.  I'M LIMITED TO THREE

10   YEARS, WHICH, IN MY OPINION, IS INSUFFICIENT.

11        BUT THAT BEING THE CASE, BEING THAT THREE YEARS IS THE MAX

12   I CAN IMPOSE, I'LL IMPOSE A THREE-YEAR TERM OF SUPERVISED

13   RELEASE.  AS A CONDITION OF SUPERVISED RELEASE, MR. DALTON WILL

14   OBEY ALL LAWS, INCLUDING STATE, LOCAL, AND FEDERAL.

15        HE'LL COMPLY WITH ALL STANDARD AND MANDATORY CONDITIONS OF

16   SUPERVISED RELEASE, INCLUDING THE FOLLOWING:  HE'LL PROVIDE

17   COMPLETE DISCLOSURE OF PERSONAL, BUSINESS, FINANCIAL RECORDS TO

18   THE PROBATION OFFICER AS REQUESTED.  HE'LL PARTICIPATE IN A

19   PROGRAM OF DRUG OR ALCOHOL ABUSE TREATMENT, INCLUDING

20   URINALYSIS OR SWEAT PATCH TESTING AND COUNSELING, AS DIRECTED

21   BY THE PROBATION OFFICER.  AND HE'LL ALLOW FOR RECIPROCAL

22   RELEASE OF INFORMATION BETWEEN THE PROBATION OFFICER AND THE

23   TREATMENT PROVIDER.

24        HE'LL BE REQUIRED TO CONTRIBUTE TO THE COSTS OF SERVICES

25   RENDERED IN AN AMOUNT TO BE DETERMINED BY THE PROBATION

1   OFFICER, BASED ON HIS ABILITY TO PAY.  HE'LL REPORT ALL

2   VEHICLES OWNED OR OPERATED, OR IN WHICH HE HAS AN INTEREST TO

3   HIS PROBATION OFFICER.

4       HE'LL SUBMIT HIS PERSON, HIS RESIDENCE, HIS OFFICE, OR HIS

5   VEHICLE TO A SEARCH CONDUCTED BY A UNITED STATES PROBATION

6   OFFICER IN A REASONABLE TIME AND IN A REASONABLE MANNER, BASED

7   UPON REASONABLE SUSPICION OF CONTRABAND OR EVIDENCE OF A

8   VIOLATION OF A CONDITION OF RELEASE.  FAILURE TO SUBMIT TO A

9   SEARCH MAY BE GROUNDS FOR REVOCATION.  AND THE DEFENDANT SHALL

10  WARN ANY OTHER RESIDENTS THAT THE PREMISES MAY BE SUBJECT TO

11  SEARCHES PURSUANT TO THIS CONDITION.

12      NOW JUST TO BE SURE THAT WE'RE ON THE SAME PAGE, ALSO,

13  MR. DALTON, I'M GOING TO ORDER THAT YOU NOT OWN, POSSESS,

14  BORROW, OR IN ANY OTHER WAY HAVE CONTROL OF ANY FIREARM, ANY

15  FIREARM, WHATSOEVER, OR ANY AMMUNITION, OR ANY OTHER CONTROLLED

16  WEAPON.  YOU MAY NOT HAVE IN YOUR POSSESSION, NOT EVEN

17  MOMENTARILY, YOU CAN'T EVEN HOLD IT IN YOUR HAND, A DAGGER, OR

18  BRASS KNUCKLES, OR A PISTOL, OR SHOTGUN, OR RIFLE, OR ANYTHING

19  OF THAT SORT.  IF YOU DO, THAT WILL BE A VIOLATION OF

20  SUPERVISED RELEASE.  AND I ASSURE YOU, I'M PUTTING A LOT OF

21  TRUST IN YOU.  AS I SAID, IT WOULDN'T TAKE ME VERY MUCH TO

22  IMPOSE A HIGHER SENTENCE THAN THE ONE I'VE IMPOSED ALREADY.

23      BUT I'M PUTTING TRUST IN YOU THAT YOU ARE THE PERSON THAT

24  I AM TOLD THAT YOU ARE AND THAT YOU TELL ME THAT YOU ARE.  IF I

25  FIND OUT THAT YOU'RE ANYWHERE WHERE THERE IS AMMUNITION, OR ONE

1  OF THESE WEAPONS AT ANY TIME, AND YOU GET CAUGHT, YOU'RE GOING

2  TO COME BACK TO SEE ME.  AND AT THAT POINT IN TIME, I'M GOING

3  TO IMPOSE THE HIGHEST SENTENCE THAT THE LAW ALLOWS ME TO IMPOSE

4  FOR YOUR VIOLATION OF SUPERVISED RELEASE.  IN THIS CASE, IT

5  WILL BE THREE YEARS.  DO YOU UNDERSTAND THAT?

6           THE DEFENDANT:  YES, YOUR HONOR.

7           THE COURT:  OKAY.  SO I WANT YOU TO DO WHAT YOUR

8  FATHER EXPECTS OF YOU, WHAT YOU SHOULD EXPECT OF YOURSELF,

9  WHICH IS TO RETURN TO A LAW-ABIDING LIFE, WHERE YOU CAN EARN A

10 GOOD INCOME, MAKE YOURSELF PROUD, MAKE YOUR FAMILY PROUD.  AND

11 ALL YOU HAVE TO DO IS STAY AWAY FROM GUNS, STAY AWAY FROM

12 AMMUNITION, STAY AWAY FROM WEAPONS.  AND, OF COURSE, STAY AWAY

13 FROM DRUGS, DON'T SUBMIT DRUG TESTS THAT ARE DIRTY, ETC., ETC.

14   YOU DO ALL OF THAT, AND AT THE END OF THREE YEARS,

15 MR. DALTON, YOU'RE GOING TO GO BACK TO HAVING A GOOD LIFE.

16 YOU'RE A YOUNG MAN.  YOU HAVE A LOT OF TIME AHEAD OF YOU,

17 BELIEVE ME.  AND LIFE CAN BE SO GOOD.  AND YOU DON'T NEED

18 DRUGS, AND YOU DON'T NEED GUNS, AND YOU DON'T NEED KNIVES, AND

19 YOU DON'T NEED BRASS KNUCKLES IN ORDER TO HAVE A GOOD LIFE.

20 YOU REALLY CAN.

21   NOW WITH REGARDS TO A FINE, I THINK HE HAS THE ABILITY TO

22 PAY A FINE.  PROBATION IS RECOMMENDING A FINE OF $10,000, WHICH

23 I BELIEVE IS REASONABLE UNDER THE CIRCUMSTANCES.  I'LL ORDER

24 THAT HE PAY A FINE OF $10,000, PLUS $100 SPECIAL ASSESSMENT.

25 AND THAT WILL BE PAID FORTHWITH.  AND DURING ANY PERIOD OF

1    INCARCERATION, HE'LL PAY THE FINE THROUGH THE INMATE FINANCIAL

2    RESPONSIBILITY PROGRAM, AT THE RATE OF 50 PERCENT OF

3    DEFENDANT'S INCOME, OR NOT LESS THAN $25 PER QUARTER, WHICHEVER

4    IS GREATER.

5         HE'LL PAY THE FINE DURING HIS SUPERVISED RELEASE PERIOD AT

6    THE RATE OF $500 PER MONTH OR MORE, AND THE PAYMENTS WILL BE

7    SCHEDULED THROUGH THE DISTRICT COURT CLERK FOR THE SOUTHERN

8    DISTRICT OF CALIFORNIA.

9         UNTIL THE FINE HAS BEEN PAID, HE'LL NOTIFY THE CLERK OF

10   THE COURT AND THE UNITED STATES ATTORNEY'S OFFICE OF ANY CHANGE

11   IN HIS MAILING OR RESIDENCE ADDRESS, AS WELL AS ANY BUSINESS OR

12   EMPLOYMENT THAT HE MAY HAVE.  AND HE SHALL DO SO NOT LATER THAN

13   30 DAYS AFTER THE CHANGE OCCURS.

14        NOW, I DON'T REMEMBER IF THERE WAS A RECOMMENDATION FOR --

15   RIGHT, THERE IS A RECOMMENDATION THAT HE BE PLACED IN THE RDAP

16   PROGRAM, WHICH I THINK WOULD BE HELPFUL TO HIM, HOPEFULLY TO

17   HELP HIM BREAK ANY DRUG ADDICTION THAT HE MAY HAVE.

18        ALTHOUGH, I SUSPECT HE'S PROBABLY WELL ON HIS WAY -- HE'S

19   BEEN ON PRETRIAL RELEASE SINCE THIS CASE STARTED, RIGHT?

20             MR. BAJAJ:  THAT'S CORRECT, YOUR HONOR.

21             THE COURT:  AND I ASSUME HE HASN'T SUBMITTED ANY

22   DIRTY TESTS; OTHERWISE, THEY WOULD HAVE VIOLATED HIM, RIGHT?

23        YEAH, SO I THINK HE'S WELL ON HIS WAY OF BREAKING THAT

24   ADDICTION.  I HOPE HE DOES.

25        SO ANYWAY, NOW I WILL RECOMMEND THAT HE BE HOUSED IN THE

1  NORTHEASTERN PORTION OF THE UNITED STATES SO HE CAN BE CLOSE TO

2  HIS FAMILY.  I'M GOING TO TAKE A WILD GUESS, BUT MY WILD GUESS

3  IS GOING TO BE THAT YOU'RE GOING TO ASK FOR SELF-SURRENDER?

4      MR. BAJAJ:  THAT WOULD BE A GREAT GUESS, YOUR HONOR.

5  IN THIS INSTANCE, YOU ARE CORRECT, I WOULD.

6      THE COURT:  ALL RIGHT.  WELL, APPARENTLY, HE'S

7  BEHAVED WELL DURING PRETRIAL RELEASE.

8     ANYBODY HAVE ANY OBJECTION?

9      MR. JONES:  NONE FROM THE GOVERNMENT, YOUR HONOR.

10      THE COURT:  ALL RIGHT.

11      PROBATION OFFICER:  YOUR HONOR, TO MAKE SURE, I'M

12  WITH PROBATION, NOT PRETRIAL, JUST SO YOU --

13      THE COURT:  I GUESS WE DON'T HAVE ANYBODY FROM

14  PRETRIAL.

15     ALL RIGHT, I WILL ORDER, BY THE WAY, FORFEITURE OF THE

16  WEAPONS THAT WERE -- I GUESS I ALREADY SIGNED THE ORDER.

17      MR. JONES:  YEAH, THERE WAS A PRELIMINARY ORDER, YOUR

18  HONOR, OF THE WEAPONS AND THE AMMUNITION.

19      THE COURT:  I THOUGHT THIS WAS THE FINAL ORDER?

20      MR. JONES:  YEAH, THAT IS WHAT WE NEED, THE FINAL

21  ORDER.

22      THE COURT:  ISN'T THAT WHAT I ALREADY SIGNED IN

23  JANUARY?

24      MR. BAJAJ:  THAT'S CORRECT.  THE COURT HAD ALREADY

25  SIGNED IT.

```
 1              THE COURT:  YEAH, I ALREADY SIGNED IT.

 2              MR. JONES:  OKAY.

 3              THE COURT:  OKAY.  ALL RIGHT, SO HOW ABOUT SIX WEEKS?

 4              MR. BAJAJ:  THAT IS FINE.

 5              THE COURT:  WILL THAT WORK?  OKAY.  I'LL ORDER THAT

 6  HE SELF-SURRENDER TO THE DESIGNATED INSTITUTION BY NOT LATER

 7  THAN --

 8        GIVE ME A DATE, GLENN, PLEASE.

 9              THE CLERK:  5:00 P.M., MAY 17.  BOND EXONERATION WILL

10  BE HERE MAY 20TH, AT 2:00 P.M.

11              THE COURT:  OKAY.  I'LL ORDER THAT HE REPORT DOWN TO

12  THE MARSHAL'S OFFICE BY NOT LATER THAN 4:00 P.M. THIS AFTERNOON

13  IN ORDER TO BE DESIGNATED, BOOKED, AND ALL OF THAT, OKAY.

14        ALL RIGHT.  NOW, COUNSEL, DO YOU ACKNOWLEDGE THAT HE'S

15  WAIVED HIS RIGHT TO APPEAL AND COLLATERAL ATTACK.

16              MR. BAJAJ:  YES, YOUR HONOR.

17              THE COURT:  MR. DALTON, DO YOU ACKNOWLEDGE THAT

18  YOU'VE WAIVED YOUR RIGHT TO APPEAL AND COLLATERAL ATTACK?

19              THE DEFENDANT:  YES, YOUR HONOR.

20              THE COURT:  I WISH YOU NOTHING BUT THE BEST.  I HOPE

21  YOU TAKE THIS OPPORTUNITY TO IMPROVE YOUR LIFE AND THE LIFE OF

22  YOUR FAMILY.  AND I HOPE THAT I DON'T SEE YOU BACK HERE IN

23  COURT AGAIN, OKAY.

24              THE DEFENDANT:  THANK YOU, YOUR HONOR.

25              THE COURT:  ALL RIGHT, YOU TAKE CARE.
```

21

```
1          MR. BAJAJ:  THANK YOU, YOUR HONOR.

2          THE COURT:  THANK YOU.

3          THE CLERK:  REMAINING UNDERLYING COUNTS, JUDGE.

4          THE COURT:  YES.  IS THERE A MOTION TO DISMISS THE

5   REMAINING COUNTS?

6          MR. JONES:  SO MOVED, YOUR HONOR.

7          THE COURT:  ALL RIGHT, THEY'LL BE DISMISSED.  THANK

8   YOU.

9                    (RECESS AT 10:54 A.M.)

10                        ---000---

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    C-E-R-T-I-F-I-C-A-T-I-O-N

2           I HEREBY CERTIFY THAT I AM A DULY APPOINTED,

3   QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED

4   STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT

5   TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;

6   THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY

7   STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES

8   WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL

9   CONFERENCE.

10          DATED:  MAY 25, 2016, AT SAN DIEGO, CALIFORNIA

11

12                         _____
                           S/DEBORAH M. O'CONNELL, CSR #10563
13                         REGISTERED PROFESSIONAL REPORTER

14

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT D

AO 245B (CASD) (Rev. 12/11) Judgment in a Criminal Case
Sheet 1

**F I L E D**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

2013 APR 11  AM 10: 39

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | (For Offenses Committed On or After November 1, 1987) |
| JEREMY ADAM DALTON (1) | Case Number:  12CR3367-BEN |
| | VIKAS BAJAJ |
| | Defendant's Attorney |

REGISTRATION NO. 34594298

☐

THE DEFENDANT:

☒ pleaded guilty to count(s) 1s OF THE SUPERSEDING INFORMATION.

☐ was found guilty on count(s) _____

after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offense(s):

| Title & Section | Nature of Offense | Count Number(s) |
|---|---|---|
| 18 USC 922(g)(1) and 924(a)(2) | FELON IN POSSESION OF FIREARMS AND AMMUNITION | 1s |

The defendant is sentenced as provided in pages 2 through ____7____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s) UNDERLYING INFORMATION _____ is ☒ are ☐ dismissed on the motion of the United States.

☒ Assessment: $100.00 forthwith or under the same repayment terms for the fine as set forth in page 5 of this Judgment and Commitment.

☐ Fine waived ☒ Forfeiture pursuant to order filed   JANUARY 15, 2013  , included herein.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

APRIL 8, 2013
Date of Imposition of Sentence

HON. ROGER T. BENITEZ
UNITED STATES DISTRICT JUDGE

12CR3367-BEN

AO 245B (CASD) (Rev. 12/11)  Judgment in a Criminal Case
  Sheet 2 — Imprisonment

DEFENDANT: JEREMY ADAM DALTON (1)

CASE NUMBER: **12CR3367-BEN**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of
FORTY-EIGHT (48) MONTHS.

☐ Sentence imposed pursuant to Title 8 USC Section 1326(b).

☒ The court makes the following recommendations to the Bureau of Prisons:

  DEFENDANT BE ALLOWED TO PARTICIPATE IN THE 500-HOUR DRUG TREATMENT PROGRAM.

  DEFENDANT BE INCARCERATED WITHIN THE NORTHEAST REGION OF THE UNITED STATES.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

  as notified by the United States Marshal.

☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☒ before 5:00PM ON MAY 17, 2013.

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

  Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**12CR3367-BEN**

AO 245B (CASD) (Rev. 12/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: 12CR3367-BEN

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:
THREE (3) YEARS.

      The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

*For offenses committed on or after September 13, 1994:*

The defendant shall not illegally possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter as determined by the court. Testing requirements will not exceed submission of more than __4__ drug tests per month during the term of supervision, unless otherwise ordered by court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

☒   The defendant shall cooperate in the collection of a DNA sample from the defendant, pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000, pursuant to 18 USC sections 3563(a)(7) and 3583(d).

☐   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. (Check if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

      If this judgment imposes a fine or restitution obligation, it is a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in this judgment.

      The defendant must comply with the standard conditions that have been adopted by this court. The defendant shall also comply with any special conditions imposed.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

**12CR3367-BEN**

AO 245B (CASD) (Rev. 12/11 Judgment in a Criminal Case
Sheet 4 — Special Conditions

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: **12CR3367-BEN**

Judgment—Page ___4___ of ___7___

# SPECIAL CONDITIONS OF SUPERVISION

☒ Submit person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

☐ If deported, excluded, or allowed to voluntarily return to country of origin, not reenter the United States illegally and report to the probation officer within  24  hours of any reentry to the United States; supervision waived upon deportation, exclusion or voluntary departure.

☐ Not transport, harbor, or assist undocumented aliens.

☐ Not associate with undocumented aliens or alien smugglers.

☐ Not reenter the United States illegally.

☐ Not enter or reside in the Republic of Mexico without written permission of the Court or probation officer.

☒ Report all vehicles owned or operated, or in which you have an interest, to the probation officer.

☐ Not possess any narcotic drug or controlled substance without a lawful medical prescription.

☐ Not associate with known users of, smugglers of, or dealers in narcotics, controlled substances, or dangerous drugs in any form.

☐ Participate in a program of mental health treatment as directed by the probation officer, take all medications as prescribed by a psychiatrist/physician, and not discontinue any medication without permission. The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. Is required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on the defendant's ability to pay.

☒ Not own, possess, control, borrow any type of gun, ammunition, dagger, or brass knuckles, even if the time-of-possession is for one second.

☒ Provide complete disclosure of personal and business financial records to the probation officer as requested.

☐ Be prohibited from opening checking accounts or incurring new credit charges or opening additional lines of credit without approval of the probation officer.

☐ Seek and maintain full time employment and/or schooling or a combination of both.

☐ Resolve all outstanding warrants within          days.

☐ Complete          hours of community service in a program approved by the probation officer within

☐ Reside in a Residential Reentry Center (RRC) as directed by the probation officer for a period of

☒ Participate in a program of drug or alcohol abuse treatment, including urinalysis or sweat patch testing and counseling, as directed by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. Is required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on the defendant's ability to pay.

☐

**12CR3367-BEN**

AO 245S    Judgment in Criminal Case
        Sheet 5 — Criminal Monetary Penalties

 

| | Judgment — Page | 5 | of | 7 |

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: 12CR3367-BEN

## FINE

The defendant shall pay a fine in the amount of _____$10,000.00_____ unto the United States of America.

This sum shall be paid    ___   immediately.
                          __x__ as follows:

Through the Clerk, U. S. District Court, forthwith or through the Inmate Financial Responsibility Program (IFRP) at the rate of 50% of the defendant's income, or $25.00 per quarter during the period of incarceration, whichever is greater. The defendant shall pay the fine during his supervised release at the rate of $500 per month. These payment schedules do not foreclose the United States from exercising all legal actions, remedies, and process available to it to collect the fine judgment. Until the fine has been paid, the defendant shall notify the Clerk of the Court and the United States Attorney's Office of any change in the defendant's mailing or residence address, no later than thirty (30) days after the change occurs.

The Court has determined that the defendant _does_ have the ability to pay interest. It is ordered that:

__x__ The interest requirement is waived.

_____ The interest is modified as follows:

12CR3367-BEN

2013 JAN 15  AM 9: 26

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 12cr3367-BEN |
| Plaintiff, | ORDER OF CRIMINAL FORFEITURE |
| v. | |
| JEREMY ADAM DALTON, | |
| Defendant. | |

WHEREAS, in the Superseding Information in the above-captioned case, the United States sought forfeiture of all right, title and interest in specific properties, to wit:

1. 681 rounds of assorted ammunition;
2. One Glock, model 23, .40 caliber pistol, serial number BDB110US;
3. One Taurus, model 608, .357 caliber revolver, serial number BT652166;
4. One Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;
5. One Taurus, model PT140 Millennium Pro, .40 caliber pistol, serial number SYJ45735;
6. One Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver, serial number DM104710;
7. One Walther, model P22, .22 caliber pistol, serial number N017274;
8. One Colt, model DELTA ELITE, .10 caliber pistol, serial number 10SS0832; and
9. One Glock, model 17, .9 caliber pistol, serial number KNP396,

of the above-named defendant pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), as properties involved in or traceable to the violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), as charged in the Superseding Information; and

WHEREAS, on or about November 26, 2012, the above-named defendant, JEREMY ADAM DALTON ("Defendant"), pled guilty to the Superseding Information before

1    Magistrate Judge William McCurine, Jr., which plea provided for the criminal forfeiture of the

2    firearms and ammunition, and included consent to the criminal forfeiture allegations pursuant to

3    Titles 18 and 28 as set forth in the Superseding Information; and

4        WHEREAS, on or about December 12, 2012, the plea of the Defendant was accepted by

5    the United States District Court; and

6        WHEREAS, the plea agreement provided for the criminal forfeiture of the firearms and

7    ammunition; and

8        WHEREAS, by virtue of the facts set forth in the plea agreement, the United States has

9    established the requisite nexus between the forfeited properties and the offense; and

10       WHEREAS, on or about December 12, 2012 the firearms and ammunition to which

11   Defendant pled were administratively forfeited by the Bureau of Alcohol, Tobacco, Firearms, and

12   Explosives (ATF):

13       Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

14       1.    Based upon the guilty plea of the Defendant, all right, title and interest of Defendant

15   JEREMY ADAM DALTON in

16       1.  681 rounds of assorted ammunition;
         2.  One Glock, model 23, .40 caliber pistol, serial number BDB110US;
17       3.  One Taurus, model 608, .357 caliber revolver, serial number BT652166;
         4.  One Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;
18       5.  One Taurus, model PT140 Millennium Pro, .40 caliber pistol,
             serial number SYJ45735;
19       6.  One Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver,
             serial number DM104710;
20       7.  One Walther, model P22, .22 caliber pistol, serial number N017274;
         8.  One Colt, model DELTA ELITE, .10 caliber pistol,
21           serial number 10SS0832; and
         9.  One Glock, model 17, .9 caliber pistol, serial number KNP396,
22

23   are hereby forfeited to the United States.

24       2.    As the aforementioned asset was previously forfeited administratively, no further

25   action is needed as to the forfeiture aspect of this criminal case.

26       DATED:

27   1/11/2013

28                                                   Honorable Roger T. Benitez
                                                     United States District Judge

                                    2                                          12cr3367

# EXHIBIT E

**FILED**

APR 1 2 2013

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

⌘AO 245B (CASD) (Rev. 12/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

v.

JEREMY ADAM DALTON (1)

## AMENDED JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number: 12CR3367-BEN

VIKAS BAJAJ
Defendant's Attorney

**REGISTRATION NO.** 34594298

☒ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P.36)

THE DEFENDANT:
☒ pleaded guilty to count(s) 1s OF THE SUPERSEDING INFORMATION.

☐ was found guilty on count(s)_____
after a plea of not guilty.
Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offense(s):

| Title & Section | Nature of Offense | Count Number(s) |
|---|---|---|
| 18 USC 922(g)(1) and 924(a)(2) | FELON IN POSSESION OF FIREARMS AND AMMUNITION | 1s |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)_____

☒ Count(s) UNDERLYING INFORMATION _____ is ☒ are ☐ dismissed on the motion of the United States.

☒ Assessment: $100.00 forthwith or under the same repayment terms for the fine as set forth in page 5 of this Judgment and Commitment.

☐ Fine waived    ☒ Forfeiture pursuant to order filed   JANUARY 15, 2013  , included herein.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

APRIL 8, 2013
Date of Imposition of Sentence

HON. ROGER T. BENITEZ
UNITED STATES DISTRICT JUDGE

12CR3367-BEN

AO 245B (CASD) (Rev. 12/11)  Judgment in a Criminal Case
        Sheet 2 — Imprisonment

DEFENDANT: JEREMY ADAM DALTON (1)

CASE NUMBER: **12CR3367-BEN**

Judgment — Page   **2**   of   **7**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of FIFTY-ONE (51) MONTHS.

☐ Sentence imposed pursuant to Title 8 USC Section 1326(b).

☒ The court makes the following recommendations to the Bureau of Prisons:

DEFENDANT BE ALLOWED TO PARTICIPATE IN THE 500-HOUR DRUG TREATMENT PROGRAM.

DEFENDANT BE INCARCERATED WITHIN THE NORTHEAST REGION OF THE UNITED STATES.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m.   ☐ p.m.   on _____ .

    as notified by the United States Marshal.

☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☒ before 5:00PM ON MAY 17, 2013.

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**12CR3367-BEN**

AO 245B (CASD) (Rev. 12/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | Judgment—Page | 3 | of | 7 |

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: **12CR3367-BEN**

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :
THREE (3) YEARS.

    The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

*For offenses committed on or after September 13, 1994:*

The defendant shall not illegally possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter as determined by the court. Testing requirements will not exceed submission of more than __4__ drug tests per month during the term of supervision, unless otherwise ordered by court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of
    future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

☒ The defendant shall cooperate in the collection of a DNA sample from the defendant, pursuant to section 3 of the DNA Analysis
    Backlog Elimination Act of 2000, pursuant to 18 USC sections 3563(a)(7) and 3583(d).

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed
    by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or
    was convicted of a qualifying offense. (Check if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution obligation, it is a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court. The defendant shall also comply with any special conditions imposed.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

**12CR3367-BEN**

AO 245B (CASD) (Rev. 12/11 Judgment in a Criminal Case
    Sheet 4 — Special Conditions

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: **12CR3367-BEN**

| | Judgment—Page | 4 | of | 7 |

## SPECIAL CONDITIONS OF SUPERVISION

☒ Submit person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

☐ If deported, excluded, or allowed to voluntarily return to country of origin, not reenter the United States illegally and report to the probation officer within 24 hours of any reentry to the United States; supervision waived upon deportation, exclusion or voluntary departure.

☐ Not transport, harbor, or assist undocumented aliens.

☐ Not associate with undocumented aliens or alien smugglers.

☐ Not reenter the United States illegally.

☐ Not enter or reside in the Republic of Mexico without written permission of the Court or probation officer.

☒ Report all vehicles owned or operated, or in which you have an interest, to the probation officer.

☐ Not possess any narcotic drug or controlled substance without a lawful medical prescription.

☐ Not associate with known users of, smugglers of, or dealers in narcotics, controlled substances, or dangerous drugs in any form.

☐ Participate in a program of mental health treatment as directed by the probation officer, take all medications as prescribed by a psychiatrist/physician, and not discontinue any medication without permission. The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. Is required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on the defendant's ability to pay.

☒ Not own, possess, control, borrow any type of gun, ammunition, dagger, or brass knuckles, even if the time-of-possession is for one second.

☒ Provide complete disclosure of personal and business financial records to the probation officer as requested.

☐ Be prohibited from opening checking accounts or incurring new credit charges or opening additional lines of credit without approval of the probation officer.

☐ Seek and maintain full time employment and/or schooling or a combination of both.

☐ Resolve all outstanding warrants within      days.

☐ Complete      hours of community service in a program approved by the probation officer within

☐ Reside in a Residential Reentry Center (RRC) as directed by the probation officer for a period of

☒ Participate in a program of drug or alcohol abuse treatment, including urinalysis or sweat patch testing and counseling, as directed by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. Is required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on the defendant's ability to pay.

☐

AO 245S    Judgment in Criminal Case
             Sheet 5 — Criminal Monetary Penalties

Judgment — Page    5    of    7

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: 12CR3367-BEN

## FINE

The defendant shall pay a fine in the amount of _____ $10,000.00 _____ unto the United States of America.

This sum shall be paid _____ immediately.
                        _x_  as follows:

Through the Clerk, U. S. District Court, forthwith or through the Inmate Financial Responsibility Program (IFRP) at the rate of 50% of the defendant's income, or $25.00 per quarter during the period of incarceration, whichever is greater. The defendant shall pay the fine during his supervised release at the rate of $500 per month. These payment schedules do not foreclose the United States from exercising all legal actions, remedies, and process available to it to collect the fine judgment. Until the fine has been paid, the defendant shall notify Clerk of the Court and the United States Attorney's Office of any change in the defendant's mailing or residence address, no later than thirty (30) days after the change occurs.

The Court has determined that the defendant _does_ have the ability to pay interest. It is ordered that:

_x_ The interest requirement is waived.

_____ The interest is modified as follows:

.

12CR3367-BEN

2013 JAN 15  AM 9: 26

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY [signature] , DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 12cr3367-BEN |
| Plaintiff, | ) ORDER OF CRIMINAL FORFEITURE |
| v. | ) |
| JEREMY ADAM DALTON, | ) |
| Defendant. | ) |

WHEREAS, in the Superseding Information in the above-captioned case, the United States sought forfeiture of all right, title and interest in specific properties, to wit:

1. 681 rounds of assorted ammunition;
2. One Glock, model 23, .40 caliber pistol, serial number BDB110US;
3. One Taurus, model 608, .357 caliber revolver, serial number BT652166;
4. One Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;
5. One Taurus, model PT140 Millennium Pro, .40 caliber pistol, serial number SYJ45735;
6. One Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver, serial number DM104710;
7. One Walther, model P22, .22 caliber pistol, serial number N017274;
8. One Colt, model DELTA ELITE, .10 caliber pistol, serial number 10SS0832; and
9. One Glock, model 17, .9 caliber pistol, serial number KNP396,

of the above-named defendant pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), as properties involved in or traceable to the violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), as charged in the Superseding Information; and

WHEREAS, on or about November 26, 2012, the above-named defendant, JEREMY ADAM DALTON ("Defendant"), pled guilty to the Superseding Information before

1   Magistrate Judge William McCurine, Jr., which plea provided for the criminal forfeiture of the

2   firearms and ammunition, and included consent to the criminal forfeiture allegations pursuant to

3   Titles 18 and 28 as set forth in the Superseding Information; and

4        WHEREAS, on or about December 12, 2012, the plea of the Defendant was accepted by

5   the United States District Court; and

6        WHEREAS, the plea agreement provided for the criminal forfeiture of the firearms and

7   ammunition; and

8        WHEREAS, by virtue of the facts set forth in the plea agreement, the United States has

9   established the requisite nexus between the forfeited properties and the offense; and

10       WHEREAS, on or about December 12, 2012 the firearms and ammunition to which

11  Defendant pled were administratively forfeited by the Bureau of Alcohol, Tobacco, Firearms, and

12  Explosives (ATF):

13       Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

14       1.    Based upon the guilty plea of the Defendant, all right, title and interest of Defendant

15  JEREMY ADAM DALTON in

16       1.    681 rounds of assorted ammunition;
     2.    One Glock, model 23, .40 caliber pistol, serial number BDB110US;

17       3.    One Taurus, model 608, .357 caliber revolver, serial number BT652166;
     4.    One Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;

18       5.    One Taurus, model PT140 Millennium Pro, .40 caliber pistol,
         serial number SYJ45735;

19       6.    One Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver,
         serial number DM104710;

20       7.    One Walther, model P22, .22 caliber pistol, serial number N017274;
     8.    One Colt, model DELTA ELITE, .10 caliber pistol,

21           serial number 10SS0832; and

22       9.    One Glock, model 17, .9 caliber pistol, serial number KNP396,

23  are hereby forfeited to the United States.

24       2.    As the aforementioned asset was previously forfeited administratively, no further

25  action is needed as to the forfeiture aspect of this criminal case.

26  DATED:

27  1/11/2013

28  Honorable Roger T. Benitez
    United States District Judge

12cr3367

1

## **CERTIFICATE OF SERVICE**

2

Counsel for Defendant certifies that the foregoing is true and accurate to the

3

best of her information and belief, and that a copy of the foregoing document has

4

been caused to be delivered this day upon the participants in this case, all of whom

5

are registered CM/ECF users.

6

7

Dated:  June 13, 2016                              _/s/  Kara Hartzler_____

8                                                                  **KARA HARTZLER**

Federal Defenders of San Diego, Inc.

9                                                                  225 Broadway, Suite 900

San Diego, CA  92101-5030

10                                                                (619) 234-8467  (tel)

11                                                                (619) 687-2666  (fax)

Email: Kara_Hartzler@fd.org

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18 U.S.C. § 924(e) ............................................................................ 6, 7,

18 U.S.C. § 3553(a)(4) ........................................................................ 13

28 U.S.C. § 994(h) ............................................................................. 13

28 U.S.C. § 2255 ......................................................................... *passim*

ACCA ...................................................................................... *passim*

**STATE CASES**

*State v. Cooey*, 544 N.E.2d 895 (Ohio 1989) ........................................ 7

*State v. Cooper*, 743 N.E.2d 427 (Ohio Ct. App. 2000) ......................... 6

*State v. Hodges*, 669 N.E.2d 256 (Ohio Ct. App. 1995) ......................... 6

**STATE STATUTES**

Ohio Rev. Code Ann. § 2901.01(A)(5)(a) .......................................... 6

Ohio Rev. Code Ann. § 2901.22(A) ................................................. 7

Ohio Rev. Code Ann. § 2903.11 ........................................... 1, 3, 4, 5, 8

**ADVISORY GUIDELINES**

U.S.S.G. § 2K2.1 ..................................................................... 1, 2, 3, 4

U.S.S.G. § 3E1.1 ............................................................................ 3

U.S.S.G. § 4B1.1(a) ...................................................................... 14

U.S.S.G. § 4B1.2 ..................................................................... *passim*

**Benjamin P. Davis**
California State Bar No. 275918
**Kara Hartzler**
California State Bar No. 293751
**Federal Defenders Of San Diego, Inc.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Fax: (619) 687-2666
Kara_Hartzler@fd.org
Benjamin_Davis@fd.org

Attorneys for Jeremy Adam Dalton

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE ROGER T. BENITEZ)

| United States of America, | Case No. 12-CR-3367-BEN |
|---|---|
| Plaintiff, | Civil No. _____ |
| v. | |
| **Jeremy Adam Dalton,** | **Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255** |
| Defendant. | |

I.

Introduction

    Jeremy Dalton moves this Court to vacate and correct his conviction and sentence under 28 U.S.C. § 2255 on the basis of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). In 2012, Mr. Dalton was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court used Mr. Dalton's criminal history to enhance his sentence. The court ruled that Mr. Dalton's prior conviction for felonious assault under Ohio Rev. Code § 2903.11(A)(1) qualified as a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A).

The effect of this finding was to significantly increase Mr. Dalton's Guidelines range. His base offense level was raised from 14 to 20 (before adjustments and departures). Instead of a Guidelines range of 21-27 months, he faced a range at sentencing of 41-51 months. The district court sentenced him to the high end of 51 months in prison.

Under *Johnson*, Mr. Dalton should not have started at a base offense level of 20, because his Ohio assault conviction does not qualify as a "crime of violence" under the sentencing guidelines. In *Johnson,* the Supreme Court struck down the residual clause of the Armed Career Criminal Act as unconstitutionally vague. 135 S. Ct. at 2557. Like the residual clause in the Act, section 4B1.2[1] of the Sentencing Guidelines defines a "crime of violence" using language that is void for vagueness. *See Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). And because Ohio felonious assault does not qualify as a "crime of violence" under any of the alternative definitions contained in § 4B1.2 (as an offense that has as an element the use, attempted use, or threat of violent physical force, or as one of four specifically enumerated offenses), Mr. Dalton is entitled to relief under 28 U.S.C. § 2255.

Mr. Dalton's petition is timely under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in *Johnson.* Therefore, Mr. Dalton respectfully requests that this Court grant his § 2255 motion, vacate his current sentence, and re-sentence him.

## II.

### Statement of Facts

**A.    Indictment, plea agreement, and Pre-Sentence Report.**

On November 26, 2012, Mr. Dalton waived indictment, and an Information was filed charging him with one count of being a felon in possession of a firearm and

---

[1] U.S.S.G § 2K2.1cmt. n.1 cross-references the definition of a "crime of violence" found in U.S.S.G. § 4B1.2. This motion will generally refer to § 4B1.2 for clarity.

2

1   ammunition in violation of 18 U.S.C. § 922(g)(1). *See* Exhibit A. The same day he

2   pleaded guilty by way of a plea agreement to Count One. *See* Dkt. No. 26. In the plea

3   agreement, the parties agreed to Guidelines calculations that included a specific

4   offense characteristic of 8-24 firearms under § 2K2.1(b)(1)(B) and a three-level

5   adjustment for acceptance of responsibility under § 3E1.1, and a base offense level

6   set at 20 under § 2K2.1.  *See* Pre-Sentence Report ("PSR") at 16. The government

7   agreed to recommend a low-end Guideline sentence. *Id.* at 13.  The parties also

8   agreed that Mr. Dalton could seek additional adjustments, departures, and variances,

9   and that the government could oppose them. *Id.*

10   The PSR calculated a base offense level of 20. *See id.* at 7 (citing

11   § 2K2.1(a)(4)(A)[2]). It did so because it claimed that Mr. Dalton's 2006 conviction for

12   felonious assault under Ohio Rev. Code § 2903.11(A)(1) qualified as a "crime of

13   violence" under § 4B1.2. *Id.*; *see* § 2K2.1(a)(4) (imposing a base offense level of 20

14   when the instant offense is committed after a felony conviction for a "crime of

15   violence"). The PSR also recommended a four-level enhancement for the offense

16   involving 8 to 24 firearms. *Id.*  At criminal history II, and after the three-level

17   reduction for acceptance of responsibility, the PSR calculated Mr. Dalton's final

18   adjusted offense level as 21 and his Guidelines range as 41-51 months in prison.

19   *Id.* at 21.

20   If the PSR had not scored Mr. Dalton's assault conviction as a "crime of

21   violence," his base offense level would have been 14. *See* § 2K2.1(a)(7).

22   **B.      Sentencing.**

23   Mr. Dalton appeared before the district court for sentencing on April 8, 2013.

24   *See* Dkt. No. 45. At sentencing, the court followed the plea agreement and assigned

25

26

27   [2] This and all citations to the United States Sentencing Guidelines are to the Nov. 1,

28   2012 edition in use at the time of Mr. Dalton's sentencing.

1  him a base offense level of 20, a four-level adjustment for additional firearms, and a
2  three-level adjustment for acceptance of responsibility. *See* Transcript of Sentencing
3  Hearing ("Exhibit B") at 13-14. With Mr. Dalton's criminal history category at II, the
4  court calculated his Guidelines range at 41-51 months. *Id.* at 14.  The district court
5  imposed a high-end sentence of 51 months.  *Id.*

6  **C.    Subsequent events.**

7       Mr. Dalton did not appeal his conviction or sentence.

8       On June 26, 2015, the Supreme Court issued its decision in *Johnson* striking

9  down the "residual clause" of the Armed Career Criminal Act as unconstitutionally

10  vague. 135 S. Ct. at 2557. Mr. Dalton now timely files this motion under § 2255

11  seeking relief under *Johnson*.

12       Mr. Dalton's current scheduled release date from BOP custody is **February 3,**

13  **2017.**

## III.

## Argument

16       Mr. Dalton's sentence was enhanced because the district court found that his

17  prior conviction for felonious assault under Ohio Rev. Code § 2903.11(A)(1)

18  qualified as a "crime of violence" under the Career Offender sentencing guideline,

19  and thereby resulted in an enhanced base offense level for his felon-in-possession

20  charge. However, Ohio felonious assault cannot qualify as a crime of violence after

21  the Supreme Court's decision in *Johnson*, because it no longer qualifies under any of

22  the definitions contained in the Guideline. His sentence should be vacated, and he

23  should be re-sentenced without the adjustment.

**A.    Mr. Dalton's conviction for felonious assault under Ohio Rev. Code § 2903.11(A)(1) is not a crime of violence after *Johnson*.**

26       There are three ways a conviction can qualify as a "crime of violence" under

27  the cross-referenced Career Offender sentencing guideline: (1) under the force

28  clause; (2) as a match for one of the four enumerated, generic offenses; or (3) under

the now-unconstitutional residual clause. The Ohio assault statute doesn't qualify under any of the three.

First, Ohio felonious assault does not qualify as a crime of violence under the "force clause," for two reasons. The crime is not defined in terms of applying physical force, but in causing "physical injury" that is so broad, it expressly encompasses mental illness or conditions. Moreover, the offense does not require an *intentional* application of force. Second, the Ohio offense is not one of the four enumerated offenses. Third, Ohio felonious assault cannot qualify as a crime of violence under the residual clause, which is now void for vagueness following *Johnson*.

> (a)   The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1)   has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)   is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.







**FIG. 1** - *The Career Offender sentencing guideline's definition of a "crime of violence."* U.S.S.G. § 4B1.2.

**1.**   <u>Ohio felonious assault is not a crime of violence under the force clause because it is overbroad as to "physical force" and required mental state.</u>

To qualify as a crime of violence under the force clause, an offense must have "as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2*a)(1). However, Ohio Rev. Code § 2903.11(A)(1) does not require as an element the employment of "physical force," as shown by the fact that it expressly treats psychological conditions as "physical harm" and does not

5

require the intentional "use" of any force it does involve.[3]

The Ohio statute does not specify a use of force as an element, but takes as the gravamen any knowing acts that "[c]ause serious physical harm." However, "serious physical harm" is expressly defined by statute to include "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." Ohio Rev. Code § 2901.01(A)(5)(a). The Supreme Court has already held that "We think it clear that in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing **physical** pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis added) (discussing definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B)(i), which is worded identically to the force clause in § 4B1.2(a)(1)). Consequently, the Ohio felonious assault can lie where the defendant commits some non-violent act that results in severe emotional trauma to the victim. *See, e.g., State v. Cooper*, 743 N.E.2d 427 (Ohio App. 2000) (finding multiple acts and omissions towards defendant's children, resulting in their having mental illness, sufficed to constitute felonious assault); *State v. Hodges*, 669 N.E.2d 256 (Ohio App. 1995) (holding priest's cajoling victim into having sex, causing victim's mental breakdown, constituted felonious assault). Because the crime includes causing non-physical harm with no use of force, it is overbroad and does not necessarily involve the use or attempted use of violent "physical force."

Moreover, the Ohio offense does not qualify as a "crime of violence" under the force clause, because it does not require the *intentional* use or threatened use of physical force. The Supreme Court first announced this rule in *Leocal v. Ashcroft*, holding that DUI was not a crime of violence under the nearly identical force clause in 18 U.S.C. § 16(a), because the offense could be committed through mere

---

[3] The pertinent part of the statute reads: "(A) No person shall knowingly do either of the following: [¶] (1) Cause serious physical harm to another or another's unborn."

6

1   negligence. *See* 543 U.S. 1, 9-10 (2004). The en banc Ninth Circuit went on to

2   interpret *Leocal* as requiring "that to constitute a federal crime of violence an offense

3   must involve the **intentional** use of force against the person or property of

4   another." *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc)

5   (emphasis added); *see also United States v. Gomez-Leon,* 545 F.3d 777, 787 (9th Cir.

6   2008) (holding that to qualify as a crime of violence under the force clause, "the

7   underlying offense must require proof of an **intentional** use of force") (emphasis

8   added). Likewise, in *United States v. Dixon*, the Ninth Circuit addressed the nearly

9   identical provision in the Armed Career Criminal Act, defining a "violent felony" to

10   include offenses with "an element of the use, attempted use, or threatened use of

11   physical force against the person of another." 18 U.S.C. § 924(e)(2)(b)(i). The court

12   adhered to a long line of Ninth Circuit and Supreme Court precedents limiting

13   violent felonies under the ACCA—as well as crimes of violence under § 16(a)—to

14   those that require the *intentional* use of physical force. *See* 805 F.3d 1193, 1197 (9th

15   Cir. 2015) (citing *Leocal* 543 U.S. at 12-13 and *(Curtis) Johnson*, 559 U.S. at 140)). Since

16   the force clause in the ACCA is identical to the force clause in the Career Offender

17   sentencing guideline, c*ompare* 18 U.S.C. § 924(e)(2)(B)(ii) *with* § 4B1.2(a)(2)(b); *see also*

18   *United States v. Terrell*, 593 F.3d 1084, 1087 n.1 (9th Cir. 2010), in order for an offense

19   to qualify as a "crime of violence" here involving the "active employment" of force,

20   *Leocal*, 543 U.S. at 9, the state statute must require *intent*.

21         However, the Ohio felonious assault requires only knowledge, which, under

22   Ohio law, is a separate and lesser mental state than purpose or intent. *See* Ohio Rev.

23   Code § 2901.22(A) ("A person acts purposely when it is the person's specific

24   intention to cause a certain result") & (B) ("A person acts knowingly, **regardless of**

25   **purpose**, when the person is aware that the person's conduct will probably cause a

26   certain result") (emphasis added); *State v. Cooey,* 544 N.E.2d 895, 905 (Ohio 1989)

27   ("the culpable mental state required for a felonious assault conviction . . . is **not**

28   **purpose**, but knowledge") (emphasis added). But *Fernandez-Ruiz* contrasted the

accidental application of force discussed in *Leocal* with force that is the result of a "purposeful act": " 'Purposeful' means '[d]one with a specific purpose in mind; DELIBERATE.' "   466 F.3d at 1130 (citation omitted).  Consequently, Ohio defines the mental state required for felonious assault (knowledge) precisely in the way *Fernandez-Ruiz* recognized disqualifies an offense as a crime of violence under *Leocal*.

Because Ohio felonious assault cannot qualify as a violent felony under the force clause of the ACCA, it likewise cannot qualify as a crime of violence under the force clause of the Guidelines and so cannot serve as a predicate to the enhanced base offense level.

**2.**   Ohio Rev. Code § 2903.11 does not qualify as an enumerated offense.

The Career Offender sentencing guideline names four generic crimes which, if a prior statute of conviction matches their elements, qualify that statute as a crime of violence. *See* U.S.S.G. § 4B1.2(a)(2). The four generic crimes include "burglary of a dwelling, arson, or extortion" or an offense involving use of explosives.  *Id.* However, Ohio felonious assault is manifestly not any of these four offenses.  The Ohio crime is patently not predicated on elements of entry of a dwelling, destruction of property by fire, the constrained obtaining of property, or the use of explosives. *See* 2 *Ohio Jury Instructions—Criminal* 503.11(A) (Apr. 2016) (jury must only find defendant "knowingly [¶] caused serious physical harm").  Due to a total mismatch of the required elements, § 2903.11(A)(1) does not qualify as an enumerated offense in § 4B1.2.

**3.**   Following *Johnson*, Ohio felonious assault cannot qualify as a crime of violence under section 924(c)'s residual clause.

*(Samuel) Johnson* holds that the residual clause of the Career Offender sentencing guideline is now void for vagueness, and so Mr. Dalton's assault conviction under § 2903.11(A)(1) cannot qualify as a "crime of violence" under that prong of § 4B1.2(a)(2).

**a.** _Johnson_ applies to the Sentencing Guidelines.

In other cases, the government has conceded – and this Court has accepted that concession – that _Johnson_ applies to the Sentencing Guidelines. _See, e.g., United States v. Benavides_, 617 F. App'x 790 (9th Cir. 2015). In _United States v. Torres_, No. 14-10210 (9th Cir.) (argued and submitted on December 8, 2015), the United States agreed that "the invalidation of the ACCA's residual clause in _Johnson_ applies to the identically worded clause in § 4B1.2(a)(2), and thus that [the defendant's] felony convictions, after _Johnson_, no longer qualify as 'crimes of violence.'" _Torres_, No. 14-10210, ECF No. 53 at 4.

This Court has interpreted the identically worded residual clauses of the Armed Career Criminal Act and §4B1.2 interchangeably. _See, e.g., United States v. Willis_, 795 F.3d 986, 996 (9th Cir. 2015). Further, the advisory guidelines are subject to claims of unconstitutional vagueness. _Peugh v. United States_, 133 S. Ct. 2072, 2078 (2013) (holding that the Ex Post Facto Clause applies to advisory guidelines); _see also United States v. Johnson_, 130 F.3d 1352, 1354 (9th Cir. 1997) (then-mandatory guidelines were susceptible to vagueness challenges); _Gall v. United States_, 552 U.S. 38, 49 (2007) (continuing to require that the advisory guidelines be the starting point for sentencing).

In _Peugh_, the Sentencing Guidelines had changed between the defendant's commission of the crime and his sentencing. 133 S. Ct. at 2078. The change increased the offense level, and therefore the Guidelines range to which the defendant was exposed. _Id._ at 2078-79. In finding that the Ex Post Facto Clause of the Constitution applied, the Court expressly rejected the government's argument that no violation could occur where the Guidelines were merely advisory. _Id._ at 2087. Pointing to empirical evidence demonstrating the central, "lodestone" role the Guidelines play in "influencing the sentences imposed by judges," the Court held that "the [Guidelines] range is intended to, and usually does, exert controlling influence on the sentence the court will impose." _Id._ at 2084, 2085. This outsized

influence means, the Court held, that the Guidelines are susceptible to constitutional challenges even though they are now advisory. *Id.*

Here, the due process principles espoused in *(Samuel) Johnson*, combined with the application of constitutional protections to the Guidelines under *Peugh*, compel the conclusion that the identical residual clause of §4B1.2 is also unconstitutionally vague. *United States v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015); *see also Dimaya*, 803 F.3d at 1120 (holding 18 U.S.C. § 16(b)'s residual clause, as incorporated in 8 U.S.C. § 1101(a)(43)(F), is unconstitutionally vague).

Ohio felonious assault is not a crime of violence under § 4B1.2, and Mr. Dalton's enhanced sentencing guidelines based on his conviction under that statute violated due process.

> **b.**   *Johnson's application to the Guidelines is retroactive under Welch.*

A new rule has been "made retroactive to cases on collateral review" if "the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001). The Supreme Court has held that new substantive rules "generally apply retroactively," while new procedural rules do not. *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004); *see also Bousley v. United States*, 523 U.S. 614, 620 (1998); *Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality op.). Substantive rules include rules that "narrow the scope of a criminal statute by interpreting its terms," *Schriro*, 542 U.S. at 351-52, or "alter[ ] the range of conduct or the class of persons that the law punishes," *id.* at 353.

In *Welch v. United States*, the Supreme Court held that *Johnson* was a "new substantive rule that has retroactive effect in cases on collateral review." 136 S. Ct. 1257, 1268 (2016). It is substantive, the Court held, because it changed the substantive reach of a sentencing enhancement. *Id.* at 1265. "*Johnson* establishes . . . that 'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause. . . . It follows that *Johnson* is a substantive decision." *Id.*

Just as clearly, *Welch* held that *Johnson* is decidedly not a procedural rule. It

1  does not "allocate decision making authority between jury and jury, or regulate the

2  evidence that the court could consider in making its decision." *Id.* (internal citations

3  and quotation marks omitted). Rather, *Johnson* affected the reach of the underlying

4  statute rather than the judicial procedures by which the statute is applied." *Id.*

5      The fact that *Welch* arose in the context of the Armed Career Criminal Act is

6  of no effect. The holding of *Welch* is not limited to Armed Career Criminal Act

7  defendants, as the Court states: "The residual clause is invalid under *Johnson* so it can

8  no longer mandate or authorize *any* sentence." *Id.* (emphasis added). "It follows that

9  *Johnson* is a substantive decision," *id.*—not a substantive decision as it relates to

10 Armed Career Criminal Act defendants, but a substantive decision, period.

11     Under *Teague*, "either a rule is retroactive or it is not." *United States v. Doe*, 810

12 F.3d 132, 154 & n.13 (3d Cir. 2015). As the government itself has previously argued,

13 it was "not aware of any . . . chameleon-like rules" that "were substantive for some

14 purposes and procedural for others." Supplemental Brief for United States on

15 Rehearing En Banc, *Spencer v. United States*, No. 10-10676, at 15 (11th Cir. Aug. 15,

16 2013). Rather, a rule's "status as a substantive rule is fixed," and "does not fluctuate

17 based on whether the prisoner is challenging an Armed Career Criminal Act

18 enhancement, a mandatory guidelines enhancement, or, as here, an advisory

19 guidelines enhancement." *Id.* at 15; *see also Reina-Rodriguez v. United States*, 655 F.3d

20 1182, 1189 (9th Cir. 2011) (en banc) (applying a rule that was substantive in the

21 Armed Career Criminal Act context to the guidelines). Because *Johnson* states a

22 substantive rule, it must be given retroactive effect, regardless of the context.

23     "Increasing a defendant's sentence under the residual clause denies due

24 process of law" because it is "vague in all its applications." *Johnson*, 135 S. Ct. at 2551.

25 Because it is invalid, the residual clause can no longer "mandate or authorize any

26 sentence." Therefore, any "sentence that is based on that clause" is illegitimate.

27 *Welch*, 136 S. Ct. at 1265. And when a court enhances a sentence using the residual

28 clause of the Career Offender sentencing guidelines, that sentence is "based on" the

clause. As the Supreme Court main succicntly clear in *Peugh*, "the guidelines are in a real sense the *basis* for the sentence." 133 S. Ct. 2072, 2083 (emphasis added).

         **i.**    The holding and reasoning of *Welch* apply with equal force to the Sentencing Guidelines.

       It makes no difference whether a sentence is based on the residual clause in the Armed Career Criminal Act or the residual clause in the Career Offender sentencing guideline. In either case the sentence is illegitimate. By invalidating the residual clause in its entirety, "*Johnson* 'changed the substantive reach of the [guidelines], 'altering the range of conduct or class of persons'" that can be punished under the career offender – or any other enhancement based on § 4B1.2(a)(2)'s residual clause – guideline. *Welch*, 136 S. Ct. at 1265. Consistent with lower decisions before and after *Johnson*,[4] *Welch* made clear that the relevant "category" for retroactivity purposes is the *rule*, not the *type of case* in which the rule is invoked.

       That this is so is made clear by the way the Court framed the issue. The question in *Welch*, as framed by the Court, was whether the "new rule [announced in *Johnson*] falls within one of the two categories that have retroactive effect under *Teague*," which it defined as "categories of decisions" that are "substantive rules" or "watershed rules of criminal procedure," *Welch*, 136 U.S. at 1264. (emphasis added). The Court did not, as the Government had hoped, even hint that it intended to divide Armed Career Criminal Act errors and Guidelines errors into "two distinct

---

[4] *See, e.g., United States v. Doe*, 810 F.3d 132, 154 & n.13 (3d Cir. 2015); *Narvaez v. United States*, 674 F.3d 621, 625-26 (7th Cir. 2011); *Brown v. Caraway*, 719 F.3d 583, 594–95 (7th Cir. 2013); *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1189 (9th Cir. 2011); *Rozier v. United States*, 701 F.3d 681 (11th Cir. 2012); *In re Watkins*, 810 F.3d 375, 383 (6th Cir. 2015) (holding in an ACCA case that *Johnson* is "categorically retroactive" to cases on collateral review); *In re Grant*, No. 15-5795 (6th Cir. March 7, 2016) (authorizing successive § 2255 motion in a guidelines case based on *Watkins*); *Price v. United States*, 795 F.3d 731, 734 (7th Cir. 2015) (holding in an ACCA case that *Johnson* is "categorically retroactive"); *Stork v. United States*, No. 15-2687, slip op. at 1 (7th Cir. Aug. 13, 2015).

categories" for retroactivity purposes. It held, without qualification, that the residual clause is invalid at all times and for all purposes. *Id.* at 1265. In light of the Court's holding, one can only conclude that the substantive rule announced in *Johnson* is categorically retroactive to all cases in which it applies.[5]

> **ii.** The Career Offender guideline is both uniquely statutory and uniquely severe in its application.

Congress has instructed that district courts "shall consider" the "sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines," 18 U.S.C. § 3553(a)(4), an instruction that has always been and remains mandatory. And the Supreme Court has made clear that the guidelines are the sentencing court's "starting point and . . . initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). District courts "'must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process,'" *Peugh*, 133 S. Ct. at 2083. "When a defendant is sentenced under an incorrect guideline range – whether or not the defendant's ultimate sentence falls within the correct range – the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

While all of the guidelines are legislative in nature, offender guideline is uniquely statutory and also uniquely severe. The Sentencing Commission established the career offender guideline pursuant to a congressional directive to "specify a sentence to a term of imprisonment at or near the maximum term authorized" for defendants convicted for at least the third time of a felony that is a "crime of violence" or a specified drug offense. *See* 28 U.S.C. § 994(h). Accordingly, the guideline ties the offense level to the statutory maximum for the offense of

---

[5]  *See Davis v. United States*, 564 U.S. 229, 243 (2011) (retroactivity is a "categorical matter").

conviction and automatically places the defendant in Criminal History Category VI if he is convicted for at least the third time of a felony that is a "crime of violence" or a "controlled substance offense." *See* U.S.S.G. § 4B1.1(a)-(b) (2015).

The Commission has no discretion to reduce the severity of the career offender guideline, *see United States v. LaBonte*, 520 U.S. 751, 757 (1997), despite the fact that it creates a "category of offender subject to particularly severe punishment," *Buford v. United States*, 532 U.S. 59, 60 (2001). Indeed, whether or not a defendant is subject to that punishment makes a huge difference. The guideline range for a defendant convicted of a drug offense who is classified as a career offender is tied to the statutory maximum, while the guideline range for a person convicted of a drug offense who is not classified as a career offender is tied to the statutory minimum. As a result, the average career offender guideline minimum in 2014 (204 months) was 2.46 times the non-career offender guideline minimum (83 months), and the average sentence imposed on drug offenders classified as career offenders (138.6 months) was 2.35 times the average sentence imposed on drug offenders not classified as career offenders (62 months).

The mandatory guidelines, of course, "ha[d] the force and effect of laws," were "binding on all judges," and prescribed "the maximum [sentence] authorized." *United States v. Booker*, 543 U.S. 220, 233-34 (2005).

The holding and reasoning of *Welch* compel the conclusion that *Johnson* applies retroactively in cases involving defendants who received a sentencing enhancement under the residual clause in USSG § 4B1.2(a).

**B.    Mr. Dalton is otherwise entitled to relief under 28 U.S.C. § 2255, because his claim is cognizable, and his petition is timely.**

    **1.**    Mr. Dalton's claim is cognizable under § 2255(a).

A federal prisoner may move to "vacate, set aside or correct" his sentence if it "was imposed in violation of the Constitution." 28 U.S.C. § 2255(a). Mr. Dalton's 51-month sentence was imposed in violation of the Constitution because it was

14

1   predicated on a residual clause that is "unconstitutionally vague"; thus, "imposing an

2   increased sentence under the residual clause . . . violates the Constitution's guarantee

3   of due process." *Johnson*, 135 S. Ct. at 2563. As demonstrated above, *Johnson*'s

4   constitutional holding regarding the Armed Career Criminal Act's residual clause

5   applies to the nearly-identical residual clause in 18 U.S.C. § 924(c)(3)(B). *See Dimaya*,

6   803 F.3d at 1120 (applying *Johnson* to identical wording of residual provision in

7   § 16(b)). Thus, Mr. Dalton's claim for relief is cognizable under the plain language of

8   § 2255(a).

9          This is all that is required. Because Mr. Dalton's sentence was imposed "in

10   violation of the Constitution," 28 U.S.C. § 2255(a), the "fundamental defect"

11   standard applicable to ordinary claims of statutory error does not apply. Only a non-

12   jurisdictional, non-constitutional error of law must constitute "a fundamental defect

13   which inherently results in a complete miscarriage of justice" in order to be

14   cognizable. *Hill v. United States*, 368 U.S. 424, 428 (1962); *see also United States v.*

15   *Addonizio*, 442 U.S. 178, 185 (1979); *Davis v. United States*, 417 U.S. 333, 343-344

16   (1974); *United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015) ("[I]f the alleged

17   sentencing error is neither constitutional nor jurisdictional, a district court lacks

18   authority to review it unless it amounts to 'a fundamental defect which inherently

19   results in a complete miscarriage of justice.'") (citations omitted); *Narvaez v. United*

20   *States*, 674 F.3d 621, 623 (7th Cir. 2011) ("The term 'miscarriage of justice' comes

21   from the Supreme Court's holding that a non-jurisdictional, non-constitutional error

22   of law is not a basis for collateral attack under § 2255 unless the error is 'a

23   fundamental defect which inherently results in a complete miscarriage of justice.'")

24   (citations omitted).

25          A claim based on *Johnson*, in contrast, is constitutional and therefore

26   cognizable. *See United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (although an

27   erroneous determination of an advisory guideline range "generally [is] not cognizable

28   on a § 2255 motion," relief "is available" for "an error of constitutional . . .

15

magnitude"); *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (recognizing that "fundamental defect" standard does not apply to constitutional or jurisdictional error); Order, *Brown v. United States*, No. 15-10025 (11th Cir. Sept. 2, 2015) (granting certificate of appealability because although a claim that a defendant was misclassified as a career offender "is generally not cognizable" under circuit law applicable to errors of statutory interpretation, "*Johnson* involved a claim of constitutional error").

    **2.**   <u>This motion is timely under 28 U.S.C. § 2255(f)(3).</u>

Mr. Dalton's motion is also timely under 28 U.S.C. § 2255(f)(3), which provides for a one-year limitations period to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

The Supreme Court decided *Johnson* on June 26, 2015, and Mr. Dalton filed his claim within a year of that date. As discussed above, the Supreme Court recognized a new right in *Johnson*, and announced a substantive rule that is therefore retroactive to cases on collateral review.

IV.

**Conclusion**

Because Mr. Dalton's Ohio felonious assault conviction is no longer a crime of violence after *Johnson*, and because he has shown that he is otherwise entitled to relief under 28 U.S.C. § 2255, Mr. Dalton respectfully requests that this Court grant his motion, vacate the sentence, and re-sentence him.

Respectfully submitted,

Dated:   June 13, 2016          *s/ Benjamin P. Davis*
                                **Benjamin P. Davis**
                                **Kara Hartzler**
                                Federal Defenders of San Diego, Inc.
                                Attorneys for Mr. Dalton

17

# EXHIBIT A

FILED

AUG 15 2012

CLERK
SOUTHERN
BY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 12CR3367-BEN |
| Plaintiff, | ) ) | I N F O R M A T I O N |
| v. | ) ) | Title 18, U.S.C., Secs. 922(g)(1) and 924(a)(2) - Felon in |
| JEREMY ADAM DALTON, | ) ) | Possession of a Firearm; Title 18, U.S.C., Sec. 924(d)(1) and |
| Defendant. | ) ) | Title 28, U.S.C., Sec. 2461(c) - Criminal Forfeiture |
| | ) | |

The United States Attorney charges:

On or about June 7, 2012, within the Southern District of California, defendant JEREMY ADAM DALTON, being a person who had previously been convicted in a court, that is, the Superior Court of Ohio, County of Ohio, of a crime punishable by imprisonment for a term exceeding one year, that is, on or about July 7, 2008, of Possession of Cocaine, in violation of Ohio Revised Code Section 2925.11(A)(C)(4)(b), did knowingly and unlawfully possess in and affecting interstate commerce, to wit: one Glock, model 23, .40 caliber, pistol, bearing serial number BDB110US; in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

//

//

JLS(RKJ):nlv:8/14/12

1                          FORFEITURE ALLEGATION

2          Upon conviction of the offense alleged in this Information,

3     defendant JEREMY ADAM DALTON shall forfeit to the United States,

4     pursuant to Title 18, United States Code, Section 924(d)(1), and

5     Title 28, United States Code, Section 2461(c), the firearm involved,

6     to wit: one Glock, model 23, .40 caliber, pistol, bearing serial

7     number BDB110US; in violation of Title 18, United States Code,

8     Section 924(d)(1), and Title 28, United States Code, Section 2461(c).

9          DATED:   8/15/12   .

10
                                    LAURA E. DUFFY
11                                  United States Attorney

12                                  JEFFREY L. SHIH        for
                                    Assistant U.S. Attorney
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28


                                        2

# EXHIBIT B

FILED

NOV 2 6 2012

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,        )   Case No. <u>12CR3367-BEN</u>
                                      )
11                  Plaintiff,        )   I N F O R M A T I O N
                                      )   (SUPERSEDING)
12        v.                          )   Title 18, U.S.C., Secs. 922(g)(1)
                                      )   and 924(a)(2) - Felon in
13   JEREMY ADAM DALTON,              )   Possession of Firearms and
                                      )   Ammunition; Title 18, U.S.C., Sec.
14                  Defendant.        )   924(d)(1) and Title 28, U.S.C.,
                                      )   Sec. 2461(c) - Criminal Forfeiture
15   _____)

16        The United States Attorney charges:

17        On or about June 7, 2012, within the Southern District of

18   California, defendant JEREMY ADAM DALTON, being a person who had

19   previously been convicted in a court, that is, the Superior Court of

20   Ohio, County of Ohio, of a crime punishable by imprisonment for a term

21   exceeding one year, that is, on or about July 7, 2008, of

22   Possession of Cocaine, in violation of Ohio Revised Code

23   Section 2925.11(A)(C)(4)(b), did knowingly and unlawfully possess, in

24   and affecting interstate commerce, to wit:

25             1) 681 rounds of assorted ammunition;

26             2) one Glock, model 23, .40 caliber pistol, serial number
                  BDB110US;
27
               3) one Taurus, model 608, .357 caliber revolver, serial
28                number BT652166;

               4) one Llama (Gabilondo & CIA), ZZ caliber pistol, serial
                  number A33354;

5) one Taurus, model PT140 Millennium Pro, .40 caliber pistol, serial number SYJ45735;

6) one Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver, serial number DM104710;

7) one Walther, model P22, .22 caliber pistol, serial number N017274;

8) one Colt, model DELTA ELITE, .10 caliber pistol, serial number 10SS0832;

9) one Glock, model 17, .9 caliber pistol, serial number KNP396;

in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

FORFEITURE ALLEGATION

Upon conviction of the offense alleged in this Information, defendant JEREMY ADAM DALTON shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), the firearms and ammunition involved, to wit:

1) 681 rounds of assorted ammunition;

2) one Glock, model 23, .40 caliber pistol, serial number BDB110US;

3) one Taurus, model 608, .357 caliber revolver, serial number BT652166;

4) one Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;

5) one Taurus, model PT140 Millennium Pro, .40 caliber pistol, serial number SYJ45735;

6) one Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver, serial number DM104710;

7) one Walther, model P22, .22 caliber pistol, serial number N017274;

8) one Colt, model DELTA ELITE, .10 caliber pistol, serial number 10SS0832;

9) one Glock, model 17, .9 caliber pistol, serial number KNP396;

2

1  in violation of Title 18, United States Code, Section 924(d)(1), and

2  Title 28, United States Code, Section 2461(c).

3  DATED: 11/26/12  .

4                                    LAURA E. DUFFY
                                     United States Attorney
5

6                                    RANDY K. JONES
                                     Assistant U.S. Attorney
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

```
1                    UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4     UNITED STATES OF AMERICA,           .
                                          .
5              PLAINTIFF,                 . NO. 12-CR-3367
                                          .
6              V.                         . APRIL 8, 2013
                                          .
7     JEREMY ADAM DALTON,                 . 10:24 A.M.
                                          .
8              DEFENDANT.                 . SAN DIEGO, CALIFORNIA
      . . . . . . . . . . . . . . . .     .
9

10

11

             TRANSCRIPT OF SENTENCING WITH A PRESENTENCE REPORT
12                BEFORE THE HONORABLE ROGER T. BENITEZ
                      UNITED STATES DISTRICT JUDGE
13

14        APPEARANCES:

15
          FOR THE PLAINTIFF:       U.S. ATTORNEY'S OFFICE
16                                 SOUTHERN DISTRICT OF CALIFORNIA
                                   BY:  RANDY JONES, ESQ.
17                                 880 FRONT STREET, ROOM 6293
                                   SAN DIEGO, CALIFORNIA  92101
18
          FOR THE DEFENDANT:       LAW OFFICE OF VIKAS BAJAJ
19                                 BY:  VIKAS BAJAJ, ESQ.
                                   225 BROADWAY, SUITE 2200
20                                 SAN DIEGO, CALIFORNIA  92101

21
          COURT REPORTER:     DEBORAH M. O'CONNELL, RPR, RMR, CSR
22                            333 WEST BROADWAY, SUITE 420
                              SAN DIEGO, CALIFORNIA, 92101
23

24    REPORTED BY STENOTYPE, TRANSCRIBED BY COMPUTER

25
```

```
 1              SAN DIEGO, CALIFORNIA, APRIL 8, 2013, 10:24 A.M.

 2                              * * * *

 3

 4              THE CLERK:  NINE ON CALENDAR, CASE NO. 12-CR-3367,

 5    USA VS. JEREMY ADAM DALTON, SENTENCING WITH A PRESENTENCE

 6    REPORT.

 7              MR. JONES:  GOOD MORNING, YOUR HONOR.  RANDY JONES,

 8    FOR THE UNITED STATES.

 9              MR. BAJAJ:  GOOD MORNING, YOUR HONOR.  VIKAS BAJAJ,

10    ON BEHALF OF JEREMY DALTON, WHO IS PRESENT.

11              THE COURT:  THIS MATTER IS SET FOR SENTENCING TODAY.

12    I NOTE UNDER BOOKER, THE GUIDELINES ARE ADVISORY.  I WILL

13    IMPOSE SENTENCE BASED ON 3553(A) FACTORS.

14        I APOLOGIZE.  I'M TAKING A LITTLE LONG.  I'M TRYING TO

15    REREAD THE PRE-SENTENCE REPORT.  BUT I HAVE SO MANY SECTIONS

16    THAT WERE UNDERLINED, IT'S TAKING ME --

17        COUNSEL, I'M LEANING TOWARDS IMPOSING THE HIGH END OF THE

18    GUIDELINE RANGE IN THIS CASE.  AND, FRANKLY, I THINK HE'S

19    PROBABILITY LUCKY THAT I IMPOSE A SENTENCE WITHIN THE RANGE

20    THAT HAS BEEN AGREED TO.  IT WOULDN'T TAKE ME MUCH TO VARY UP

21    FROM THAT, JUST SO THAT YOU KNOW.

22              MR. BAJAJ:  I UNDERSTAND, YOUR HONOR.  AND I'M

23    ASSUMING THE CONCERNS THAT THE COURT HAS ARE FOCUSED ON THE

24    PRESENCE OF NARCOTICS IN THE CASE?

25              THE COURT:  YOU KNOW WHAT, IT'S NOT NECESSARILY
```

1    FOCUSED ON THAT.  IT'S ACTUALLY -- LIKE I SAID, LOOK AT HOW

2    MUCH TIME I JUST SPENT TRYING TO GO BACK THROUGH THE UNDERLYING

3    PORTIONS OF -- I MEAN, FIRST OF ALL, I KNOW THAT DRUGS AND GUNS

4    ARE AN AWFUL COMBINATION, OKAY.  AND ALTHOUGH I AM NOT ASHAMED

5    TO ADMIT THAT I BELIEVE THAT WE SHOULD INTERPRET THE SECOND

6    AMENDMENT AS BROADLY AS WE INTERPRET THE FIRST AMENDMENT, I

7    ALSO UNDERSTAND THAT THERE ARE LIMITS.  AND THERE ARE THINGS

8    ABOUT THE SECOND AMENDMENT THAT -- OR THE CONDUCT OF THIS

9    DEFENDANT, WHICH, IN MY OPINION, SORT OFF DEFEAT THE WHOLE

10   PURPOSE OF THE SECOND AMENDMENT.

11       I MEAN, IT IS NOT ONLY THE NUMBER OF WEAPONS THAT HE

12   OWNED, BECAUSE, YOU KNOW, I DON'T THINK THERE IS ANYTHING IN

13   THE SECOND AMENDMENT THAT SHOULD LIMIT PEOPLE'S RIGHTS TO OWN

14   HOWEVER MANY WEAPONS THEY WANT.  BUT IT'S THE NATURE OF THE

15   WEAPONS, AND THE NATURE OF WHERE THE WEAPONS WERE STORED, HOW

16   THEY WERE CONCEALED, THE ADDITION OF THE DRUGS IN THE DRUG

17   CONTAINERS, THE FACT THAT THIS GENTLEMAN HAD A T-SHIRT WITH THE

18   WORD "POLICE" IN BOLD YELLOW LETTERS ACROSS IT.  THE FACT THAT

19   HE HAD DAGGERS.  NOW, YOU KNOW, I DON'T KNOW THAT THE SECOND

20   AMENDMENT PROTECTS DAGGERS.  MAYBE IT DOES.

21       BUT, YOU KNOW, I DON'T KNOW THAT I KNOW VERY MANY PEOPLE

22   WHO HAVE DAGGERS.  A KNIFE WITH BRASS KNUCKLES, A LOCK-PICKING

23   KIT.  NOW -- A PAIR OF HANDCUFFS, A PULL-OVER MASK WITH A

24   SKELETON FACE ON IT, A MILITARY BALLISTIC VEST.  I DON'T KNOW,

25   I COULD JUST GO ON AND ON.  I MEAN, IF YOU READ THIS

4

1   PRE-SENTENCE REPORT, I DON'T KNOW IF MR. DALTON WAS PREPARED TO

2   GO TO WAR AGAINST THE UNITED STATES OR MEXICO OR SOMEBODY ELSE,

3   BUT WHATEVER IT WAS HE WAS DOING IS CERTAINLY OUTSIDE OF WHAT I

4   WOULD CONSIDER TO BE THE REALM OF -- I MEAN, I WOULD IMAGINE

5   THAT IF YOU EVEN ASK THE PRESIDENT OF THE NRA WHETHER HE WOULD

6   THINK THIS TO BE NORMAL BEHAVIOR, I SUSPECT THE ANSWER WOULD

7   PROBABLY BE NO.  I MAY BE WRONG.  BUT THERE IS SO MUCH HERE, I

8   COULD GO ON.  AND I DON'T HAVE TIME TO DO IT.  IT'S VERY

9   TROUBLING TO ME.

10         MR. BAJAJ:  AND I UNDERSTAND THE COURT'S CONCERNS.

11   AND I WOULD BE REMISS IF I INDICATED THAT I DID NOT PREDICT

12   SOME SORT OF THIS SENTIMENT BEING PRODUCED THIS MORNING.  BUT I

13   WILL INDICATE TO THE COURT THAT MY CLIENT HAS ATTEMPTED

14   COOPERATION WITH THE UNITED STATES AND PROVIDED ALL THE

15   INFORMATION THAT HE POSSIBLY COULD IN THE TWO --

16         THE COURT:  I HAVE TAKEN THAT INTO CONSIDERATION,

17   COUNSEL, SO YOU KNOW.  I'VE CONSIDERED THAT, WHICH IS WHY I

18   SAID, IT WOULDN'T TAKE ME MUCH TO GO ABOVE THE GUIDELINE RANGE.

19   BUT I'VE CONSIDERED ALL OF THAT, WHICH IS WHY I'M WILLING TO

20   ADHERE TO THE AGREEMENT THAT HAS BEEN REACHED, BUT NOT GO DOWN

21   TO THE LOW END OF THE GUIDELINES, OKAY.

22         MR. BAJAJ:  I UNDERSTAND.  BUT THE REASON WHY I WAS

23   MAKING REFERENCE TO THE TWO MEETINGS OF ATTEMPTED COOPERATION,

24   OR THE TWO COOPERATION MEETINGS, AS I WOULD TERM THEM, IS

25   BECAUSE WE'VE TALKED AT LENGTH AND AD NAUSEAM WITH A

1   REPRESENTATIVE OF THE ATF, AGENT CONNOLLY, WHO, I BELIEVE, HAS

2   NOW BEEN PUT OUT TO OHIO, INTERESTINGLY ENOUGH.

3           THE COURT:  I'M SORRY, HE IS NOW WHAT?

4           MR. JONES:  HE'S IN BALTIMORE.

5           MR. BAJAJ:  HE IS IN BALTIMORE.

6           THE COURT:  I GOT YOU, I UNDERSTAND.

7           MR. BAJAJ:  YEAH, HE'S STATIONED OUT IN BALTIMORE.

8   AND ALSO LOCAL LAW ENFORCEMENT, AGENT DAVIES, WITH THE ATF

9   LIAISON DEPARTMENT.  AND A REAL PART OF THE MAGNITUDE AND

10  MAJORITY OF THE MEETING WAS IN REGARDS TO THE ITEMS THAT THE

11  COURT JUST REFERENCED IN ORDER TO DISPEL THE NOTION THAT

12  MR. DALTON WAS, IN FACT, PLANNING, PERHAPS, A ROBBERY OR

13  SOMETHING OF THAT NATURE.  THE EXPLANATION THAT WAS GIVEN TO

14  THE AGENTS IN OUR PRESENCE WAS ONE THAT AT FIRST BLUSH, WHEN

15  YOU SEE HIM, WAS SOMEWHAT COMICAL.  BUT AT THE SECOND --

16          THE COURT:  WAS IT A VIDEO -- THEY WERE GOING TO DO A

17  VIDEO?

18          MR. BAJAJ:  THAT'S CORRECT.  AND THERE WAS ALSO --

19          THE COURT:  AND YOU CAN DO A VIDEO WITH A WHOLE LOT

20  LESS THAN WHAT MR. DALTON HAD IN HIS POSSESSION, BELIEVE ME.

21          MR. BAJAJ:  AND THERE ARE SOME THINGS, YOUR HONOR,

22  ABOUT MR. DALTON AND HIS HISTORY THAT ARE NAIVE, TO SAY THE

23  VERY LEAST, ILL-PLANNED, AND ILL-EXECUTED.  THE EXPLANATION OF

24  THE RAP VIDEO, WHILE IT IS COMICAL AT FIRST BLUSH, IS A

25  REALISTIC EXPLANATION.  I BELIEVE THE AGENTS WHO WERE INVOLVED

1   IN THE INVESTIGATION SATISFIED THEMSELVES THAT WHILE IT WAS NOT

2   THE BRIGHTEST OF ALL IDEAS, THAT MR. DALTON WAS IN NO WAY,

3   SHAPE, OR FORM PLANNING TO USE ANY OF THE INDICIA THAT THE

4   COURT HAD REFERENCED FOR THE FURTHERANCE OF ANY CRIMINAL

5   ACTIVITY.

6       THE MASKS THAT THE COURT MADE REFERENCE TO WERE MASKS THAT

7   HE WOULD USE WITH A FEW OF HIS BUDDIES THAT HE HAD GATHERED

8   TOGETHER IN A MOTORCYCLE RIDING GROUP, AND THEY WOULD PUT THESE

9   MASKS ON AND FILM THEMSELVES.  AND THERE WAS INDICIA IMPOUNDED,

10  CORROBORATING THE FACT THAT THEY, IN FACT, DID THAT.  IS IT

11  SAFE, IS IT PRACTICAL, IS IT SOMETHING THAT WE EXPECT --

12          THE COURT:  WAIT, THEY WORE THESE SKULL-FACED COVERED

13  MASKS WHILE RIDING MOTORCYCLES?

14          MR. BAJAJ:  THAT'S CORRECT, YOUR HONOR.  NOW I DIDN'T

15  BELIEVE -- I SHOULDN'T SAY --

16          THE COURT:  I ASSUME THESE ARE DIRT BIKES?

17          MR. BAJAJ:  THESE ARE MOTORCYCLES THAT ARE ACTUALLY

18  ON THE PUBLIC HIGHWAYS.  THEY'RE ROAD BIKES.

19          THE COURT:  ON PUBLIC HIGHWAYS, OKAY.  I SEE.  SO

20  IT'S SORT OF LIKE, INSTEAD OF THE HELLS ANGELS OR THE MONGOLS,

21  IT'S, WHAT, THE SKELETONS?  YOU KNOW, THIS IS GETTING MORE AND

22  MORE FAR-FETCHED.

23          MR. BAJAJ:  YOU KNOW, AND I DIDN'T -- I CAN'T SAY

24  THAT I HAD A FULL BELIEF IN MY CLIENT'S RENDITION OF WHAT

25  ACTUALLY OCCURRED UNTIL I SAW PEOPLE ON THE HIGHWAY WEARING THE

1   VERY SAME THINGS ON MY WAY TO SAN CLEMENTE THE OTHER DAY.  I

2   WILL INDICATE TO THE COURT, HOWEVER, THAT MR. DALTON'S CASE IS

3   SOMEWHAT OF A PARADOX.  ON THE ONE SIDE, YOUR HONOR, HE IS A

4   26-YEAR-OLD INDIVIDUAL, WHO HAS AN ENORMOUS AMOUNT OF FAMILY

5   SUPPORT.  HIS FAMILY IS INVOLVED IN SUBSTANTIAL CHARITABLE

6   ORGANIZATIONS.  THEY'VE DEDICATED UPWARDS OF $4 MILLION SINCE

7   1999 TOWARDS A BUILDING OF HOSPITALS FOR WOMEN AND CHILDREN IN

8   FOREIGN COUNTRIES, INCLUDING, BUT NOT LIMITED TO, GUATEMALA.

9        HIS FATHER IS PRESENT IN COURT AS WELL.  IF HE CAN RAISE

10  HIS RIGHT HAND.  THAT'S ARTHUR RAY DALTON.  HE'S FLOWN IN FROM

11  OHIO, AS A REPRESENTATIVE OF THE FAMILY, TO INDICATE HIS

12  SUPPORT, WHICH IS SUBSTANTIAL AND PERMANENT ON BEHALF OF HIS

13  FAMILY.

14       HE HAS DONE THE RIGHT THINGS SINCE THE ARREST.  HE HAS NOT

15  SUFFERED ONE VIOLATION IN ANY WAY, VIOLATING THE ORDER OF

16  PRETRIAL RELEASE.  HE HAS RE-ENGAGED HIMSELF IN CHARITABLE

17  ORGANIZATIONS THAT HE HAS BEEN A PART OF HIS ENTIRE LIFE.  HE

18  HAS REKINDLED THE CONNECTIONS THAT HAVE BEEN VERY STRONG WITH

19  HIS FAMILY IN OHIO, SPENDING A SIGNIFICANT AMOUNT OF TIME WITH

20  HIS NIECES AND NEPHEWS AND HIS EXTENDED FAMILY.

21       HIS CASE IS A VERY UNIQUE CASE.  BECAUSE UNLIKE MANY

22  PEOPLE THAT WE DEAL WITH IN COURT, MR. DALTON DOES HAVE THE

23  TOOLS TO TURN THIS AROUND AND TO REHABILITATE HIMSELF AND TO

24  MAKE SURE HE CAN, A, TAKE CARE OF THE NARCOTICS, USE AND ABUSE,

25  WHICH HAS BEEN PRESENT FOR OVER A DOZEN YEARS IN HIS LIFE,

1   STARTING OFF, AS THE COURT ALLUDED TO, A COUPLE CASES AGO, WITH

2   THE USE OF MARIJUANA, GRADUATING TO COCAINE, OXYCODONE, AND A

3   MYRIAD OF OPIATES THAT WERE FOUND DURING THE EXECUTION OF THE

4   SEARCH WARRANT IN HIS APARTMENT HERE IN SAN DIEGO.

5      HE IS AN INDIVIDUAL WHO HAS SUFFERED SIGNIFICANTLY FROM

6   NARCOTICS ABUSE.  AND IT'S SOMETHING, UNFORTUNATELY, HIS FAMILY

7   HAS HAD TO DEAL WITH, SOMETHING HE WAS EMBARRASSED ABOUT, BUT

8   SOMETHING THE FAMILY NOW BELIEVES THAT HE NEEDS SUPPORT AND

9   HELP IN ADDRESSING.  SO WE WOULD FURTHER THE PROBATION

10  DEPARTMENT'S RECOMMENDATION FOR THE RDAP PROGRAM.  WHATEVER THE

11  COURT SENTENCE MAY BE, I THINK IT'S SOMETHING THAT COULD HELP.

12     HE HAS STRONG FAMILY TIES.  HE'S FULLY EMPLOYED.  HE WAS

13  MAKING DECENT MONEY UP UNTIL THE TIME OF HIS ARREST.  THE

14  CONSEQUENCE OF THE ARREST IS THAT HE HAS HAD TO, IN ESSENCE,

15  DIVULGE HIS INTEREST IN THE CORPORATION, RADIOGRAPHICS LIMITED

16  HERE.  IT IS A MEDICAL SUPPLY COMPANY THAT HE WAS BROUGHT OUT

17  HERE IN 2010 TO START WITH HIS PARTNER, WHO WAS THE ULTIMATE

18  RECIPIENT OF THE WEAPONS THAT WERE ACTUALLY INSIDE THE STORAGE

19  UNIT.  THIS INFORMATION WAS GIVEN TO THE AGENTS AT THE SECOND

20  DEBRIEF THAT WE HAD AT THE END OF NOVEMBER LAST YEAR.

21     HE HAS THE TOOLS TO TURN IT AROUND, YOUR HONOR.  HE HAS

22  THE TOOLS TO SEEK THE PROPER REHABILITATION, TO BE -- CONTINUE

23  BEING A BREAD-WINNING MEMBER OF SOCIETY AND A PERSON WHO

24  CONTRIBUTES SIGNIFICANTLY.

25     HIS OWN DONATIONS TO THE CHARITABLE ORGANIZATIONS ARE

1   PROBABLY SOMEWHERE UPWARDS OF 60 TO 65 PERCENT OF EACH PAYCHECK

2   THAT HE HAS HAD SINCE THIS CASE HAS COME AROUND, HAS GONE

3   TOWARDS THE CHARITABLE ORGANIZATIONS THAT HIS FAMILY SUPPORTS.

4       HE HAS ALSO SPENT A SIGNIFICANT AMOUNT OF TIME WITH THE

5   CHARITABLE DONATIONS, FEEDING THE POOR IN THE AREA IN OHIO

6   WHERE HE LIVES.  THE COURT HAS READ ALL THE FILINGS, ALL THE

7   LETTERS OF SUPPORT, WHICH ARE SUBSTANTIAL, WHICH ARE

8   SIGNIFICANT, AND I THINK SHOULD IN MANY WAYS INFLUENCE THE

9   COURT'S IMPRESSION OF WHO MR. DALTON IS AS A PERSON OTHER THAN

10  THE FIREARMS THAT WE'RE DEALING WITH TODAY.

11      THE ONLY ADDITIONAL RECOMMENDATION WE WOULD HAVE, YOUR

12  HONOR, FOR A REQUEST, WOULD BE FOR PLACEMENT IN THE

13  NORTHEASTERN REGION SO HE CAN BE CLOSE TO HIS FAMILY, HIS

14  EXTENDED FAMILY IN OHIO.  AND I KNOW MR. DALTON WOULD ALSO LIKE

15  TO ADDRESS THE COURT.

16          THE COURT:  ALL RIGHT, MR. DALTON, YOU HAVE A RIGHT

17  TO ADDRESS THE COURT BEFORE I IMPOSE SENTENCE.  IS THERE

18  ANYTHING YOU WANT TO SAY?

19          THE DEFENDANT:  YES, YOUR HONOR.  I WOULD LIKE TO

20  START BY APOLOGIZING, OBVIOUSLY, TO THE COURT AND TO MY FAMILY.

21  THESE CHARGES ARE NOT REPRESENTATIVE OF WHO I AM AS A PERSON.

22  OBVIOUSLY, IT'S A VERY LARGE MISTAKE, AND I TAKE COMPLETE --

23  ACCEPT COMPLETE RESPONSIBILITY FOR IT.  IT IS NOBODY'S FAULT

24  BUT MY OWN FOR BEING IN THIS SITUATION.  I NEVER INTENDED TO

25  HURT ANYBODY OR CAUSE ANYBODY HARM.  OBVIOUSLY, I'VE CAUSED A

1    LOT OF PEOPLE EMOTIONAL HARM, BUT I NEVER MEANT TO CAUSE

2    ANYBODY ANY PHYSICAL HARM.

3        I DO BELIEVE THAT MY FAMILY AND MY STRONG FAMILY UNIT -- I

4    HAVE THE TOOLS TO TURN THIS SITUATION AROUND AND NOT BE A

5    BURDEN ON SOCIETY BUT TRY TO BE A PRODUCTIVE MEMBER OF SOCIETY.

6            THE COURT:  OKAY.  DOES THE GOVERNMENT HAVE ANYTHING?

7            MR. JONES:  YES, YOUR HONOR.  YOUR HONOR, THE

8    GOVERNMENT AGREES THAT THIS CASE IS QUITE A PARADOX.  THE

9    DEFENDANT HAS A -- AS YOU'VE HEARD, GREAT FAMILY SUPPORT.  HE

10   IS WELL OFF FINANCIALLY.  HE HAS SOCIO-ECONOMIC FACTORS THAT

11   THE COURT DOESN'T NORMALLY SEE IN THESE TYPES OF CASES.  BUT AT

12   THE SAME TIME, WHAT IS TROUBLING IS NOT ONLY THE AMOUNT OF

13   WEAPONS AND AMMUNITION AND THE DRUGS THAT ARE INVOLVED IN THE

14   CASE, BUT THE DEFENDANT ALSO HAD A PRIOR RECORD, A CRIMINAL

15   RECORD, WHICH CONSISTS OF FELONIOUS ASSAULT AND DRUG

16   TRAFFICKING OR DRUG POSSESSION.

17       AND WITH RESPECT TO ALL THE OTHER ITEMS THAT WERE FOUND IN

18   THE STORAGE UNIT IN HIS APARTMENT, AND IN SPEAKING WITH HIM, IN

19   TRYING TO GET AN EXPLANATION, YOU KNOW, THE EXPLANATION HE'S

20   GIVEN, I THINK WE ARE GIVING HIM THE BENEFIT OF THE DOUBT.  BUT

21   ONE COULD ALSO SAY THAT IT HAD SOMETHING TO DO WITH THIS NOTION

22   OF WANTING TO BE SOME SORT OF GANGSTER, SORT OF A WANNA-BE

23   GANGSTER.  HE WAS HANGING OUT WITH THE WRONG FOLKS, FOLKS WHO

24   WERE INVOLVED IN SOME VERY SERIOUS ACTIVITY.

25       AND FOR THAT REASON, THE GOVERNMENT FINDS THIS CASE TO BE

1    SOMEWHAT TROUBLING AND CONCERNING.  BUT HAVING SAID ALL OF

2    THAT, AS WE SAID BEFORE, WE'VE GIVEN HIM THE BENEFIT OF THE

3    DOUBT, AND THAT'S WHY WE'RE MAKING THE RECOMMENDATION OF THE

4    LOW END OF THE GUIDELINES.

5            THE COURT:  PROBATION HAVE ANYTHING?

6            PROBATION OFFICER:  I HAVE NO ADDITIONAL INFORMATION,

7    YOUR HONOR.

8            THE COURT:  BOY, YOU KNOW, THIS IS JUST SUCH A

9    TROUBLING CASE.  IT SEEMS THAT MR. DALTON DOES HAVE FAMILY

10   SUPPORT.  AND UNLIKE SO MANY PEOPLE THAT APPEAR BEFORE ME, THAT

11   DON'T HAVE ANY ASSETS OR FINANCIAL RESOURCES TO RELY ON, I LOOK

12   AT HIS FINANCIAL STATEMENTS, FOR EXAMPLE, AND NOW I HEAR ABOUT

13   HIS FAMILY.  APPARENTLY, HE HAS A WEALTHY FAMILY, AND WHICH

14   LEADS ME TO CONCLUDE THAT MONEY AND FINANCIAL STATUS REALLY

15   HAVE VERY LITTLE BEARING ON CRIMINAL BEHAVIOR.

16       YOU KNOW, BESIDES THE THINGS THAT I HAD POINTED OUT --

17   YEAH, I NOTED IN HIS PAST CRIMINAL HISTORY, HE HAD A FELONIOUS

18   ASSAULT AT THE AGE OF 19.  AND THEN, AT THE AGE OF 21, HE WAS

19   CONVICTED OF POSSESSION OF COCAINE.  AND WHAT I NOTED ABOUT

20   THAT, THAT I THOUGHT WAS INTERESTING, WAS NOT ONLY THAT HE WAS

21   IN POSSESSION OF COCAINE, BUT I NOTICED THAT HE HAD TO BE

22   TASERED TWICE IN ORDER TO BRING MR. DALTON INTO COMPLIANCE.  I

23   HAVE NEVER BEEN TASERED, BUT FROM WHAT I'VE HEARD, IT'S NOT A

24   PLEASANT THING TO GO THROUGH.  AND YOU HAD TO GO THROUGH IT

25   TWICE IN ORDER TO BE SUBDUED.

1    YOU KNOW, WHEN YOU PUT ALL THIS TOGETHER, YOU PUT -- HERE

2   MR. DALTON, AS HE STANDS BEFORE ME -- AND HE REALLY SEEMS TO BE

3   A NICE MAN, YOU KNOW, REMORSEFUL AND ARTICULATE, AND SO ON.

4   BUT HIS BEHAVIOR IS SO, SO, SO OUT OF THE ORDINARY, SO STRANGE.

5   AGAIN, IT IS NOT THE NUMBER OF WEAPONS THAT HE HAD.  THAT

6   DOESN'T BOTHER ME AT ALL, UNLIKE SOME PEOPLE, WHO WOULD REALLY

7   GET INTO A TIZZY OVER THAT.  BUT IT'S THE MANNER OF THE

8   POSSESSION OF THE WEAPONS AND THE OTHER THINGS THAT GO WITH IT

9   THAT CAUSE ME SUCH A CONCERN.

10    NOW I NOTED -- SOMETHING ELSE I FOUND INTERESTING ABOUT

11   THIS CASE.  I NOTED THAT HE STARTED USING MARIJUANA WHEN HE WAS

12   IN COLLEGE.  AND THEN, I GUESS, HE SORT OF HAS GRADUATED -- I

13   NOTED, INTERESTINGLY ENOUGH, BY THE WAY, THAT THE 2007

14   CONVICTION FOR POSSESSION OF COCAINE, I THINK THAT'S THE ONE

15   THAT RESULTED FROM HIM BEING IN A VEHICLE WITH SOMEONE ELSE AND

16   THEY WERE SMOKING MARIJUANA IN THE VEHICLE.  AND THE SMOKE WAS

17   COMING OUT OF THE VEHICLE.

18    AND, APPARENTLY, THE OFFICERS -- SOME LAW ENFORCEMENT

19   OFFICERS NOTICED THE PLUME OF SMOKE COMING OUT OF THE VEHICLE,

20   SO THEY ATTEMPTED TO ARREST HIM.  AND THEN HE TRIED TO RUN AWAY

21   AND WOUND UP BEING TASERED TWICE, WHICH SIMPLY GOES TO SHOW

22   THAT NOTHING GOOD COMES OUT OF SMOKING MARIJUANA, NOT JUST THE

23   FACT THAT YOU'RE LIKELY TO BECOME ADDICTED TO SOMETHING ELSE,

24   BUT ALSO THE POSSIBILITY THAT YOU COULD WIND UP BEING TASERED

25   AND ARRESTED FOR RESISTING ARREST, ETC.

1      IT'S AN INTERESTING -- IT'S JUST A VERY INTERESTING,

2  INTERESTING CASE.  ALL IN ALL, THOUGH, I THINK WHEN I LOOK AT

3  THE 3553(A) FACTORS, I DON'T KNOW THAT THIS WILL REALLY, REALLY

4  WORK, BUT I THINK THAT, YOU KNOW, I JUST CAN'T GO ALONG WITH

5  THE LOW END OF THE GUIDELINE RANGE.  THERE IS SOMETHING ABOUT

6  THIS CASE, AND I CAN'T QUITE REALLY -- AT THE RISK OF HAVING

7  JUDGE KOZINSKI, MY GOOD FRIEND, TELL ME ONCE AGAIN THAT I

8  CANNOT USE MY OLFACTORY NERVE TO DECIDE WHAT THE LAW IS, THERE

9  IS SOMETHING ABOUT THIS CASE THAT JUST DOESN'T SMELL RIGHT.

10  AND, I GUESS -- NO PUN INTENDED GIVEN THAT I WAS JUST TALKING

11  ABOUT THE PLUME OF SMOKE OF MARIJUANA.

12      BUT IN ANY EVENT, THERE IS SOMETHING ABOUT THIS CASE THAT

13  IS TROUBLING, AND I CAN'T QUITE PUT MY FINGER ON IT.

14      WHAT I CAN SAY IS, THAT AFTER LOOKING AT ALL THE 3553(A)

15  FACTORS, AND TRYING TO SIFT THROUGH ALL OF THIS, AND TRYING TO

16  FIGURE OUT WHAT MAKES SENSE, I'M SATISFIED THAT MY TENTATIVE IS

17  APPROPRIATE, STILL HONORING THE AGREEMENT OF THE PARTIES, BUT

18  YET IMPOSING A SENTENCE THAT I HOPE, HOPE WILL ACT AS A FURTHER

19  DETERRENT.

20      SO I'LL GO THROUGH THE GUIDELINE CALCULATIONS.  THESE ARE

21  THE GUIDELINE CALCULATIONS THAT I BELIEVE WERE AGREED TO:  THIS

22  IS A BASE OFFENSE LEVEL OF 20, INCREASED BY FOUR LEVELS, UNDER

23  2K2.1(B)(1)(B).  THE GOVERNMENT AGREED TO A THREE-LEVEL

24  REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY.  HE HAS A CRIMINAL

25  HISTORY SCORE 3; CRIMINAL HISTORY CATEGORY 2.  RESULTS IN AN

1    ADJUSTED OFFENSE LEVEL OF 21, WITH A GUIDELINE RANGE OF 41 TO

2    51 MONTHS.

3         AFTER CONSIDERING ALL THE 3553(A) FACTORS, I'M SATISFIED

4    THAT 51 MONTHS IS REASONABLE AND SUFFICIENT, BUT NOT GREATER

5    THAN NECESSARY.  SO I'LL REMAND HIM TO THE CUSTODY OF BUREAU OF

6    PRISONS FOR A PERIOD OF 51 MONTHS.

7         NOW AGAIN, LET ME JUST SAY WHAT I SAID A FEW MINUTES AGO.

8    IF CONGRESS REALLY, REALLY, REALLY, REALLY IS SERIOUS ABOUT

9    TRYING TO MINIMIZE GUN VIOLENCE, YOU KNOW, THEY REALLY SHOULD

10   SERIOUSLY THINK ABOUT INCREASING THE PERIOD OF SUPERVISED

11   RELEASE THAT IS AVAILABLE TO US.  BECAUSE IN THE END -- HERE

12   IS -- WHAT I DO WHEN I IMPOSE SENTENCE, I LOOK AT TWO FACTORS

13   THAT I THINK ARE REALLY, REALLY IMPORTANT IN DECIDING WHAT A

14   SENTENCE SHOULD BE.  NO. 1, WHAT CAN WE DO TO DETER THIS

15   INDIVIDUAL AND OTHER INDIVIDUALS FROM ENGAGING IN CRIMINAL

16   BEHAVIOR, CAUSING THEM TO RETURN TO A LAW-ABIDING LIFE?

17        AND WE CAN -- AND THE SECOND ONE IS PROTECTION OF THE

18   PUBLIC.  THOSE TWO THINGS I CALL THE CONJOINED TWINS.  BECAUSE

19   I COULD IMPOSE A LESSER PERIOD OF CUSTODIAL SENTENCE TO BEGIN

20   WITH IF I HAVE A LONGER PERIOD OF SUPERVISED RELEASE AT THE

21   TAIL END THAT WILL ALLOW ME TO MAKE SURE THAT THIS INDIVIDUAL,

22   A, DOESN'T CAUSE HARM TO THE PUBLIC AND IS RETURNING TO A

23   LAW-ABIDING LIFE.

24        SO I CAN IMPOSE A LESSER TERM UP FRONT, WITH LONGER

25   SUPERVISED RELEASE.  OR IF I DON'T HAVE A LONG PERIOD OF

1   SUPERVISED RELEASE, THEN, YOU KNOW, I'M CALLED UPON TO IMPOSE A

2   HIGHER SENTENCE AT THE BEGINNING.  THAT'S THE WAY I SEE THOSE

3   TWO FACTORS WORKING.

4        NOW, AGAIN, IF CONGRESS IS SERIOUS ABOUT MINIMIZING GUN

5   VIOLENCE, WELL, HERE IS THE WAY TO DO IT:  INCREASE THE PERIOD

6   OF SUPERVISED RELEASE THAT IS AVAILABLE TO US.  IF I HAD A

7   LONGER PERIOD OF SUPERVISED RELEASE AVAILABLE TO ME, THERE IS A

8   POSSIBILITY THAT I WOULD IMPOSE THE 41 MONTHS THAT WAS AGREED

9   TO BY EVERYONE, BUT I DON'T HAVE THAT.  I'M LIMITED TO THREE

10  YEARS, WHICH, IN MY OPINION, IS INSUFFICIENT.

11       BUT THAT BEING THE CASE, BEING THAT THREE YEARS IS THE MAX

12  I CAN IMPOSE, I'LL IMPOSE A THREE-YEAR TERM OF SUPERVISED

13  RELEASE.  AS A CONDITION OF SUPERVISED RELEASE, MR. DALTON WILL

14  OBEY ALL LAWS, INCLUDING STATE, LOCAL, AND FEDERAL.

15       HE'LL COMPLY WITH ALL STANDARD AND MANDATORY CONDITIONS OF

16  SUPERVISED RELEASE, INCLUDING THE FOLLOWING:  HE'LL PROVIDE

17  COMPLETE DISCLOSURE OF PERSONAL, BUSINESS, FINANCIAL RECORDS TO

18  THE PROBATION OFFICER AS REQUESTED.  HE'LL PARTICIPATE IN A

19  PROGRAM OF DRUG OR ALCOHOL ABUSE TREATMENT, INCLUDING

20  URINALYSIS OR SWEAT PATCH TESTING AND COUNSELING, AS DIRECTED

21  BY THE PROBATION OFFICER.  AND HE'LL ALLOW FOR RECIPROCAL

22  RELEASE OF INFORMATION BETWEEN THE PROBATION OFFICER AND THE

23  TREATMENT PROVIDER.

24       HE'LL BE REQUIRED TO CONTRIBUTE TO THE COSTS OF SERVICES

25  RENDERED IN AN AMOUNT TO BE DETERMINED BY THE PROBATION

1    OFFICER, BASED ON HIS ABILITY TO PAY.  HE'LL REPORT ALL

2    VEHICLES OWNED OR OPERATED, OR IN WHICH HE HAS AN INTEREST TO

3    HIS PROBATION OFFICER.

4         HE'LL SUBMIT HIS PERSON, HIS RESIDENCE, HIS OFFICE, OR HIS

5    VEHICLE TO A SEARCH CONDUCTED BY A UNITED STATES PROBATION

6    OFFICER IN A REASONABLE TIME AND IN A REASONABLE MANNER, BASED

7    UPON REASONABLE SUSPICION OF CONTRABAND OR EVIDENCE OF A

8    VIOLATION OF A CONDITION OF RELEASE.  FAILURE TO SUBMIT TO A

9    SEARCH MAY BE GROUNDS FOR REVOCATION.  AND THE DEFENDANT SHALL

10   WARN ANY OTHER RESIDENTS THAT THE PREMISES MAY BE SUBJECT TO

11   SEARCHES PURSUANT TO THIS CONDITION.

12        NOW JUST TO BE SURE THAT WE'RE ON THE SAME PAGE, ALSO,

13   MR. DALTON, I'M GOING TO ORDER THAT YOU NOT OWN, POSSESS,

14   BORROW, OR IN ANY OTHER WAY HAVE CONTROL OF ANY FIREARM, ANY

15   FIREARM, WHATSOEVER, OR ANY AMMUNITION, OR ANY OTHER CONTROLLED

16   WEAPON.  YOU MAY NOT HAVE IN YOUR POSSESSION, NOT EVEN

17   MOMENTARILY, YOU CAN'T EVEN HOLD IT IN YOUR HAND, A DAGGER, OR

18   BRASS KNUCKLES, OR A PISTOL, OR SHOTGUN, OR RIFLE, OR ANYTHING

19   OF THAT SORT.  IF YOU DO, THAT WILL BE A VIOLATION OF

20   SUPERVISED RELEASE.  AND I ASSURE YOU, I'M PUTTING A LOT OF

21   TRUST IN YOU.  AS I SAID, IT WOULDN'T TAKE ME VERY MUCH TO

22   IMPOSE A HIGHER SENTENCE THAN THE ONE I'VE IMPOSED ALREADY.

23        BUT I'M PUTTING TRUST IN YOU THAT YOU ARE THE PERSON THAT

24   I AM TOLD THAT YOU ARE AND THAT YOU TELL ME THAT YOU ARE.  IF I

25   FIND OUT THAT YOU'RE ANYWHERE WHERE THERE IS AMMUNITION, OR ONE

 1   OF THESE WEAPONS AT ANY TIME, AND YOU GET CAUGHT, YOU'RE GOING

 2   TO COME BACK TO SEE ME.  AND AT THAT POINT IN TIME, I'M GOING

 3   TO IMPOSE THE HIGHEST SENTENCE THAT THE LAW ALLOWS ME TO IMPOSE

 4   FOR YOUR VIOLATION OF SUPERVISED RELEASE.  IN THIS CASE, IT

 5   WILL BE THREE YEARS.  DO YOU UNDERSTAND THAT?

 6            THE DEFENDANT:  YES, YOUR HONOR.

 7            THE COURT:  OKAY.  SO I WANT YOU TO DO WHAT YOUR

 8   FATHER EXPECTS OF YOU, WHAT YOU SHOULD EXPECT OF YOURSELF,

 9   WHICH IS TO RETURN TO A LAW-ABIDING LIFE, WHERE YOU CAN EARN A

10   GOOD INCOME, MAKE YOURSELF PROUD, MAKE YOUR FAMILY PROUD.  AND

11   ALL YOU HAVE TO DO IS STAY AWAY FROM GUNS, STAY AWAY FROM

12   AMMUNITION, STAY AWAY FROM WEAPONS.  AND, OF COURSE, STAY AWAY

13   FROM DRUGS, DON'T SUBMIT DRUG TESTS THAT ARE DIRTY, ETC., ETC.

14    YOU DO ALL OF THAT, AND AT THE END OF THREE YEARS,

15   MR. DALTON, YOU'RE GOING TO GO BACK TO HAVING A GOOD LIFE.

16   YOU'RE A YOUNG MAN.  YOU HAVE A LOT OF TIME AHEAD OF YOU,

17   BELIEVE ME.  AND LIFE CAN BE SO GOOD.  AND YOU DON'T NEED

18   DRUGS, AND YOU DON'T NEED GUNS, AND YOU DON'T NEED KNIVES, AND

19   YOU DON'T NEED BRASS KNUCKLES IN ORDER TO HAVE A GOOD LIFE.

20   YOU REALLY CAN.

21    NOW WITH REGARDS TO A FINE, I THINK HE HAS THE ABILITY TO

22   PAY A FINE.  PROBATION IS RECOMMENDING A FINE OF $10,000, WHICH

23   I BELIEVE IS REASONABLE UNDER THE CIRCUMSTANCES.  I'LL ORDER

24   THAT HE PAY A FINE OF $10,000, PLUS $100 SPECIAL ASSESSMENT.

25   AND THAT WILL BE PAID FORTHWITH.  AND DURING ANY PERIOD OF

1    INCARCERATION, HE'LL PAY THE FINE THROUGH THE INMATE FINANCIAL

2    RESPONSIBILITY PROGRAM, AT THE RATE OF 50 PERCENT OF

3    DEFENDANT'S INCOME, OR NOT LESS THAN $25 PER QUARTER, WHICHEVER

4    IS GREATER.

5        HE'LL PAY THE FINE DURING HIS SUPERVISED RELEASE PERIOD AT

6    THE RATE OF $500 PER MONTH OR MORE, AND THE PAYMENTS WILL BE

7    SCHEDULED THROUGH THE DISTRICT COURT CLERK FOR THE SOUTHERN

8    DISTRICT OF CALIFORNIA.

9        UNTIL THE FINE HAS BEEN PAID, HE'LL NOTIFY THE CLERK OF

10   THE COURT AND THE UNITED STATES ATTORNEY'S OFFICE OF ANY CHANGE

11   IN HIS MAILING OR RESIDENCE ADDRESS, AS WELL AS ANY BUSINESS OR

12   EMPLOYMENT THAT HE MAY HAVE.  AND HE SHALL DO SO NOT LATER THAN

13   30 DAYS AFTER THE CHANGE OCCURS.

14       NOW, I DON'T REMEMBER IF THERE WAS A RECOMMENDATION FOR --

15   RIGHT, THERE IS A RECOMMENDATION THAT HE BE PLACED IN THE RDAP

16   PROGRAM, WHICH I THINK WOULD BE HELPFUL TO HIM, HOPEFULLY TO

17   HELP HIM BREAK ANY DRUG ADDICTION THAT HE MAY HAVE.

18       ALTHOUGH, I SUSPECT HE'S PROBABLY WELL ON HIS WAY -- HE'S

19   BEEN ON PRETRIAL RELEASE SINCE THIS CASE STARTED, RIGHT?

20           MR. BAJAJ:  THAT'S CORRECT, YOUR HONOR.

21           THE COURT:  AND I ASSUME HE HASN'T SUBMITTED ANY

22   DIRTY TESTS; OTHERWISE, THEY WOULD HAVE VIOLATED HIM, RIGHT?

23       YEAH, SO I THINK HE'S WELL ON HIS WAY OF BREAKING THAT

24   ADDICTION.  I HOPE HE DOES.

25       SO ANYWAY, NOW I WILL RECOMMEND THAT HE BE HOUSED IN THE

1   NORTHEASTERN PORTION OF THE UNITED STATES SO HE CAN BE CLOSE TO

2   HIS FAMILY.  I'M GOING TO TAKE A WILD GUESS, BUT MY WILD GUESS

3   IS GOING TO BE THAT YOU'RE GOING TO ASK FOR SELF-SURRENDER?

4           MR. BAJAJ:  THAT WOULD BE A GREAT GUESS, YOUR HONOR.

5   IN THIS INSTANCE, YOU ARE CORRECT, I WOULD.

6           THE COURT:  ALL RIGHT.  WELL, APPARENTLY, HE'S

7   BEHAVED WELL DURING PRETRIAL RELEASE.

8       ANYBODY HAVE ANY OBJECTION?

9           MR. JONES:  NONE FROM THE GOVERNMENT, YOUR HONOR.

10          THE COURT:  ALL RIGHT.

11          PROBATION OFFICER:  YOUR HONOR, TO MAKE SURE, I'M

12  WITH PROBATION, NOT PRETRIAL, JUST SO YOU --

13          THE COURT:  I GUESS WE DON'T HAVE ANYBODY FROM

14  PRETRIAL.

15      ALL RIGHT, I WILL ORDER, BY THE WAY, FORFEITURE OF THE

16  WEAPONS THAT WERE -- I GUESS I ALREADY SIGNED THE ORDER.

17          MR. JONES:  YEAH, THERE WAS A PRELIMINARY ORDER, YOUR

18  HONOR, OF THE WEAPONS AND THE AMMUNITION.

19          THE COURT:  I THOUGHT THIS WAS THE FINAL ORDER?

20          MR. JONES:  YEAH, THAT IS WHAT WE NEED, THE FINAL

21  ORDER.

22          THE COURT:  ISN'T THAT WHAT I ALREADY SIGNED IN

23  JANUARY?

24          MR. BAJAJ:  THAT'S CORRECT.  THE COURT HAD ALREADY

25  SIGNED IT.

```
1              THE COURT:  YEAH, I ALREADY SIGNED IT.

2              MR. JONES:  OKAY.

3              THE COURT:  OKAY.  ALL RIGHT, SO HOW ABOUT SIX WEEKS?

4              MR. BAJAJ:  THAT IS FINE.

5              THE COURT:  WILL THAT WORK?  OKAY.  I'LL ORDER THAT

6    HE SELF-SURRENDER TO THE DESIGNATED INSTITUTION BY NOT LATER

7    THAN --

8         GIVE ME A DATE, GLENN, PLEASE.

9              THE CLERK:  5:00 P.M., MAY 17.  BOND EXONERATION WILL

10   BE HERE MAY 20TH, AT 2:00 P.M.

11             THE COURT:  OKAY.  I'LL ORDER THAT HE REPORT DOWN TO

12   THE MARSHAL'S OFFICE BY NOT LATER THAN 4:00 P.M. THIS AFTERNOON

13   IN ORDER TO BE DESIGNATED, BOOKED, AND ALL OF THAT, OKAY.

14        ALL RIGHT.  NOW, COUNSEL, DO YOU ACKNOWLEDGE THAT HE'S

15   WAIVED HIS RIGHT TO APPEAL AND COLLATERAL ATTACK.

16             MR. BAJAJ:  YES, YOUR HONOR.

17             THE COURT:  MR. DALTON, DO YOU ACKNOWLEDGE THAT

18   YOU'VE WAIVED YOUR RIGHT TO APPEAL AND COLLATERAL ATTACK?

19             THE DEFENDANT:  YES, YOUR HONOR.

20             THE COURT:  I WISH YOU NOTHING BUT THE BEST.  I HOPE

21   YOU TAKE THIS OPPORTUNITY TO IMPROVE YOUR LIFE AND THE LIFE OF

22   YOUR FAMILY.  AND I HOPE THAT I DON'T SEE YOU BACK HERE IN

23   COURT AGAIN, OKAY.

24             THE DEFENDANT:  THANK YOU, YOUR HONOR.

25             THE COURT:  ALL RIGHT, YOU TAKE CARE.
```

1            MR. BAJAJ:  THANK YOU, YOUR HONOR.

2            THE COURT:  THANK YOU.

3            THE CLERK:  REMAINING UNDERLYING COUNTS, JUDGE.

4            THE COURT:  YES.  IS THERE A MOTION TO DISMISS THE

5   REMAINING COUNTS?

6            MR. JONES:  SO MOVED, YOUR HONOR.

7            THE COURT:  ALL RIGHT, THEY'LL BE DISMISSED.  THANK

8   YOU.

9                    (RECESS AT 10:54 A.M.)

10                        ---000---

1                        C-E-R-T-I-F-I-C-A-T-I-O-N

2          I HEREBY CERTIFY THAT I AM A DULY APPOINTED,

3   QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED

4   STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT

5   TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;

6   THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY

7   STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES

8   WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL

9   CONFERENCE.

10         DATED:  MAY 25, 2016, AT SAN DIEGO, CALIFORNIA

11

12                     _____

                      S/DEBORAH M. O'CONNELL, CSR #10563

13                     REGISTERED PROFESSIONAL REPORTER

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D

AO 245B (CASD) (Rev. 12/11) Judgment in a Criminal Case
Sheet 1

F I L E D

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

2013 APR 11  AM 10: 39

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

v.

JEREMY ADAM DALTON (1)

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

BY_____ DEPUTY

Case Number: 12CR3367-BEN

VIKAS BAJAJ
Defendant's Attorney

**REGISTRATION NO.** 34594298

☐

THE DEFENDANT:
☒ pleaded guilty to count(s) 1s OF THE SUPERSEDING INFORMATION.

☐ was found guilty on count(s)_____
after a plea of not guilty.
Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offense(s):

| Title & Section | Nature of Offense | Count Number(s) |
|---|---|---|
| 18 USC 922(g)(1) and 924(a)(2) | FELON IN POSSESION OF FIREARMS AND AMMUNITION | 1s |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)_____

☒ Count(s) UNDERLYING INFORMATION _____ is ☒ are☐ dismissed on the motion of the United States.

☒ Assessment: $100.00 forthwith or under the same repayment terms for the fine as set forth in page 5 of this Judgment and Commitment.

☐ Fine waived      ☒ Forfeiture pursuant to order filed   JANUARY 15, 2013   , included herein.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

APRIL 8, 2013
Date of Imposition of Sentence

HON. ROGER T. BENITEZ
UNITED STATES DISTRICT JUDGE

12CR3367-BEN

AO 245B (CASD) (Rev. 12/11)  Judgment in a Criminal Case
Sheet 2 — Imprisonment

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: **12CR3367-BEN**

Judgment — Page __2__ of __7__

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of
FORTY-EIGHT (48) MONTHS.

☐ Sentence imposed pursuant to Title 8 USC Section 1326(b).

☒ The court makes the following recommendations to the Bureau of Prisons:

DEFENDANT BE ALLOWED TO PARTICIPATE IN THE 500-HOUR DRUG TREATMENT PROGRAM.

DEFENDANT BE INCARCERATED WITHIN THE NORTHEAST REGION OF THE UNITED STATES.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.  on _____ .

    as notified by the United States Marshal.

☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☒ before 5:00PM ON MAY 17, 2013.

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**12CR3367-BEN**

AO 245B (CASD) (Rev. 12/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: 12CR3367-BEN

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of:
THREE (3) YEARS.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

*For offenses committed on or after September 13, 1994:*

The defendant shall not illegally possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter as determined by the court. Testing requirements will not exceed submission of more than __4__ drug tests per month during the term of supervision, unless otherwise ordered by court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

☒ The defendant shall cooperate in the collection of a DNA sample from the defendant, pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000, pursuant to 18 USC sections 3563(a)(7) and 3583(d).

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. (Check if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution obligation, it is a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in this judgment.

The defendant must comply with the standard conditions that have been adopted by this court. The defendant shall also comply with any special conditions imposed.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

12CR3367-BEN

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: **12CR3367-BEN**

Judgment—Page __4__ of __7__

# SPECIAL CONDITIONS OF SUPERVISION

[X] Submit person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

[ ] If deported, excluded, or allowed to voluntarily return to country of origin, not reenter the United States illegally and report to the probation officer within  24  hours of any reentry to the United States; supervision waived upon deportation, exclusion or voluntary departure.

[ ] Not transport, harbor, or assist undocumented aliens.

[ ] Not associate with undocumented aliens or alien smugglers.

[ ] Not reenter the United States illegally.

[ ] Not enter or reside in the Republic of Mexico without written permission of the Court or probation officer.

[X] Report all vehicles owned or operated, or in which you have an interest, to the probation officer.

[ ] Not possess any narcotic drug or controlled substance without a lawful medical prescription.

[ ] Not associate with known users of, smugglers of, or dealers in narcotics, controlled substances, or dangerous drugs in any form.

[ ] Participate in a program of mental health treatment as directed by the probation officer, take all medications as prescribed by a psychiatrist/physician, and not discontinue any medication without permission. The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. Is required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on the defendant's ability to pay.

[X] Not own, possess, control, borrow any type of gun, ammunition, dagger, or brass knuckles, even if the time-of-possession is for one second.

[X] Provide complete disclosure of personal and business financial records to the probation officer as requested.

[ ] Be prohibited from opening checking accounts or incurring new credit charges or opening additional lines of credit without approval of the probation officer.

[ ] Seek and maintain full time employment and/or schooling or a combination of both.

[ ] Resolve all outstanding warrants within           days.

[ ] Complete           hours of community service in a program approved by the probation officer within

[ ] Reside in a Residential Reentry Center (RRC) as directed by the probation officer for a period of

[X] Participate in a program of drug or alcohol abuse treatment, including urinalysis or sweat patch testing and counseling, as directed by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. Is required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on the defendant's ability to pay.

[ ]

**12CR3367-BEN**

AO 245S    Judgment in Criminal Case
           Sheet 5 — Criminal Monetary Penalties

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: 12CR3367-BEN

Judgment — Page __5__ of __7__

## FINE

The defendant shall pay a fine in the amount of _____$10,000.00_____ unto the United States of America.

This sum shall be paid ____ immediately.
                        _×_ as follows:

Through the Clerk, U. S. District Court, forthwith or through the Inmate Financial Responsibility Program (IFRP) at the rate of 50% of the defendant's income, or $25.00 per quarter during the period of incarceration, whichever is greater. The defendant shall pay the fine during his supervised release at the rate of $500 per month. These payment schedules do not foreclose the United States from exercising all legal actions, remedies, and process available to it to collect the fine judgment. Until the fine has been paid, the defendant shall notify the Clerk of the Court and the United States Attorney's Office of any change in the defendant's mailing or residence address, no later than thirty (30) days after the change occurs.

The Court has determined that the defendant __does__ have the ability to pay interest. It is ordered that:

_×_ The interest requirement is waived.

____ The interest is modified as follows:

12CR3367-BEN

2013 JAN 15  AM 9: 26

C. . . . . . . . .
SOUTHERN  . . . . . . . . .

BY _____ . . . . . .

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 12cr3367-BEN |
| | ) | |
| Plaintiff, | ) | ORDER OF CRIMINAL FORFEITURE |
| | ) | |
| v. | ) | |
| | ) | |
| JEREMY ADAM DALTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

WHEREAS, in the Superseding Information in the above-captioned case, the United States sought forfeiture of all right, title and interest in specific properties, to wit:

1. 681 rounds of assorted ammunition;
2. One Glock, model 23, .40 caliber pistol, serial number BDB110US;
3. One Taurus, model 608, .357 caliber revolver, serial number BT652166;
4. One Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;
5. One Taurus, model PT140 Millennium Pro, .40 caliber pistol, serial number SYJ45735;
6. One Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver, serial number DM104710;
7. One Walther, model P22, .22 caliber pistol, serial number N017274;
8. One Colt, model DELTA ELITE, .10 caliber pistol, serial number 10SS0832; and
9. One Glock, model 17, .9 caliber pistol, serial number KNP396,

of the above-named defendant pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), as properties involved in or traceable to the violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), as charged in the Superseding Information; and

WHEREAS, on or about November 26, 2012, the above-named defendant, JEREMY ADAM DALTON ("Defendant"), pled guilty to the Superseding Information before

1     Magistrate Judge William McCurine, Jr., which plea provided for the criminal forfeiture of the

2     firearms and ammunition, and included consent to the criminal forfeiture allegations pursuant to

3     Titles 18 and 28 as set forth in the Superseding Information; and

4           WHEREAS, on or about December 12, 2012, the plea of the Defendant was accepted by

5     the United States District Court; and

6           WHEREAS, the plea agreement provided for the criminal forfeiture of the firearms and

7     ammunition; and

8           WHEREAS, by virtue of the facts set forth in the plea agreement, the United States has

9     established the requisite nexus between the forfeited properties and the offense; and

10          WHEREAS, on or about December 12, 2012 the firearms and ammunition to which

11    Defendant pled were administratively forfeited by the Bureau of Alcohol, Tobacco, Firearms, and

12    Explosives (ATF):

13          Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

14         1.     Based upon the guilty plea of the Defendant, all right, title and interest of Defendant

15    JEREMY ADAM DALTON in

16       1.     681 rounds of assorted ammunition;
         2.     One Glock, model 23, .40 caliber pistol, serial number BDB110US;

17       3.     One Taurus, model 608, .357 caliber revolver, serial number BT652166;
         4.     One Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;

18       5.     One Taurus, model PT140 Millennium Pro, .40 caliber pistol,
              serial number SYJ45735;

19       6.     One Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver,
              serial number DM104710;

20       7.     One Walther, model P22, .22 caliber pistol, serial number N017274;
         8.     One Colt, model DELTA ELITE, .10 caliber pistol,

21               serial number 10SS0832; and
         9.     One Glock, model 17, .9 caliber pistol, serial number KNP396,

22

23    are hereby forfeited to the United States.

24         2.     As the aforementioned asset was previously forfeited administratively, no further

25    action is needed as to the forfeiture aspect of this criminal case.

26      DATED:

27    1/11/2013

28                             Honorable Roger T. Benitez
                            United States District Judge

# EXHIBIT E

&AO 245B (CASD) (Rev. 12/11) Judgment in a Criminal Case
Sheet 1

**FILED**

APR 1 2 2013

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

**v.**

JEREMY ADAM DALTON (1)

## AMENDED JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number: 12CR3367-BEN

VIKAS BAJAJ

Defendant's Attorney

**REGISTRATION NO.** 34594298

☒ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P.36)

**THE DEFENDANT:**
☒ pleaded guilty to count(s) 1s OF THE SUPERSEDING INFORMATION.

☐ was found guilty on count(s)_____
after a plea of not guilty.
Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offense(s):

| Title & Section | Nature of Offense | Count Number(s) |
|---|---|---|
| 18 USC 922(g)(1) and 924(a)(2) | FELON IN POSSESION OF FIREARMS AND AMMUNITION | 1s |

The defendant is sentenced as provided in pages 2 through ____7____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)_____

☒ Count(s) UNDERLYING INFORMATION _____ is ☒ are ☐ dismissed on the motion of the United States.

☒ Assessment: $100.00 forthwith or under the same repayment terms for the fine as set forth in page 5 of this Judgment and Commitment.

☐ Fine waived        ☒ Forfeiture pursuant to order filed __JANUARY 15, 2013__ , included herein.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

APRIL 8, 2013
Date of Imposition of Sentence

HON. ROGER T. BENITEZ
UNITED STATES DISTRICT JUDGE

12CR3367-BEN

AO 245B (CASD) (Rev. 12/11)  Judgment in a Criminal Case
       Sheet 2 — Imprisonment

Judgment — Page   2   of    7

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: **12CR3367-BEN**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of
FIFTY-ONE (51) MONTHS.

☐ Sentence imposed pursuant to Title 8 USC Section 1326(b).

☒ The court makes the following recommendations to the Bureau of Prisons:

  DEFENDANT BE ALLOWED TO PARTICIPATE IN THE 500-HOUR DRUG TREATMENT PROGRAM.

  DEFENDANT BE INCARCERATED WITHIN THE NORTHEAST REGION OF THE UNITED STATES.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ ☐ a.m.   ☐ p.m.   on _____ .

  as notified by the United States Marshal.

☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☒ before 5:00PM ON MAY 17, 2013.

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**12CR3367-BEN**

AO 245B (CASD) (Rev. 12/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | Judgment—Page | 3 | of | 7 |
|---|---|---|---|---|

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: **12CR3367-BEN**

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :
THREE (3) YEARS.

      The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

*For offenses committed on or after September 13, 1994:*

The defendant shall not illegally possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter as determined by the court. Testing requirements will not exceed submission of more than __4__ drug tests per month during the term of supervision, unless otherwise ordered by court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of
    future substance abuse. (Check, if applicable.)

☒   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

☒   The defendant shall cooperate in the collection of a DNA sample from the defendant, pursuant to section 3 of the DNA Analysis
    Backlog Elimination Act of 2000, pursuant to 18 USC sections 3563(a)(7) and 3583(d).

☐   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed
    by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or
    was convicted of a qualifying offense. (Check if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

      If this judgment imposes a fine or restitution obligation, it is a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in this judgment.

      The defendant must comply with the standard conditions that have been adopted by this court. The defendant shall also comply with any special conditions imposed.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (CASD) (Rev. 12/11 Judgment in a Criminal Case
Sheet 4 — Special Conditions

DEFENDANT: JEREMY ADAM DALTON (1)
CASE NUMBER: **12CR3367-BEN**

Judgment—Page __4__ of __7__

# SPECIAL CONDITIONS OF SUPERVISION

☒ Submit person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

☐ If deported, excluded, or allowed to voluntarily return to country of origin, not reenter the United States illegally and report to the probation officer within  24  hours of any reentry to the United States; supervision waived upon deportation, exclusion or voluntary departure.

☐ Not transport, harbor, or assist undocumented aliens.

☐ Not associate with undocumented aliens or alien smugglers.

☐ Not reenter the United States illegally.

☐ Not enter or reside in the Republic of Mexico without written permission of the Court or probation officer.

☒ Report all vehicles owned or operated, or in which you have an interest, to the probation officer.

☐ Not possess any narcotic drug or controlled substance without a lawful medical prescription.

☐ Not associate with known users of, smugglers of, or dealers in narcotics, controlled substances, or dangerous drugs in any form.

☐ Participate in a program of mental health treatment as directed by the probation officer, take all medications as prescribed by a psychiatrist/physician, and not discontinue any medication without permission. The Court authorizes the release of the presentence report and available psychological evaluations to the mental health provider, as approved by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. Is required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on the defendant's ability to pay.

☒ Not own, possess, control, borrow any type of gun, ammunition, dagger, or brass knuckles, even if the time-of-possession is for one second.

☒ Provide complete disclosure of personal and business financial records to the probation officer as requested.

☐ Be prohibited from opening checking accounts or incurring new credit charges or opening additional lines of credit without approval of the probation officer.

☐ Seek and maintain full time employment and/or schooling or a combination of both.

☐ Resolve all outstanding warrants within          days.

☐ Complete         hours of community service in a program approved by the probation officer within

☐ Reside in a Residential Reentry Center (RRC) as directed by the probation officer for a period of

☒ Participate in a program of drug or alcohol abuse treatment, including urinalysis or sweat patch testing and counseling, as directed by the probation officer. Allow for reciprocal release of information between the probation officer and the treatment provider. Is required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on the defendant's ability to pay.

☐

12CR3367-BEN

AO 245S    Judgment in Criminal Case
           Sheet 5 — Criminal Monetary Penalties

DEFENDANT: JEREMY ADAM DALTON (1)                          Judgment — Page    5    of    7
CASE NUMBER: 12CR3367-BEN

## FINE

The defendant shall pay a fine in the amount of _____ $10,000.00 _____ unto the United States of America.

This sum shall be paid    ____    immediately.
                           **x**    as follows:

Through the Clerk, U. S. District Court, forthwith or through the Inmate Financial Responsibility Program (IFRP) at the rate of 50% of the defendant's income, or $25.00 per quarter during the period of incarceration, whichever is greater. The defendant shall pay the fine during his supervised release at the rate of $500 per month. These payment schedules do not foreclose the United States from exercising all legal actions, remedies, and process available to it to collect the fine judgment. Until the fine has been paid, the defendant shall notify the Clerk of the Court and the United States Attorney's Office of any change in the defendant's mailing or residence address, no later than thirty (30) days after the change occurs.

The Court has determined that the defendant _does_ have the ability to pay interest. It is ordered that:

**x**  The interest requirement is waived.

____  The interest is modified as follows:

.

12CR3367-BEN

2013 JAN 15  AM 9: 26

C.
SOUTHERN ...             CALIFORNIA

BY _____ . DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 12cr3367-BEN |
| Plaintiff, | ) ) ) | ORDER OF CRIMINAL FORFEITURE |
| v. | ) ) | |
| JEREMY ADAM DALTON, | ) ) | |
| Defendant. | ) ) ) | |

WHEREAS, in the Superseding Information in the above-captioned case, the United States sought forfeiture of all right, title and interest in specific properties, to wit:

1. 681 rounds of assorted ammunition;
2. One Glock, model 23, .40 caliber pistol, serial number BDB110US;
3. One Taurus, model 608, .357 caliber revolver, serial number BT652166;
4. One Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;
5. One Taurus, model PT140 Millennium Pro, .40 caliber pistol, serial number SYJ45735;
6. One Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver, serial number DM104710;
7. One Walther, model P22, .22 caliber pistol, serial number N017274;
8. One Colt, model DELTA ELITE, .10 caliber pistol, serial number 10SS0832; and
9. One Glock, model 17, .9 caliber pistol, serial number KNP396,

of the above-named defendant pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), as properties involved in or traceable to the violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), as charged in the Superseding Information; and

WHEREAS, on or about November 26, 2012, the above-named defendant, JEREMY ADAM DALTON ("Defendant"), pled guilty to the Superseding Information before

Magistrate Judge William McCurine, Jr., which plea provided for the criminal forfeiture of the firearms and ammunition, and included consent to the criminal forfeiture allegations pursuant to Titles 18 and 28 as set forth in the Superseding Information; and

WHEREAS, on or about December 12, 2012, the plea of the Defendant was accepted by the United States District Court; and

WHEREAS, the plea agreement provided for the criminal forfeiture of the firearms and ammunition; and

WHEREAS, by virtue of the facts set forth in the plea agreement, the United States has established the requisite nexus between the forfeited properties and the offense; and

WHEREAS, on or about December 12, 2012 the firearms and ammunition to which Defendant pled were administratively forfeited by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF):

Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. Based upon the guilty plea of the Defendant, all right, title and interest of Defendant JEREMY ADAM DALTON in

    1. 681 rounds of assorted ammunition;
    2. One Glock, model 23, .40 caliber pistol, serial number BDB110US;
    3. One Taurus, model 608, .357 caliber revolver, serial number BT652166;
    4. One Llama (Gabilondo & CIA), ZZ caliber pistol, serial number A33354;
    5. One Taurus, model PT140 Millennium Pro, .40 caliber pistol, serial number SYJ45735;
    6. One Taurus, model PUB DEF JUDGE ULTLTE, .45/410 caliber revolver, serial number DM104710;
    7. One Walther, model P22, .22 caliber pistol, serial number N017274;
    8. One Colt, model DELTA ELITE, .10 caliber pistol, serial number 10SS0832; and
    9. One Glock, model 17, .9 caliber pistol, serial number KNP396,

are hereby forfeited to the United States.

2. As the aforementioned asset was previously forfeited administratively, no further action is needed as to the forfeiture aspect of this criminal case.

DATED:

1/11/2013

Honorable Roger T. Benitez
United States District Judge

2

12cr3367

1

## CERTIFICATE OF SERVICE

2

Counsel for Defendant certifies that the foregoing is true and accurate to the

3

best of her information and belief, and that a copy of the foregoing document has

4

been caused to be delivered this day upon the participants in this case, all of whom

5

are registered CM/ECF users.

6

7

Dated:  June 13, 2016                                    _/s/  Kara Hartzler_____

8

**KARA HARTZLER**
Federal Defenders of San Diego, Inc.

9

225 Broadway, Suite 900

10

San Diego, CA  92101-5030
(619) 234-8467  (tel)

11

(619) 687-2666  (fax)

12

Email: Kara_Hartzler@fd.org

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18